## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JAVIER SOLIS-MARRUFO,

      Plaintiff,

vs.                                                             No. CIV 11-0107 JB/KBM

BOARD OF COMMISSIONERS FOR
THE COUNTY OF BERNALILLO,
BENJAMIN FULLER,
CHRISTOPHER LEEPER, AND
JASON PLUM,

      Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' Motion in Limine to Admit

Evidence of Cocaine Use by Plaintiff, filed January 15, 2013 (Doc. 204)("MIL").   The Court held

a hearing on February 13, 2013.   The primary issues are whether the Court should allow the

Defendants Bernalillo County Sheriff's Officers Benjamin Fuller, Christopher Leeper, and Jason

Plum (collectively, the "Individual Defendants") to question Plaintiff Javier Solis-Marrufo

regarding his cocaine use at trial, on cross-examination.   The Court determines that

Solis-Marrufo's cocaine use at the time of the incident, and/or at the time he testifies at trial, is

relevant regarding the credibility of his testimony, and the Court will permit the Individual

Defendants to make that inquiry.   The Court also determines that the Individual Defendants may

inquire into Solis-Marrufo's previous admissions and denials of cocaine use, as this inquiry is

relevant regarding Solis-Marrufo's character for truthfulness.   Solis-Marrufo's cocaine use is also

relevant to contradict any mental and emotional distress that he asserts the Individual Defendants

caused, and the Court will permit the Individual Defendants to inquire into the effect of

Solis-Marrufo's cocaine use on his mental and emotional state to contradict Solis-Marrufo's asserted mental and emotional distress damages.   The Court will allow the Individual Defendants to introduce extrinsic evidence of Solis-Marrufo's cocaine use for only the limited purpose of impeaching Solis-Marrufo's direct testimony regarding cocaine use.

## FACTUAL BACKGROUND

This case arises from Solis-Marrufo's alleged civil rights violations, which he asserts occurred in relation to an incident on February 2, 2009, involving the Bernalillo County Sheriff's Department in Albuquerque, New Mexico.   See Third Amended Complaint for Violations of Civil Rights, Tort Claims, and Damages ¶¶ 8-35, at 2-6, filed October 5, 2012 ("Complaint").   On February 2, 2009, Fuller responded to a 911-call reporting domestic violence at 1521 Aragon Road SW.   See id. ¶ 5,8-10, at 2.   Fuller was tasked with finding a suspect-at-large and found Solis-Marrufo seated in a stopped car.   Fuller determined that Solis-Marrufo was not the suspect for which he was searching, but he nonetheless investigated Solis-Marrufo for driving under the influence of alcohol or drugs and arrested Solis-Marrufo for possession of a controlled substance. See id. ¶¶9, 11, 14-16, 19-20 at 2-4.   The dollar bill on Solis-Marrufo that Fuller believed contained a controlled substance was not preserved in evidence.   See id. ¶ 19, at 4.   Later, at a substation, Solis-Marrufo attempted to leave the area, and the Individual Defendants, among other officers, at the substation attacked Solis-Marrufo.   See id. ¶ 24, at 4.   During this altercation, Solis-Marrufo was allegedly hit and/or "kicked numerous times on his body, and specifically in his groin area."   Complaint ¶ 26, at 5.   Solis-Marrufo states that he has suffered numerous temporary and permanent physical and emotional injuries from the altercation at the substation.   See id. ¶¶ 30-33, at 6.   He states that he has incurred $14,172.62 in medical bills for the treatment of his

injuries, and he believes he will need future medical and mental health treatment for the injuries he suffered from the incident at the substation.   See id. ¶¶ 34-35, at 6.

## PROCEDURAL BACKGROUND

Solis-Marrufo alleges in Count I of the Complaint that the Individual Defendants used excessive and unreasonable force against him during the incident which the Complaint describes, in violation of 42 U.S.C. § 1983.   See Complaint ¶¶ 35-40, at 6.   Solis-Marrufo alleges in Count II of the Complaint that the Individual Defendants are liable under 42 U.S.C. § 1983 for failing to intervene to prevent the harm he suffered at the substation.   See Complaint ¶¶ 41-45, at 7. Solis-Marrufo alleges in Count IV[1] of the Complaint that the Individual Defendants battered and assaulted him at the substation, causing him "physical, mental and emotional damages, including, but not limited to, both temporary and permanent physical injury and pain and suffering." Complaint ¶¶ 46-52, at 7-8.   Solis-Marrufo alleges in Count V of the Complaint that the Individual Defendants and Defendant Board of Commissioners for the County of Bernalillo are liable for negligence for breaching their duty to protect him from assault and battery by law enforcement officers.   See Complaint ¶¶ 53-61, at 8-9.   Solis-Marrufo seeks compensatory and special damages against the Defendants, punitive damages against the Individual Defendants, costs, expenses and attorneys' fees, and pre- and post-judgment interest.   See Complaint at 9.   He demands a jury.   See Complaint at 9.

On August 5, 2011, Solis-Marrufo provided the Defendants with a Health Insurance Privacy and Portability Act release form, and he disclosed that Michael J. Ridder at the University of New Mexico Hospital Addiction and Substance Abuse Program ("UNMH ASAP") may have

---

[1] The Complaint does not contain a count "III."   Complaint   7.

discoverable information regarding his claims and defenses.   See HIPPA Authorization to Disclose Protected Health Information: Mental Health Records, authorized by Javier Solis-Marrufo, dated August 3, 2011, filed January 29, 2013 (Doc. 207-1); Plaintiff's Third Supplemental Rule 26 Disclosures ¶ 26, at 6, dated August 5, 2011, filed January 29, 2013 (Doc. 207-1).   No later than August 30, 2011, the Defendants requested Solis-Marrufo's UNMH ASAP records from the University of New Mexico Hospital.   See Letter from Luis Robles to UNM Health Sciences Center re: Solis-Marrufo, Javier v. Board of Commissioners, et al., dated August 30, 2011, filed February 12, 2013 (Doc. 214-2)(providing UNM Health Sciences Center with payment for the production of Solis-Marrufo's records and requesting that UNM Health Sciences Center "forward the records to my office as soon as possible").   The Defendants state that they did not receive Solis-Marrufo's UNMH ASAP records until December 14, 2012.   See Affidavit of Luis E. Robles ¶¶ 4-5, at 2, filed February 12, 2013 (Doc. 214-1).[2]   Discovery closed in this matter on December 10, 2012.   See Stipulated Order Granting Motion to Extend Discovery Deadline, filed October 9, 2012 (Doc. 183).   The University of New Mexico Health Sciences Center is not a party to this case.

The parties consented on September 23, 2011, to the Honorable W. Daniel Schneider, United States Magistrate Judge conducting "all proceedings in this civil action (including a jury or nonjury trial) and to order the entry of final judgment."   Notice, Consent, and Reference of a Civil Action to Magistrate Judge W. Daniel Schneider, filed September 23, 2011 (Doc. 70).   On May 3, 2012, Judge Schneider granted in part Solis-Marrufo's Plaintiff's Consolidated Motions *In Limine*,

---

[2] The Affidavit of Luis E. Robles does not provide a date upon which it was executed. See Affidavit of Luis E. Robles at 2.

filed April 20, 2012 (Doc. 107).   See Order Granting in Part Plaintiff's Consolidated Motions in Limine, filed May 3, 2012 (Doc. 142)("Order").   Specifically, Judge Schneider granted Solis-Marrufos' request to "exclude non-relevant allegations of cocaine" use by Solis-Marrufo. Order at 2.   Judge Schneider found that, because the Defendants did not present any evidence regarding Solis-Marrufo's alleged use of cocaine, and they did not allege that "his memory was impaired at the time of this incident," the evidence should be excluded under rule 403 of the Federal Rules of Evidence.   Order at 2.   The case was reassigned to the Honorable C. LeRoy Hansen, Senior United States District Judge for the District of New Mexico, on May 7, 2012.   See Doc. 151.   The case was reassigned to the Court on May 23, 2012.   See Doc. 155.

The Individual Defendants request the Court to revisit the Order.   See MIL at 2.   The Individual Defendants assert that Judge Schneider's Order is "at odds with the established practice of this Court," and they allege that "new evidence regarding Plaintiff's cocaine abuse and his dishonesty with respect to admitting such use have come to light since the prior Court's ruling." MIL at 2.   The Individual Defendants assert that Solis-Marrufo's credibility and "clarity of perception" are important in this case, because his account of the events varies greatly from the Individual Defendants' version.   MIL at 2.   The Individual Defendants assert that Solis-Marrufo's cocaine abuse and denial of use are relevant whether Solis-Marrufos' testimony is true, whether he accurately perceived the events about which he will testify, and whether he accurately recalls the events of the incident.   See MIL at 2.   The Individual Defendants also assert that Solis-Marrufo's cocaine abuse is relevant to his claims for damages.   See MIL at 2.

The Individual Defendants first assert that the Court has the authority under rule 54(b) of the Federal Rules of Civil Procedure to review Judge Schneider's Order, because it decided an

interlocutory matter.   See MIL at 3 (citing Pedroza v. Lomas Auto Mall, 258 F.R.D. 453, 462 (D.N.M. 2009)(Browning, J.).   Second, the Individual Defendants assert that, according to records they received pursuant to a valid H.I.P.P.A. release from UNMH ASAP for Solis-Marrufo, Solis-Marrufo reported using cocaine on a monthly basis as of June 7, 2011 and the five years previous thereto, and he has been diagnosed as dependent upon cocaine.   MIL at 4.   The Individual Defendants assert that Solis-Marrufo was not forthcoming about his cocaine abuse to UNMH ASAP, and he only admitting his "problem abusing the drug" in late June, 2012, when he returned to drug counseling, after he gave other explanations for his positive drug tests.   MIL at 4.

The Individual Defendants argue that evidence of Solis-Marrufo's drug use and abuse is "admissible to call into question the witness' ability to perceive or recall events."   MIL at 4 (citing United States v. Smith, 156 F.3d 1046, 1054-55 (10th Cir. 1998)).   The Defendants note that the Court has "previously recognized the relevance of evidence of previous drug use, even drug use in the distant past, to challenge a plaintiff's ability to accurately perceive and recall the events underlying a suit."   MIL at 5 (citing Chamberlin v. City of Albuquerque, No. Civ. 02-0603 JB/ACT (D.N.M. July 31, 2005)(Browning, J.).   The Defendants point out that, in Chamberlin v. City of Albuquerque, the Court allowed evidence of a plaintiff's history of drug use, and his admissions and denials of drug use.   See MIL at 5.   The Individual Defendants assert that Solis-Marrufo's previous drug use is relevant both to his veracity, and to his ability to perceive and to recall the events underlying the Complaint.   See MIL at 5-6.   The Individual Defendants assert that discovery reveals that Solis-Marrufo's memory has not always been precise or accurate.   See MIL at 6.

The Individual Defendants also assert that they are permitted, under rule 405(b) of the

Federal Rules of Evidence, to question Solis-Marrufo regarding his previous drug use to rebut his claims for damages.  See MIL at 7.  The Individual Defendants assert that Solis-Marrufo's character is an "essential element" of Solis-Marrufo's damages claims, as "'other areas which could reasonably be expected to impact on that condition'" may rebut evidence of his emotional and mental distress.  MIL at 8 (citing Marquez v. City of Albuquerque, No. CIV 01-0445 WWD/LFG (D.N.M. Sept. 23, 2002), at 1).  The Individual Defendants assert that, under rules 405, 607, and 608, after Solis-Marrufo introduces evidence to support his claim for damages, they should be permitted to question him and his witnesses regarding his "substance abuse problems and his denials of such problems."   MIL at 8.

Lastly, the Defendants contend that any prejudicial effect that Solis-Marrufo's cocaine abuse may pose does not substantially outweigh its probative value, and, thus, rule 403 does not bar the evidence.  See MIL at 9.  The Individual Defendants argue that Solis-Marrufo's cocaine abuse will assist the jurors in making their material determinations, and give them the ability to accurately evaluate Solis-Marrufo's testimony.   See MIL at 9.

Solis-Marrufo asserts that evidence of his cocaine use is both irrelevant and more prejudicial than probative, and, therefore, the Court should exclude the evidence.  See Response to Defendant Deputies' Motion in Limine to Admit Evidence of Cocaine Use by Plaintiff, filed January 29, 2013 (Doc. 207)("Response").  Solis-Marrufo first asserts that admitting the evidence will increase the prejudice Solis-Marrufo has already suffered by the Individual Defendants' "late disclosures and failure to abide by discovery rules."[3]  Response at 2.  Solis-Marrufo asserts that

---

[3] Solis-Marrufo asserts that the Defendants failed to disclose two witnesses until the "eve of trial," which was set to commence on May 7, 2012.  Plaintiff's Motion for Entry of Default Judgment and Other Sanctions for Failure to Disclose Evidence, Withholding Evidence and Other

the Individual Defendants' "re-litigation of this issue" is prejudicial to him, all the more so because the Defendant's MIL "comes after their late-disclosure on the eve of trial."   Response at 3. Solis-Marrufo points out that the Defendants did not disclose a key witness until the eve of trial, a witness that is now a party to the lawsuit, and that the Individual Defendants' late disclosures prejudice him.   See Response at 4 (citing Davey v. Lockheed Martin Corp., 301 F.3d 1204, 1210 (10th Cir. 2002)).   Solis-Marrufo asserts that the MIL is "another example of the prejudice Plaintiff continues to suffer from."   Response at 4.   Solis-Marrufo contends that the Individual Defendants "seek to benefit from the assignment of a new trial judge and the serious delay in this case by seeking reversal of a ruling that was given in Plaintiff's favor and in contrast to the Individual Defendants' desired outcome," and that the Individual Defendants' MIL could require him to prepare for trial afresh, additionally prejudicing his position.   Response at 4. Solis-Marrufo contends that the Individual Defendants were able to obtain UNMH ASAP records regarding his cocaine use only because of the delay in discovery that their untimely disclosures caused.   See Response at 4-5.   Solis-Marrufo asserts that the Individual Defendant' had the opportunity to discover information about his cocaine use much earlier and should not profit from "their own discovery violations."   Response at 5.

    Second, Solis-Marrufo contends that evidence of his drug use is not relevant to any issue at trial.   Solis-Marrufo asserts that his cocaine use is unrelated to the incident or his alleged damages.   See Response at 5-6.   Solis-Marrufo contends that the Individual Defendants are seeking to introduce his statements regarding drug use only to influence the jury.   Solis-Marrufo

---

Discovery Abuses at 1-2, filed May 3, 2012 (Doc. 143).   The Defendants did not disclose Plum and Veronica Quintana as witnesses until May 2, 2012.   See Plaintiff's Motion for Entry of Default Judgment and Other Sanctions for Failure to Disclose Evidence, Withholding Evidence and Other Discovery Abuses at 2.

asserts that his drug use does not justify the Individual Defendants' conduct towards him, and the Court should not admit the evidence to attack his character.   See Response at 6.

Solis-Marrufo asserts that his "memory and mental capacity are not legitimately at issue in this case, and his alleged drug use should not be permitted to address this non-issue."   Response at 6.   Solis-Marrufo asserts that the discrepancies between his account of the incident and the Individual Defendants' version demonstrate "nothing more than a disagreement over the incident at issue."   Response at 6.   Solis-Marrufo contends that the Court's opinion in Chamberlin v. City of Albuquerque is distinguishable, because, unlike the plaintiff in Chamberlin v City of Albuquerque, who allegedly used drugs on the day of an incident, "there is no evidence that Mr. Solis was under the influence of drugs when he encountered the Defendant officers."   Response at 7.   Solis-Marrufo also asserts that the Individual Defendants are attempting to introduce evidence that lacks sufficient foundation, as their only evidence of his drug use are the statements he made to a court-ordered counselor.   Solis-Marrufo contends that the "statements they refer to are hearsay and Defendants have not identified Plaintiff's counselor as a witness in this case." Response at 7.   Solis-Marrufo concedes, however, that the "evidence may be relevant if offered in the right form regarding Plaintiff's damages."   Response at 7.

Solis-Marrufo further contends that evidence of his drug use is more prejudicial than probative, and, therefore, the Court should exclude the evidence under rule 403.   Solis-Marrufo asserts that the "drug-use evidence presents a particularly high risk of unfair prejudice and 'evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness's testimony.'"   Response at 8 (quoting United States v. Robinson, 956 F.2d 1388, 1397 (7th Cir. 1992)).   Solis-Marrufo asserts that the Court has "agreed that generally,

evidence of drug use is prejudicial."   Response at 8 (citing <u>Lowery v. City of Albuquerque</u>, No. CIV 09-0457 JB/WDS, 2012 WL 1378522 (D.N.M. Apr. 9, 2012)(Browning, J).   Solis-Marrufo asserts that "courts routinely exclude evidence of a litigant's prior drug use under similar circumstances.'"   Response at 8 (citing <u>Bennett v. Longacre</u>, 774 F.2d 1024, 1047 (10th Cir. 1985); <u>Meller v. Heil Co.</u>, 745 F.2d 1297, 1303 (10th Cir. 1984).   Solis-Marrufo contends that courts "specifically exclude evidence of prior drug use when it is used solely" for the Individual Defendants' proposed purposes of attacking his veracity and honesty before the jury.   Response at 9.

Lastly, Solis-Marrufo contends that the evidence upon which the Individual Defendants' rely for the MIL is "not new evidence."   Response at 9.   Solis-Marrufo argues that the Individual Defendants' did not discover his ASAP records until December, 2012, even though they were "provided with a release for the records in August, 2011."   Response at 9.   Solis-Marrufo argues that, "[d]espite having releases and information on Plaintiff's alleged substance abuse," the Individual Defendants did not seek discovery of his court-ordered counseling records until "their late disclosure provided them with the benefit of a delay in trial."   Response at 9.   Solis-Marrufo contends that admitting this evidence, at this point in the litigation, would "severely prejudice him."   Response at 9.

The Individual Defendants assert that reconsideration of the Order would not unfairly prejudice Solis-Marrufo, but will "properly allow the use of relevant and important evidence." Defendant Deputies' Reply in Support of Their Motion in Limine to Admit Evidence of Cocaine Use by Plaintiff, filed February 12, 2013 (Doc. 214)("Reply").   The Individual Defendants assert that any delay on their part in disclosing witnesses did not cause them to be able to file the MIL and

that they have new evidence which warrants reconsideration of the Order.   The Individual Defendants contend that they did not possess clinical evidence of Solis-Marrufo's drug use, or evidence that he "falsely denied his drug use and gave dishonest explanations for his failed drug tests" at the time Judge Schneider issued the Order.   Reply at 1-2.   The Individual Defendants assert that, although they did not obtain the UNMH ASAP records until December, 2012, they had requested the information in August, 2011, but UNMH ASAP did not send any records until December.   See Reply at 2-3.   The Individual Defendants assert that their request to UNMH ASAP, because it is a non-party, was not subject to the Court's discovery deadline.   The Individual Defendants also assert that some of the evidence they now possess did not exist at the time Judge Schneider issued the Order, and "therefore could not have been previously obtained even if Defendants had been provided with the records when they initially requested them." Reply at 3.   The Individual Defendants also assert that, unlike the party's motion filed on the eve of trial in Davey v. Lockheed Martin, Corp., they filed the MIL within the time frame allowed for pretrial motions, "more than two months prior to trial," and, thus, any change Solis-Marrufo must make to his trial strategy at this time does not prejudice him.   Reply at 3.

The Individual Defendants' assert that Solis-Marrufo's drug use is relevant to his "ability to perceive and recall events, to his character for truthfulness, and to his claim for damages." Reply at 4.   The Individual Defendants assert that, contrary to Solis-Marrufo's contention, "legitimate questions exist regarding Plaintiff's ability to perceive and recall the events forming the basis for this suit."   Reply at 4.   The Individual Defendants note that Solis-Marrufo has "explicitly identified as his primary assailant Deputy Leeper, whom records demonstrate was not even present at the police substation at the time of Plaintiff's attempted escape."   Reply at 4.   The

- 11 -

Individual Defendants also assert that Solis-Marrufo's drug use, and "continued denial of use in the face of multiple failed drug tests and his implausible explanations for the failed tests," is probative evidence regarding Solis-Marrufo's character for truthfulness.   Reply at 5.   The Individual Defendants assert that the Court should allow, on "cross examination of Plaintiff, to inquire into Plaintiff's implausible explanations for his failed tests."   Reply at 5 (citing Fed. R. Evid. 608(b)).   The Individual Defendants assert that "[m]ultiple instances of denying drug use in the face of positive tests," and offering false explanations for his positive tests, "are instances of conduct that are unquestionably probative of a witness' veracity, and should be an admissible topic of inquiry under Rule 608(b)."   Reply at 5.

The Individual Defendants point out that Solis-Marrufo admits that evidence of his drug use "may be relevant on the issue of damages."   Reply at 5 (citing Response at 7).   The Individual Defendants point out that, in <u>Lowery v. City of Albuquerque</u>, a case upon which Solis-Marrufo relies to argue against the admissibility of his drug use on the issue of damages, the Court "held that evidence of drug use is admissible as relevant to damages for emotional distress or pain and suffering."   Reply at 6 (citing <u>Lowery v. City of Albuquerque</u>, 2012 WL 1378522, at *19).

The Court held a hearing on February 13, 2013.   <u>See</u> Transcript of Hearing (taken February 13, 2013)("Tr.").[4]   The Individual Defendants first asserted that, at the time of the Order, they did not have Solis-Marrufo's UNMH ASAP records, which, they asserted "demonstrate[] plaintiffs['] extensive history of cocaine use and his denial related to that use."

---

[4] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and/or line numbers.

Tr. at 10:2-8 (Roman).   The Court inquired whether there is "really [any] sound scientific basis saying these drugs do affect memory and recall?"   Tr. at 10:14-17 (Court).   The Individual Defendants responded that, had Solis-Marrufo's drug use been very limited and not in temporal proximity to the events about which he will testify, then his drug use might not be relevant, and they conceded that the "case law [] hasn't specifically tied a particular drug to scientific evidence of lack of memory."   See tr. at 10:18-24 (Roman).   The Individual Defendants asserted that drug use is relevant to memory and recall, and that Solis-Marrufo's memory and ability to recall are at issue in this case.   See Tr. at 10:25-11:5 (Roman).   The Individual Defendants conceded that they do not have evidence that Solis-Marrufo was under the influence of drugs at the time of the incident.   See Tr. at 11:6-10 (Court, Roman).

The Court inquired how the Individual Defendants intend to question Solis-Marrufo regarding his drug use.   See Tr. at 11:11-15 (Court).   The Individual Defendants stated that the questions "would relate to[] the extent[] to which he's used cocaine before and after the incident in question."   Tr. at 11:16-18 (Roman).   The Individual Defendants stated that, if Solis-Marrufo's answers coincide with their evidence, they anticipate him to admit to using cocaine "for approximately at least a five-year period both in the period before the incident and continuing after the incident and to having been diagnosed as having a cocaine dependency problem."   Tr. at 11:24-12:6 (Roman).   The Individual Defendants stated that they will argue, in closing, that Solis-Marrufo's "ability to evaluate the events that evening and to recall them" may not be accurate.   Tr. at 12:13-17 (Roman).   The Individual Defendants stated that they do not have an expert who will testify about the effect of long-term cocaine use on memory, but they will suggest to the jury that Solis-Marrufo's cocaine use affected his ability to recall the events at issue.   See

- 13 -

Tr. at 13:1-5 (Roman).   The Court inquired whether cocaine has an effect on a user's ability to recollect and perceive events.   See Tr. at 13:6-12 (Court).   The Individual Defendants stated that they do not have any particular medical literature demonstrating cocaine's effect on memory and perception, but they also stated that the case law "allowed evidence of drug use [] for that specific purpose."   Tr. at 13:13-16 (Roman).   The Individual Defendants also noted that Solis-Marrufo's cocaine use is relevant to the issue of his requested emotional damages.   See Tr. at 13:19-24 (Roman).   The Individual Defendants asserted that, to the extent Solis-Marrufo argues that he is suffering "any mental distress . . . solely due to this alleged incident[,] defendants are entitled to point to other areas in which plaintiff's mental distress and capacity could be put at issue."   Tr. at 14:4-8 (Roman).   The Individual Defendants contended that the United States Court of Appeal for the Tenth Circuit's case law, and rule 405(b), supports such a use for evidence of a plaintiffs' previous drug use.   See Tr. at 14:8-11 (Roman).   The Individual Defendants stated that, for example, if Solis-Marrufo contends that he could not work because of the incident, evidence that his drug use interfered with his ability to work is relevant.   See Tr. at 14:17-22 (Roman).   The Court inquired whether the Individual Defendants would be satisfied with not bringing up Solis-Marrufo's drug use in their opening statements, and waiting until Solis-Marrufo presents evidence regarding damages, and, at that point, the Individual Defendants would use evidence of his drug use to counteract his asserted mental distress damages.   See Tr. at 15:3-9 (Court).   The Individual Defendants conceded that, without knowing exactly how Solis-Marrufo will assert his damages claims, they "have absolutely no problem with waiting[] and discussing it with the Court prior to bringing it up."   Tr. at 15:10-18 (Roman).   The Individual Defendants also asserted that the Court should permit them to inquire regarding his medical records as specific instances of

conduct on cross-examination, which demonstrate that he was using cocaine during discovery when he denied cocaine use, as evidence of his character for truth-telling.   See Tr. at 15:21-16:8 (Roman).

Solis-Marrufo pointed out that, although he was arrested for alleged possession of controlled substances, the cocaine allegedly found on him was never tested, and the dollar bill allegedly containing a controlled substance was not preserved.   See Tr. at 17:4-6 (Gorence). Solis-Marrufo, thus, asserted that there is no evidence he was under the influence of drugs at the time of the incident, and he emphasized that the state-law claims against him for possession of a controlled substance have been dismissed.   See Tr. at 17:6-13 (Gorence).   Solis-Marrufo asserted that the cases which support admissibility of a witness' drug use turn on whether the witness was using drugs at the time of events about which the witness testifies and that, given the Individual Defendant's concession that there is no evidence he was under the influence of cocaine on the night in question, there is no basis to admit his cocaine use into evidence.   See Tr. at 18:3-11 (Gorence).   Solis-Marrufo asserted that, "at a minimum," the Individual Defendants would have to bring in expert testimony regarding how much cocaine and at what time period is necessary to affect a user's memory.   Tr. at 18:24-19:1 (Gorence).

Solis-Marrufo further asserted that evidence of his cocaine use is not admissible under rule 405(b), as the Individual Defendants contend, because to put his character at issue on the basis of his drug use would be a prohibited general attack on his character.   See Tr. at 19:8-17 (Gorence). Solis-Marrufo contended that, because his drug use is not an "essential" element of the lawsuit, his cocaine use is not admissible under rule 405(b).   Tr. at 19:16-23 (Gorence).   Solis-Marrufo additionally asserted that the counseling records UNMH ASAP provided to the Individual

- 15 -

Defendants are inadmissible as hearsay, unless the counselor interviewing him testifies, and the Individual Defendants have not indicated she will.   See Tr. at 19:24-20:22 (Gorence).

The Court pointed out that the Individual Defendants are intending to use the medical records to demonstrate only that they have a good-faith basis for questioning Solis-Marrufo regarding his drug use, and not as extrinsic evidence.   See Tr. at 21:10-12 (Court); id. at 21:18-22 (Court).   Solis-Marrufo contended that his cocaine use is relevant only to the extent that it impaired his memory, and "there is no testimony to say that cocaine use historically affects one's memory."   Tr. at 22:1-4 (Gorence).   Solis-Marrufo contended that, if President Barrack Obama could use cocaine and still be competent for his tasks, then Solis-Marrufo's use of cocaine in the past does not render him unable to competently recall the events at issue.   See Tr. at 22:6-13 (Gorence).   Solis-Marrufo asserted that, "maybe if you had PCP and this was angel dust and/or a psychotropic drug," such use affects brain structure, then his drug use would be relevant, but he argued that he has not seen any evidence demonstrating that cocaine use affects memory retention, and he further asserted that any negative effect that cocaine has on memory is not "common knowledge."   Tr. at 22:14-17 (Gorence).

Solis-Marrufo asserted that whether he lied to a counselor regarding his drug use is irrelevant to whether he was "beaten up when he was in the custody of Bernalillo County [S]heriff officers."   Tr. at 22:18-21 (Gorence).   Solis-Marrufo clarified that his representations to a counselor regarding his drug use were unrelated to the case in chief.   See Tr. at 24:6-11 (Court, Gorence).   Solis-Marrufo asserted that if the Individual Defendants inquire regarding his drug abuse counseling, and he denies it, he will request a limiting instruction for the jury to not consider the inquiry.   See Tr. at 24:13-21 (Gorence).   Solis-Marrufo asserted that the Individual

Defendants are attempting to "paint him as a bad person," which is a prohibited purpose for the evidence.   Tr. at 24:21-25 (Gorence).

Regarding his claims for emotional and mental distress damages, Solis-Marrufo contended that there is no other explanation for the cause of those damages.   See Tr. at 25:1-7 (Gorence). Solis-Marrufo contended that this case is one "about a sexual torture" and that the jury has no other basis to find that he suffered as he did.   Tr. at 25:7-13 (Gorence).   Solis-Marrufo asserted that he will be "very meticulous in not opening the door in any testimony" regarding his "mental [] pain and suffering he had with testicles that swelled up to the size of grapefruit and the mental anguish from that the physical pain and what happened afterwards."   Tr. at 25:14-19 (Gorence). Solis-Marrufo further asserted that his sexual dysfunction was not caused by cocaine usage and that the Individual Defendants have no evidence that cocaine abuse can cause sexual dysfunction. See Tr. at 25:20-26:1 (Gorence).

Lastly, Solis-Marrufo asserted that the Individual Defendants are attempting to get "another bite at the apple" with his UNMH ASAP records.   Tr. at 26:7-13 (Gorence). Solis-Marrufo asserted that the Individual Defendants should have obtained the UNMH ASAP records earlier in this litigation and not on December 14, 2012, after discovery closed.   See Tr. at 16:14-17:3 (Gorence).   Solis-Marrufo asserted that the MIL is a result of the Individual Defendant's "extreme negligence and lack of due diligence."   Tr. at 27:8-13 (Gorence).

The Court pointed out that Tenth Circuit Pattern Jury Instruction Criminal 1.16 (2011) allows the Court to instruct the jury regarding a witness' use of drugs, indicating that the Tenth Circuit allows such testimony even in a criminal case.   See Tr. at 27:24-28:5 (Court).   The Court inquired what Solis-Marrufo's argument is with keeping it out in a civil case.   See Tr. at 28:6-8

- 17 -

(Court).   The Court noted that Instruction 1.16 does not require that the witness be under the influence of drugs at the time he or she testifies for the Court to give the instruction.   See Tr. at 28:13-17 (Court).   Solis-Marrufo asserted that, in United States v. Smith, the case cited in the notes to Instruction 1.16, the witness was under the influence "at the time he was supposed to recall," which is unlike Solis-Marrufo.   Tr. at 29:2-5 (Gorence).   Solis-Marrufo further asserted that there is not a similar civil jury instruction.   See Tr. at 29:1-2 (Gorence).   Solis-Marrufo asserted that he understood that instruction to be historically used when the witness was receiving a deal with the government in exchange for his or her testimony.   See Tr. at 29:7-12 (Gorence). Solis-Marrufo asserted that if Instruction 1.16 were applied whenever somebody used drugs, the population would have to weigh President Obama, former President William Clinton, and the Honorable Douglas H. Ginsburg, United States Circuit Judge for the District of Columbia Circuit's statements with particular care and concern.   See Tr. at 29:17-24 (Gorence).   Solis-Marrufo asserted that, without expert testimony linking a specific drug to memory loss, there is no need for additional care or concern regarding his testimony.   See Tr. at 29:24-30:2 (Gorence). Solis-Marrufo asserted that, if the Court gives Instruction 1.16, he will argue that President Obama should receive a disclaimer before he gives the State of the Union address as well.   See Tr. at 30:18-22 (Gorence).   Solis-Marrufo asserted that, if his testimony is called into question because of his cocaine use, then he will question the Individual Defendants regarding their alcohol consumption and marijuana use, which he asserted would be equally relevant.   See Tr. at 31:2-15 (Gorence).

The Individual Defendants contended that the Tenth Circuit case law regarding the admissibility of evidence of a witness' drug use is not confined to instances when the witness was

under the influence of drugs at the time of an event in question.   <u>See</u> Tr. at 31:21-25 (Roman).

The Individual Defendants asserted that, in <u>United States v. Smith</u>, the witness' drug use was

twenty years prior, yet the court still allowed questions regarding the effect her drug use had had

on her memory.   <u>See</u> Tr. at 31:25-32:7 (Roman).   The Court noted that Solis-Marrufo brought up

a valid concern regarding the extent of such questions and the extent to which a witness' personnel

files could be used as evidence of the witness' character for truthfulness.   <u>See</u> Tr. at 32:8-16

(Court).   The Individual Defendants asserted that those concerns are not implicated in this case,

because Solis-Marrufo used cocaine over an extended period of time.   <u>See</u> Tr. at 32:24-33:3

(Roman).   The Individual Defendants asserted that they do not intend to ask questions beyond that

which the case law permits.   <u>See</u> Tr. at 33:8-13 (Roman).

The Individual Defendants affirmed that they do not intend to introduce the UNMH ASAP

records as evidence at trial and that they only brought the records to the Court's attention to

demonstrate that they have a good-faith basis for inquiring regarding Solis-Marrufo's drug use.

<u>See</u> Tr. at 33:14-22 (Court, Roman).   The Individual Defendants contended that Solis-Marrufo

discussed the case in his interviews with the counselor, but they stated that they do not intend to

use that interview as extrinsic evidence to impeach him on cross-examination.   <u>See</u> Tr. at

33:23-34:6 (Roman, Court).

Solis-Marrufo pointed out, in closing, that <u>United States v. Smith</u> is a criminal case, and the

witness was testifying regarding the defendant's alibi, and the drug used was lysergic acid

diethylamide ("LSD"), which Solis Marrufo asserted is a "very different [] type of substance that is

known to be mind altering."   Tr. at 34:21-35:3 (Gorence).   Solis-Marrufo asserted that cocaine is

not known to have the same mind-altering affect.   <u>See</u> Tr. at 35:3-8 (Gorence).   Solis-Marrufo

asserted that the evidence prejudices him because of the Individual Defendants' "late disclosure post discovery." Tr. at 35:9-11 (Gorence). Solis-Marrufo asserted that he would have asked different questions at the Individual Defendants' depositions had he known that drug use would be an issue at trial. See Tr. at 35:15-20 (Gorence). Solis-Marrufo stated that, if the Individual Defendants are allowed to question him regarding his cocaine use, he will ask each of the Individual Defendants at trial whether they have ever used illegal substances. See Tr. at 35:20-25 (Gorence).

The Court stated that it has routinely allowed evidence of a witness' drug use at trial and has given Tenth Circuit Pattern Jury Instruction Criminal 1.16 in a number of criminal trials. See Tr. at 36:3-8 (Court). The Court stated that it is not certain whether it should make a distinction based upon the timing of the drug use or upon the drugs that Solis-Marrufo used, and the Court stated it would take the parties' arguments under advisement. See Tr. at 36:9-15 (Court). The Court stated that the evidence does not seem to be highly relevant, but noted that evidence of a witness' drug use has come up in a number of cases, and the Court does not have a reason to think this case is different. See Tr. at 36:16-21 (Court). The Court inquired of the Individual Defendants whether the drug use is still relevant to Solis-Marrufo's damages if he were to stipulate that he will not seek lost wages, and the Individual Defendants stated that they believe his cocaine use is still relevant to the cause of any damages for emotional or mental distress he alleges he suffered from the incident. See Tr. at 36:22-37:13 (Court, Roman).

## LAW REGARDING MOTIONS FOR RECONSIDERATION

Under Tenth Circuit case law,

[g]enerally, a "motion for reconsideration, not recognized by the Federal Rules of Civil Procedure, Clough v. Rush, 959 F.2d 182, 186 n. 4 (10th Cir. 1992), may be

> construed in one of two ways: if filed within 10 days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e); if filed more than 10 days after entry of judgment, it is treated as a motion for relief from judgment under Rule 60(b)." Computerized Thermal Imaging, Inc. v. Bloomberg, L.P., 312 F.3d 1292, 1296 n.3 (10th Cir. 2002). In addition, "every order short of a final decree is subject to reopening at the discretion of the district judge." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 . . . (1983); see also Fed. R. Civ. P. 54(b).

Price v. Philpot, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005). A district court has discretion to revise interlocutory orders before the entry of a final judgment. See Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., 212 F. App'x 760, 765 (10th Cir. 2007). When a plaintiff seeks to obtain reconsideration of a non-final order, his or her motion for reconsideration is considered "an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." Wagoner v. Wagoner, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991). A motion for reconsideration is an "inappropriate vehicle[ ] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d at 1012. "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." Servants of Paraclete v. Does, 204 F.3d at 1012 (citation omitted). A district court has considerable discretion in ruling on a motion to reconsider. See Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997).

## RELEVANT LAW REGARDING ADMISSIBILITY OF EVIDENCE OF A WITNESS' DRUG USE

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."   Fed. R. Evid. 602.   A party may attack a witness' capacity by "'showing that his or her capacity to observe, remember, or narrate is impaired.   Consequently, the witness' capacity at the time of the event, as well as at the time of trial, is significant.'"   United States v. Robinson, 583 F.3d 1265, 1272 (10th Cir. 2009)(quoting 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Fed. Evid. § 607.05(1)(Joseph M. McLaughlin Ed., 2d ed. 2009)).   The Tenth Circuit has recognized that a witness' "'ability to perceive the underlying events and testify lucidly at trial'" may be attacked through evidence of the witness' use of illicit substances.   United States v. Apperson, 441 F.3d 1162, 1195-96 (10th Cir. 2006)(quoting Jarrett v. United States, 822 F.2d 1438, 1446 (7th Cir. 1987)); United States v. Peet, 46 F.3d 1152, 1995 WL 21614, at *3 (10th Cir. 1995)(table)("While drug use may be used to attack a witness's ability to perceive the underlying events and testify lucidly at trial, it may not be used to attack general credibility.")[5]; United States v. Fairchild, 46 F.3d 1152, 1995 WL 21611, at *3 (10th Cir. 1995)(same).   "Evidence of a witness's drug use may be admitted to show the effect of the drug use on the witness's memory or recollection of events."   United States v. Dixon, 38 F.

---

[5] United States v. Peet is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .   However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."   United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that United States v. Peet has persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

App'x 543, 548 (10th Cir. 2002)(citing United States v. Smith, 156 F.3d 1046, 1054-55 (10th Cir. 1998)).

Accordingly, in United States v. Robinson, the Tenth Circuit held that a district court's refusal to allow a defendant to cross-examine a confidential informant ("CI") on his use of prescription medications to treat his hallucinations violated the defendant's right under the Sixth Amendment to the United States Constitution to confront a witness.   The informant's "[e]xtensive drug use since 2000" suggested that he may have been unable to testify competently at trial, either because he was under the influence of drugs at the time, or because he could not adequately recall the events about which he testified.   583 F.3d at 1274.   "In light of the substantial evidence calling into question the CI's perception and retention abilities, Robinson might have argued that the CI did not remember the events at issue but was merely parroting the [government's] version of events."   583 F.3d at 1274.   Because the CI was the government's key witness to the defendant's alleged firearm sale and his testimony was completely uncorroborated, the Tenth Circuit held that it was reversible error for the district court to not allow the defendant to cross examine the CI on his use of prescription medications and mental health history.   See 583 F.3d at 1274-75.   The Tenth Circuit noted that the district court allowed the defendant to cross-examine the CI regarding his illegal drug use, and thus, unlike the preclusion of cross-examination on the CI's drug use, the district court "did not violate the Sixth Amendment in that respect."   583 F.3d at 1274 n.9.   In United States v. Dixon, the Tenth Circuit held that it was not plain error, for a district court to allow, over a defendant's objection, a prosecutor to question the defendant regarding his use of crack cocaine.   See 38 F. App'x at 548.   Although the district court had previously granted a motion in limine excluding any evidence of the defendant's crack

cocaine use, the Tenth Circuit found that allowing the prosecutor's questions was not plain error because the "questions regarding Dixon's drug use were relevant to impeach . . . his credibility as a witness."   38 F. App'x at 548.   Similarly, in United States v. Smith, the Tenth Circuit held that questioning a witness about her LSD use twenty-years earlier was permissible, where the evidence was used to establish her "credibility to recall and recollection, her memory," and was not a general attack on her character for truthfulness.   156 F.3d at 1054-55.   The Tenth Circuit noted that, "[w]hile the use of certain drugs in the remote past may be entirely irrelevant to a witness's ability to remember, in this instance, it was for the jury to decide whether Ms. Doyle's use of LSD twenty years earlier affected her ability to recall the evening in question."   156 F.3d at 1055.   The Court has previously allowed cross-examination regarding a plaintiff's admissions and denials of methamphetamine, marijuana, and alcohol use, and whether the plaintiff was using narcotics on the day of an incident in which the Albuquerque Police Department allegedly used excessive force against the plaintiff.   See Chamberlin v. City of Albuquerque, 2005 WL 3213515, at **1-2.   The Court determined that questions regarding the plaintiff's history of drug and alcohol abuse may be relevant in determining whether he was entitled to damages for emotional distress from the incident.   The Court also determined that questions regarding the plaintiff's use of narcotics on the day of the incident may be relevant regarding the plaintiff's "ability to accurately perceive and recall the incidents on the day in question."   2005 WL 2313515, at *2.

On the other hand, the Tenth Circuit has held that "[d]rug use is not probative of untruthfulness any more than other illegal conduct that does not involve deception.   Accordingly, it is error to admit a witness's prior drug use for impeachment purposes pursuant to Fed. R. Evid. 608."   United States v. Fairchild, 1995 WL 21611, at *3.   The Tenth Circuit has also recognized

that a court may properly limit the amount of evidence of a party's previous drug use.  For example, in <u>Meller v. Heil Co.</u>, 745 F.2d 1297, 1303 (10th Cir. 1984), the Tenth Circuit held that a district court properly excluded a witness' hashish pipes from evidence at trial in a wrongful death suit, because the danger of unfair prejudice substantially outweighed the pipes' probative value. <u>See</u> 745 F.2d at 1303 (citing Fed. R. Evid. 403).   The defendant had sought to use the hashish pipes to impeach the plaintiff's testimony regarding the decedent's life expectancy, but the district court determined that the defendant's assertion that the plaintiff's marijuana use diminished his life expectancy lacked a medical foundation.   The district court further found, and the Tenth Circuit agreed, that "[Defendant] Heil sought to introduce the hashish pipes for the specific purpose of arousing juror sentiment against the decedent," an improper purpose for the evidence of the decedent's drug use.   745 F.2d at 1303.   In <u>United States v. Laplatney</u>, 157 F. App'x 93 (10th Cir. 2005)(unpublished), the Tenth Circuit found that a district court properly prohibited a defendant from admitting evidence of a witness' booking photographs over seven years, which the defendant alleged demonstrated that she used methamphetamine, based upon her physical deterioration displayed in the photographs.  <u>See</u> 157 F. App'x at 97.   The defendant did not provide any evidence that the photographs alone demonstrated the witness' ongoing methamphetamine use, and, thus, the district court did not admit the photographs under rule 901 of the Federal Rules of Evidence.[6]  <u>See</u> 157 F. App'x at 97.   Similarly, in <u>United States v. Cordova</u>, 340 F. App'x 427 (10th Cir. 2009)(unpublished), the Tenth Circuit recognized that a defendant need not question a witness regarding all of the details of her drug use to satisfy the

_____

[6] Rule 901 of the Federal Rules of Evidence requires that, to "satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."   Fed. R. Evid. 901.

defendant's Sixth Amendment right to confront a witness.   The defendant asserted that the district court "unconstitutionally limited cross-examination" to questions regarding the witness' drug use during the time in question, but the Tenth Circuit held that this limitation was not a violation of the defendant's constitutional rights.   350 F. App'x at 435-436.   See Smith v. Sirmons, 200 F. App'x 822, 826 (10th Cir. 2006)(unpublished)(holding that a district court's limitation of a defense counsel's cross-examination regarding a witness' drug use to whether the victim had ever paid the witness with drugs did not violate a defendant's Sixth Amendment right to confrontation, because "[t]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish'" (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).

## RELEVANT LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.   See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).   "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."   United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)).   "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."   Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).   The "exclusion of

evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).   As the Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .   This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, at 4-16 (3d ed. 1999)).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to the defendant's guilt or innocence of the crime charged.   See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999).   "Evidence is not unfairly prejudicial merely because it is damaging to an opponent's case." United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)).   Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R.

- 27 -

Evid. 403 advisory committee note)(emphasis in original).

## LAW REGARDING RULE 608 EVIDENCE

Rule 608 of the Federal Rules of Evidence provides mechanisms for attacking witnesses' character for truthfulness or untruthfulness.   See Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 1132505, at *5 (D.N.M. Mar. 20, 2012)(Browning, J.); United States v. Huerta-Rodriguez, 83 Fed. R. Evid. Serv. 681, 2010 WL 3834061, at *7 (D.N.M. 2010)(Browning, J.).   Rule 608(a) states:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.   But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Fed. R. Evid. 608(a).   The truthfulness or untruthfulness of a witness may be attacked by opinion or reputation evidence, without any proffer of evidence of a good character for truthfulness.   See United States v. Holt, 486 F.3d 997, 1002 (7th Cir. 2007)(noting that, while it is within the trial court's discretion to prohibit cross-examination of a police officer whether he had been suspended to call into question his credibility, the plaintiff "could have used Rule 608(a) and called a member of the department to testify directly about his opinions or reputation of [untruthfulness].");   Montoya v. Sheldon, 2012 WL 5476882, at **15-16 (allowing cross-examination regarding defendant police officers' SOPs and training only if the officers testify regarding the SOPs and training on direct examination, and only for the purpose of rebutting their direct examination);   Montoya v. Shelden, No. CIV 10-0360 JB/WDS, 2012 WL 4960707, at *21 (D.N.M. Oct. 12, 2012)(Browning, J.)(allowing limited cross-examination regarding a defendant police officer's previous instances of providing false information and lying during an internal affairs examination,

for purposes of attacking the officer's credibility, but not allowing cross-examination to touch on a criminal case pending against the officer).   To establish a proper foundation for the opinion or reputation testimony, a witness must show "such acquaintance with the person under attack, the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded."   United States v. Rios, 92 F.3d 1519, 1529 (10th Cir. 1996), overruled on other grounds by United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006)(quoting United States v. Bedonie, 913 F.2d 782, 802 (10th Cir. 1990)).

Rule 608(b) provides the rule for admission of specific instances of conduct:

Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.   But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

(1) the witness; or

(2) another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b).   "Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness." United States v. Beltran-Garcia, 338 F. App'x 765, 770 (10th Cir. 2009)(unpublished).   "Though Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence."   United States v. Beltran-Garcia, 338 F. App'x at 770.

Although 608(b) of the Federal Rules of Evidence does state that specific instances

- 29 -

> of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.

United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993).

Rule 608(b)'s exclusion of extrinsic evidence does not apply to using extrinsic evidence to contradict a witness's testimony at trial.   See 2 Stephen A. Saltzburg, Michael A. Martin, Daniel J. Capra, Fed. Rules of Evid. Manual § 608.02[7], at 608-17 (9th ed. 2006)("[E]xtrinsic evidence offered for contradiction is not barred by Rule 608(b) . . . .").   Rule 608 was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness," and not "to bar extrinsic evidence for bias, competency and contradiction impeachment."   Fed. R. Evid. 608 advisory committee's note to 2003 amendment (emphasis added).   See Fed. Rules of Evidence Manual, supra § 608.02[7], at 608-16 ("The exclusionary principle of Rule 608(b) applies only . . . to impeach the witness' character for veracity.   If the specific act is offered to impeach the witness on other grounds, then the absolute preclusion of extrinsic evidence is inapplicable.").   The Tenth Circuit has noted: "This rule [which] precludes the admission of extrinsic evidence . . . does not apply, however, when extrinsic evidence is used to show that a statement made by a defendant on direct examination is false. . . ."   United States v. Fleming, 19 F.3d 1325, 1331 (10th Cir. 1994)(citing 27 C. Wright & V. Gold, Fed. Practice and Procedure § 5096, at 546-47 (1990)).   "If there is evidence that specifically contradicts a witness's testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying."   United States v. Cerno, 529 F.3d 926, 944 (10th Cir. 2008).   "This doctrine, known as specific contradiction, allows such impeachment even if the evidence elicited ordinarily might be collateral

or otherwise inadmissible."   Montoya v. Shelden, No. CIV 10-0360 JB/WDS, 2012 WL 4950707,

at *12 (D.N.M. Oct. 12, 2012)(Browning, J.)(quoting United States v. Crockett, 435 F.3d 1305,

1313 (10th Cir. 2006))(internal quotations and alterations omitted).   Thus, an opposing party may

not prove up past specific instances of untruthfulness extrinsically unless and until the witness has

offered false statements on the stand.   See Montoya v. Shelden, 2012 WL 4950707, at *22

("Should Lovato disclaim any of the information regarding his providing false information to

Chavez or the investigation board, the Court will allow the Montoyas to prove up the lies

extrinsically. . . .").

## ANALYSIS

The Court grants the MIL.   The Court determines that it may, in its discretion, reconsider

the Order, because the Order is inconsistent with the Court's rulings and Tenth Circuit precedent.

The Court also notes that the Individual Defendants have new evidence, which may have been

unavailable to them at an earlier date, and that the evidence of Solis-Marrufo's use of cocaine over

the previous five years is relevant to their defense at trial.   The Court will allow the Individual

Defendants to question Solis-Marrufo regarding his cocaine use and its impact on his ability to

recall accurately the events about which he will testify at trial.   The Court will permit the

Individual Defendants to inquire, on cross-examination, into Solis-Marrufo's previous denials and

admissions of drug use.   If Solis-Marrufo puts his mental state at issue for the purpose of proving

his mental and emotional distress, the Court will allow the Individual Defendants to inquire into

Solis-Marrufo's cocaine use, and the effect it may have had on his alleged emotional and mental

distress damages.   The Court will not allow the Individual Defendants to introduce extrinsic

evidence of Solis-Marrufo's cocaine use, except for the limited purpose of contradicting his direct

testimony regarding his cocaine use.  The Individual Defendants represented to Solis-Marrufo and the Court at the hearing that they do not intend to introduce extrinsic evidence of his cocaine use on cross-examination, and the Court will hold the Individual Defendants to their representation.

## I.      **THE COURT WILL RECONSIDER THE ORDER.**

The Individual Defendants assert that the Court may properly reconsider the Order, in its discretion, and that reconsideration is appropriate because new evidence has come to light.  See MIL at 3.  Solis-Marrufo contends that the Individual Defendants are profiting from additional discovery only because of their delay in disclosing witnesses.  See Response at 6.  The Court concludes that it should exercise discretion to reconsider the Order, because Judge Schneider's ruling is contrary to the Court's precedent and Tenth Circuit case law, and because the Individual Defendants have recently obtained evidence upon which the Court should allow them to cross-examine Solis-Marrufo.

A district court has discretion to revise interlocutory orders before the entry of a final judgment.  See Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., 212 F. App'x at 765. "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."   Servants of Paraclete v. Does, 204 F.3d at 1012.   Judge Schneider ruled that the Defendants could not question Solis-Marrufo regarding his alleged cocaine use, because: (i) the Defendants did not present any evidence regarding his cocaine use; and (ii) the Defendants did not allege that his cocaine use impaired his ability to remember the incident.  See Order at 2.   The Individual Defendants assert that they received Solis-Marrufo's UNMH ASAP records in

December, 2012, but they requested the records in August, 2011.   See Letter from Luis Robles to

UNM Health Sciences Center re: Solis-Marrufo, Javier v. Board of Commissioners, et al., dated

August 30, 2011, filed February 12, 2013 (Doc. 214-2)(providing UNM Health Sciences Center

with payment for the production of Solis-Marrufo's records and requesting that UNM Health

Sciences Center "forward the records to my office as soon as possible").   Although the Individual

Defendants could have realized earlier that the UNM Health Sciences Center had failed to provide

the requested UNMH ASAP records, their request for the records was not untimely, and, as a

non-party, the UNM Health Sciences Center is not bound by discovery deadlines.   See

Chamberlin v. City of Albuquerque, 2005 WL 2313527, at **1-2 (allowing a plaintiff to use some,

but not all, information he obtained through informal discovery).   Parties may engage in informal

discovery up until trial, although the use of such evidence may be restricted.   Here, that the

Individual Defendants acquired the UNMH ASAP records after the close of discovery does not,

therefore, violate the Court's discovery orders or prejudice Solis-Marrufo.   Although

Solis-Marrufo asserts that reconsidering the Order will unfairly prejudice him, the Individual

Defendants timely filed the MIL within the deadlines for pretrial motions, and the Order conflicts

with this Court's previous rulings and Tenth Circuit precedent.[7]   To deny the Individual

Defendant's request to reconsider the MIL could, therefore, result in injustice.   The Court,

therefore, reconsiders the Order.

---

[7] The deadline for pretrial motions was January 15, 2013.   See Amended Minute Order,
filed January 8, 2013 (Doc. 203).

**II.    THE INDIVIDUAL DEFENDANTS MAY QUESTION SOLIS-MARRUFO REGARDING HIS PREVIOUS COCAINE USE, BUT MAY NOT INTRODUCE EXTRINSIC EVIDENCE REGARDING HIS COCAINE USE EXCEPT TO CONTRADICT SOLIS-MARRUFO'S DIRECT TESTIMONY REGARDING COCAINE USE.**

Judge Schneider reasoned that he should exclude evidence of Solis-Marrufo's cocaine use because the Defendants did not allege that Solis-Marrufo's ability to recall the incident was impaired, and because the Defendants did not present any evidence regarding his cocaine use. See Order at 2.   The Individual Defendants contend that Solis-Marrufo's cocaine use provides relevant fodder for cross-examination of him regarding his ability to perceive or recall the incident. See MIL at 4.   They additionally assert that the evidence is relevant whether the incident caused the mental and emotional distress damages that Solis-Marrufo asserts, or his cocaine use contributed to his mental and emotional distress.   See MIL at 7.   Solis-Marrufo asserts that his cocaine use is not relevant to any issue in this case, that there is no evidence he was under the influence of drugs at the time of the incident, and that any evidence of his cocaine use lacks sufficient foundation.   See Response at 6-7.   He concedes, however, that his cocaine use may be relevant "if offered in the right form" regarding his damages claims.   Response at 7. Solis-Marrufo asserts, nonetheless, that evidence of his cocaine use has a prejudicial effect that will outweigh any of the evidence's probative value.   See Response at 8.

**A.    THE INDIVIDUAL DEFENDANTS MAY INQUIRE OF SOLIS-MARRUFO REGARDING HIS COCAINE USE FOR IMPEACHMENT PURPOSES AND WITH RESPECT TO HIS REQUESTED MENTAL AND EMOTIONAL DISTRESS DAMAGES.**

The Court will grant the Individual Defendants' request to question Solis-Marrufo regarding his cocaine use.  Solis-Marrufo is correct that his cocaine use does not justify any injuries he may have received at the Defendants' hands.  See Response at 5-6.  Solis-Marrufo is

also correct that "[d]rug use is not probative of untruthfulness any more than other illegal conduct that does not involve deception." United States v. Fairchild, 1995 WL 21611, at *3. See United States v. Peet, 1995 WL 21614, at *3 ("While drug use may be used to attack a witness's ability to perceive the underlying events and testify lucidly at trial, it may not be used to attack general credibility.").

On the other hand, Solis-Marrufo is not correct that his cocaine use is irrelevant to his testimony entirely. The Tenth Circuit has held that "[e]vidence of a witness's drug use may be admitted to show the effect of the drug use on the witness's memory or recollection of events." United States v. Dixon, 38 F. App'x at 548. Solis-Marrufo contends that the Individual Defendants should be required to submit expert testimony regarding the effect of cocaine on a person's memory, and how much cocaine is required to negatively affect a person's ability to perceive and recall events, but the Tenth Circuit cases addressing the drug use as impeachment evidence are not predicated upon expert witness testimony. See Tr. at 18:24-19:1 (Gorence). Indeed, in United States v. Dixon, the Tenth Circuit held that questions regarding a defendant's cocaine use were relevant to impeach the defendant's credibility as a witness.[8] See United States v. Dixon, 38 F. App'x at 548. A "witness' capacity at the time of the event, as well as at the time of trial, is significant." United States v. Robinson, 583 F.3d at 1272 (internal quotations omitted).

The Court determines that evidence of Solis-Marrufo's previous drug use has a probative effect that its danger of unfair prejudice does not outweigh. See Fed. R. Evid. 403. "In

---

[8] There is some evidence that cocaine use can cause memory loss. See William J. Cromie, Researchers See How Cocaine Affects the Brain, Harvard University Gazette, Mar. 12, 1998, available at http://news.harvard.edu/gazette/1998/03.12/ResearchersSeeH.html (reporting on a Harvard University study's finding that cocaine users experience slower blood flow in the brain, which correlates with memory loss).

performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d at 1274. The Court anticipates that the credibility of the witnesses who testify will be at the forefront of the jurors' minds in deciding this case. Whether Solis-Marrufo accurately perceived and recollects the incident is, therefore, probative evidence for his case and for the Defendants' defense. The affect that Solis-Marrufo's cocaine use has had on his mental and emotional state is also highly probative regarding any mental and emotional damages he may assert. Additionally, the Court believes that the unfair prejudice evidence of his cocaine use poses is mitigated, because the Individual Defendants will not introduce any extrinsic evidence of his cocaine abuse or addiction. See, e.g., Meller v. Heil Co., 745 F.2d at 1303 (excluding extrinsic evidence of a decedent's marijuana use because the defendant sought to introduce the decedent's hashish pipes for the sole purpose of "arousing juror sentiment against the decedent"). The Court concludes that it should not use the "extraordinary remedy" of rule 403 in this instance to exclude evidence of Solis-Marrufo's previous drug use. United States v. Smalls, 605 F.3d at 787.

The Court will allow the Individual Defendants to cross-examine Solis-Marrufo regarding his current cocaine use and his cocaine use around the time of the incident. Although Solis-Marrufo cites to Bennett v. Longacre and Meller v. Heil Co. for the proposition that evidence of a "litigant's prior drug use under similar circumstances" is generally excluded, those cases are inapposite. In Bennett v. Longacre, a plaintiff attempted to introduce extrinsic evidence of a defendant's previous alcohol and drug abuse on direct examination, which rule 608(b) prohibits, and, furthermore, which the Court has prohibited the Individual Defendants from introducing to

- 36 -

impeach him on cross-examination.   Additionally, the plaintiff in <u>Bennett v. Longacre</u> was attempting to use the defendant's history of alcohol and drug abuse to demonstrate the defendant had a character for untruthfulness, which is also prohibited, and which, again, is a purpose for which the Court will not allow the Individual Defendants to use evidence of Solis-Marrufo's cocaine use.   <u>See</u> 774 F.2d at 1027-28.   In <u>Meller v. Heil Co.</u>, a defendant in a wrongful death suit was attempting to introduce extrinsic evidence -- hashish pipes -- in support of his theory that a decedent's marijuana use shortened his life expectancy.   The Tenth Circuit held that the district court was correct to determine that there was no foundational evidence linking marijuana use to a decedent's life expectancy, and, furthermore, the hashish pipes, as extrinsic evidence, were more prejudicial than probative.   <u>See</u> 745 F.2d at 1303.   Here, on the other hand, the Court is not only precluding the use of extrinsic evidence to impeach Solis-Marrufo, unless he says something impeachable on direct, but the Court is also acting under established Tenth Circuit precedent admitting evidence of a witness' cocaine use to attack his or her credibility.   <u>See</u> <u>United States v. Dixon</u>, 38 F. App'x at 548.   Lastly, the Court's decision in <u>Chamberlin v. City of Albuquerque</u> is relevant to Solis-Marrufo, even though the Individual Defendants' may not prove that he used cocaine on the day of the incident, because, just as Chamberlin's history of drug use beyond the day of an alleged incident of excessive force was relevant to his testimony at trial, <u>see</u> 2005 WL 2313515, at *2, Solis-Marrufo's cocaine use for the "past five years," if true, is relevant to his testimony at trial, MIL at 4.   The Court, accordingly, will allow the Individual Defendants to question Solis-Marrufo on cross-examination regarding his current cocaine use and his cocaine use around the time of the incident, because his cocaine use and the affect it has had on his memory is admissible to attack his ability to perceive and recall the events about which he will testify.

The Court will also allow the Individual Defendants to question Solis-Marrufo on cross-examination regarding his previous admissions and denials of cocaine use.   Rule 608(b) allows inquiry into specific instances of conduct that are "probative of the character for truthfulness or untruthfulness of . . . the witness."  Fed. R. Evid. 608(b)(1).  The Court has previously allowed similar inquiries.  See Chamberlin v. City of Albuquerque, 2005 WL 2313515, at *2 ("The Court will allow Lochocky to introduce Chamberlin's admissions and denials of drug and alcohol use.").   The Individual Defendants should be mindful, however, to not stray into generally attacking Solis-Marrufo's character for truthfulness based upon his cocaine use alone.

Lastly, if Solis-Marrufo asserts that he has suffered mental and emotional distress because of the Individual Defendants' actions, the Court will allow the Individual Defendants to contradict his asserted damages by inquiring into his previous and current cocaine use.   Such evidence is admissible under rule 405, because claims for mental and emotional damages put Solis-Marrufo's mental and emotional state at issue.   In Cerca v. Thomas, 30 F. App'x 931 (10th Cir. 2002)(unpublished), the Tenth Circuit ruled that a district court properly allowed a defendant to introduce evidence that a home in which children witnessed their father's death was used to sell drugs, as the Tenth Circuit held that whether the children were exposed to "drug usage or criminal activity was relevant to the issue of the amount of damage suffered by the children," when police officers killed their father during the execution of a search warrant.   30 F. App'x at 933-34.   The Court has previously held that drug abuse is relevant to a claim for damages where a plaintiff seeks damages for emotional distress, finding that "[e]vidence of drug use is an important tool of cross-examination for persons seeking emotion or pain and suffering damages."   Lowery v. City

of Albuquerque, 2012 WL 1378522, at *19.   See Chamberlin v. City of Albuquerque, 2005 WL 2313515, at *2 ("Because Chamberlin's uncharged misconduct, drug and alcohol use, and mental illness is relevant to rebut Chamberlin's claim of damages, the Court will allow Lehocky to introduce certain specific instances of Chamberlin's prior conduct as described in this opinion and order.").   Other courts have also held that past drug use is relevant to non-economic damages. The United States District Court for the District of North Dakota has held that a plaintiff's "medical history, medical conditions, drug and alcohol abuse, psychological problems, and stressors in her life are relevant" to a claim for non-economic damages.   Magelky v. BNSF Ry. Co., No. 1:06-cv-025, 2008 WL 238451, at *11 (D.N.D. Jan. 28, 2008)("If Magelky decides to pursue a claim for non-economic damages at trial, that decision will likely 'open the door' to the admissibility of most of the 'garbage' evidence to which she now objects.").

### B.   THE COURT WILL ONLY ALLOW THE INDIVIDUAL DEFENDANTS TO INTRODUCE SOLIS-MARRUFO'S UNMH ASAP RECORDS AS EXTRINSIC EVIDENCE TO CONTRADICT SOLIS-MARRUFO'S TESTIMONY REGARDING COCAINE USE.

The Court will allow the Individual Defendants to question Solis-Marrufo regarding his cocaine use, but will only allow the Individual Defendants to introduce extrinsic evidence of his cocaine use to contradict his testimony, if any, regarding cocaine use.   At the hearing, the Individual Defendants represented to the Court and Solis-Marrufo that they do not intend to introduce the UNMH ASAP records as extrinsic evidence on cross-examination for impeachment purposes.   See Tr. at 33:14-22 (Court, Roman)(the Individual Defendants stating that they will not use the UNMH ASAP records to impeach Solis-Marrufo, and that they are "not intending to

use them for [impeachment] purposes").[9]   The Court will hold the Individual Defendants to their representation at the hearing that they will not use the UNMH ASAP records as extrinsic evidence to question his ability to accurately perceive or recall the events about which he testifies, to demonstrate his character for untruthfulness, or to disprove his theories of emotional and mental distress damages.   See Tr. at 34:8-14 (Roman)("My understanding is that . . . we couldn't use extrinsic evidence to impeach him on something that he testified to on cross-examination even if it contradicted what was in these records. . . .   [W]e are not intending to use them for that purpose."). On the other hand, the Individual Defendants reserved the right to use extrinsic evidence to contradict Solis-Marrufo's statements on direct examination.   See Tr. at 34:8-10 (Roman)("[A]ny impeachment would only have to be on something that he testified to on direct examination."). The Individual Defendants may properly use the UNMH ASAP records for the limited purpose of contradicting Solis-Marrufo's direct testimony regarding his cocaine use.   Rule 608's "prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness," and not "to bar extrinsic evidence for bias, competency and contradiction impeachment."   Fed. R. Evid. 608 advisory committee's note

---

[9] While the Court will enforce the Individual Defendants' representation to the Court and Solis-Marrufo that they will not use the ASAP records as extrinsic evidence to impeach Solis-Marrufo, the Court does not necessarily agree that rule 608 prohibits the Individual Defendants from using the records to question Solis-Marrufo's ability to testify competently. Rule 608's "prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness," and not "to bar extrinsic evidence for bias, competency and contradiction impeachment."   Fed. R. Evid. 608 advisory committee's note to 2003 amendment (emphasis added).   Thus, the Individual Defendants questions regarding Solis-Marrufo's competency to perceive or recall events are not within rule 608's purview.   Nonetheless, the Individual Defendants stated that they have no intention of using the ASAP records to question Solis-Marrufo's ability to competently testify, and the Court will hold the Individual Defendants to their representations at the hearing.   See Tr. at 34:8-14 (Roman).

to 2003 amendment (emphasis added).  For example, if, on direct examination, Solis-Marrufo denies ever having used cocaine, or having used cocaine within the time period reflected in the UNMH ASAP records, or that he ever received treatment at UNMH ASAP, the Individual Defendants may, for that limited purpose, use the UNMH ASAP records to contradict his direct testimony.  If Solis-Marrufo does not open that door, the Individual Defendants may not submit the UNMH ASAP records into evidence on cross-examination for any impeachment purpose.

The Court, therefore, grants the MIL.  The Court determines that the Order is contrary to established Tenth Circuit precedent and the Court's previous rulings, and, therefore, the Court in its discretion reconsiders the Order.  The Court will allow the Individual Defendants to inquire into Solis-Marrufo's cocaine use at the time of the incident and at the time he testifies, as a means of attacking his ability to perceive and recall the incident.  The Individual Defendants may also question Solis-Marrufo regarding his previous admissions of denials of cocaine use, as a means of attacking Solis-Marrufo's character for truthfulness.  The Individual Defendants may question Solis-Marrufo regarding his cocaine use as a means of contradicting any allegation he makes that he has sustained mental and emotional damages from the incident.  The Individual Defendants may not introduce extrinsic evidence of Solis-Marrufo's cocaine use, except to impeach him for statements he makes on direct examination regarding his cocaine use.[10]

---

[10] The Individual Defendants may only use extrinsic evidence of Solis-Marrufo's cocaine use to contradict specific statements he makes on direct examination regarding cocaine use. Because the Individual Defendants represented at the hearing that they do not intend to introduce the extrinsic evidence on cross-examination, except to Solis-Marrufo's UNMH ASAP records are relevant to impeach his direct testimony, the Court will not allow the Individual Defendants to introduce extrinsic evidence of Solis-Marrufo's cocaine use to demonstrate that cocaine usage impaired his ability to perceive or recall events about which he testifies, that he has a character for untruthfulness, or that the incident did not cause his asserted mental or emotional distress damages.

      **IT IS ORDERED** that the Defendants' Motion in Limine to Admit Evidence of Cocaine

Use by Plaintiff, filed January 15, 2013 (Doc. 204), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Robert Gorence
Louren M. Oliveros
Andrea D. Harris
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Terri S. Beach
Miller Stratvert P.A.

    -- and --

Luis E. Robles
David Roman
Robles, Rael, & Anaya
Albuquerque, New Mexico

     *Attorneys for the Defendants*

- 42 -