# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JAVIER SOLIS-MARRUFO,

      Plaintiff,

vs.                                        No. CIV 11-0107 JB/KBM

BOARD OF COMMISSIONERS FOR
THE COUNTY OF BERNALILLO,
BENJAMIN FULLER,
CHRISTOPHER LEEPER, AND
JASON PLUM,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant Deputies' Motion to Reconsider Prior Trial Court's Ruling on Defendant Deputies' Motion in Limine No. II: The Exclusion of Evidence at Trial Regarding Police Standard Operating Procedures, Training, and Less Intrusive Alternatives, filed January 15, 2013 (Doc. 205)("MIL").   The Court held a hearing on February 13, 2013.   The primary issues is whether the Court should allow Plaintiff Javier Solis-Marrufo to attack the credibility of Defendants Benjamin Fuller, Christopher Leeper, and Jason Plum's (collectively, "the Individual Defendants") on cross-examination by inquiring into Bernalillo County Sheriff's Department standard operating procedures ("SOPs").   The Court will grant the MIL and not allow Solis-Marrufo to inquire whether the Individual Defendants violated SOPs in documenting the incident giving rise to this case, because the Tenth Circuit has held that SOPs are not relevant in excessive-force cases, and, even if the SOPs are relevant for impeachment and not to establish a constitutional violation, the SOPs have a prejudicial effect that substantially outweighs their probative value.

## FACTUAL BACKGROUND

This case arises from Solis-Marrufo's alleged civil rights violations, which he asserts occurred in relation to an incident on February 2, 2009, involving the Bernalillo County Sheriff's Department in Albuquerque, New Mexico.  See Third Amended Complaint for Violations of Civil Rights, Tort Claims, and Damages ¶¶ 8-35, at 2-6, filed October 5, 2012 ("Complaint").   On February 2, 2009, Fuller responded to a 911 call reporting domestic violence at 1521 Aragon Road SW.  See Complaint ¶¶ 5, 8-10, at 2.   Fuller was tasked with finding a suspect and found Solis-Marrufo seated in a stopped car.   Fuller determined that Solis-Marrufo was not the suspect for which he was searching, but he nonetheless investigated Solis-Marrufo for driving under the influence of alcohol or drugs and arrested Solis-Marrufo for possession of a controlled substance. See Complaint ¶¶ 9, 11, 14-16, 19-20 at 2-4.   The dollar bill on Solis-Marrufo that Fuller believed contained a controlled substance was not preserved in evidence.   See Complaint ¶ 19, at 4.   Later, at a substation, Solis-Marrufo attempted to leave the area, and the Individual Defendants, among other officers, allegedly attacked Solis-Marrufo.   See Complaint ¶ 24, at 4.   During this altercation, Solis-Marrufo was allegedly hit and/or "kicked numerous times on his body, and specifically in his groin area."   Complaint ¶ 26, at 5.   Solis-Marrufo states that he has suffered numerous temporary and permanent physical and emotional injuries from the altercation at the substation.   See Complaint ¶¶ 30-33, at 6.   He states that he has incurred $14,172.62 in medical bills for the treatment of his injuries, and he believes he will need future medical and mental health treatment for the injuries he suffered from the incident at the substation.   See Complaint ¶¶ 34-35, at 6.

## PROCEDURAL BACKGROUND

Solis-Marrufo alleges in Count I of the Complaint that the Individual Defendants used

excessive and unreasonable force against him during the incident which the Complaint describes, in violation of 42 U.S.C. § 1983.   See Complaint ¶¶ 35-40, at 6.   Solis-Marrufo alleges in Count II of the Complaint that the Individual Defendants are liable under 42 U.S.C. § 1983 for failing to intervene to prevent the harm he suffered at the substation.   See Complaint ¶¶ 41-45, at 7. Solis-Marrufo alleges in Count IV[1] of the Complaint that the Individual Defendants battered and assaulted him at the substation, causing him "physical, mental and emotional damages, including, but not limited to, both temporary and permanent physical injury and pain and suffering." Complaint ¶¶ 46-52, at 7-8.   Solis-Marrufo alleges in Count V of the Complaint that the Individual Defendants and Defendant Board of Commissioners for the County of Bernalillo are liable for negligence for breaching their duty to protect him from assault and battery by law enforcement officers.   See Complaint ¶¶ 53-61, at 8-9.   Solis-Marrufo seeks compensatory and special damages against the Defendants, punitive damages against the Individual Defendants, costs, expenses and attorneys' fees, and pre- and post-judgment interest.   See Complaint at 9.   He demands a jury.   See Complaint at 9.

The parties consented on September 23, 2011, to the Honorable W. Daniel Schneider, United States Magistrate Judge conducting "all proceedings in this civil action (including a jury or nonjury trial) and to order the entry of final judgment."   Notice, Consent, and Reference of a Civil Action to Magistrate Judge W. Daniel Schneider, filed September 23, 2011 (Doc. 70).   On April 30, 2012, Judge Schneider issued an order denying the Defendant Deputies' Motion in Limine No. II: The Exclusion of Evidence at Trial Regarding Police Standard Operating Procedures, Training, and Less Intrusive Alternatives, filed April 13, 2012 (Doc. 105).   See Order Denying Defendant

---

[1]  The Complaint does not contain a count "III."   Complaint at 7.

Deputies' Motion in Limine No. II: The Exclusion of Evidence at Trial Regarding Police Standard Operating Procedures, Training, and Less Intrusive Alternatives, filed April 30, 2012 (Doc. 128)("Order").   In the Order, Judge Schneider denied the Individual Defendants' request to exclude evidence that they "failed to follow standard operating procedures or violated their training in how they handled the incident that occurred on February 9, 2009."   Order at 1.   Judge Schneider concluded that Solis-Marrufo does not seek to introduce such evidence to prove that the Individual Defendants' violated his constitutional rights, but, rather, he seeks to admit the evidence to demonstrate that the Individual Defendants' lack credibility.   Judge Schneider stated that, "[i]f the manner in which Defendants charged Plaintiff, processed Plaintiff, and wrote reports on his attempt to flee were in violation of standard operating procedures or their training, it would be evidence for the jury to consider in weighing the truthfulness of the officers['] testimony about the incident."   Order at 2.   Judge Schneider reasoned that the Court could give a limiting instruction regarding the evidence so that the jury would understand that the Individual Defendants' violations of the SOPs or their training is not evidence that the Individual Defendants violated Solis-Marrufo's rights.   See Order at 2.   Judge Schneider recused himself from the case on May 7, 2012 and the case was reassigned to the Honorable C. LeRoy Hansen, Senior United States District Judge for the District of New Mexico.   See Doc. 151.   The case was reassigned to the Court on May 23, 2012.   See Doc. 155.

The Individual Defendants move the Court to reconsider Judge Schneider's Order.   The Individual Defendants assert, first, that the Court has the authority to reconsider the Order as it resolved an interlocutory issue.   See MIL at 2-3.   The Individual Defendants also assert that the Order runs "counter to the Court's previous rulings regarding this precise evidentiary issue."

MIL at 3.   The Individual Defendants assert that the Court has "consistently held that Tenth Circuit precedent categorically precludes plaintiffs from offering evidence at trial regarding standard operating procedures or training in support of a § 1983 claim."   MIL at 3 (citing Mata v. City of Farmington, 798 F. Supp. 2d 1215, 1219 (D.N.M 2011)(Browning, J.); Jonas v. Bd. of Comm'rs of Luna Cnty., 699 F. Supp. 2d. 1284, 1299 (D.N.M. 2010)(Browning, J.); Vondrak v. City of Las Cruces, No. CIV 2005-0172 JB/LAM, 2009 WL 3241555, at *14 (D.N.M. Aug. 25, 2009)(Browning, J.); Chamberlin v. City of Albuquerque, No. CIV 02-0603 JB/ACT, 2005 WL 3213527, at **1-2 (D.N.M. July 31, 2005)(Browning, J.)).

The Individual Defendants assert that the reconsideration of the Order is "appropriate not only so that this Court may exercise its independent judgment regarding what evidence it will allow at trial, but also in light of a ruling issued by this Court subsequent to the decision by the previously-assigned [c]ourt."   MIL at 4.   The Individual Defendants point out that, in Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 5476882, at *9 (D.N.M. Oct. 31, 2012)(Browning, J.), the "same counsel for Plaintiff in this case made precisely the same arguments for admissibility," and the "Court rejected this backdoor attempt to get otherwise inadmissible evidence before the jury, finding that the evidence would only be relevant to demonstrate that the defendants did not act as they should have under the circumstances," and that the Individual Defendants, thus, acted unreasonably -- "a use of such evidence that is precluded by Tenth Circuit precedent."   MIL at 5 (citing Montoya v. Sheldon, 2012 WL 5476882, at *9).   The Individual Defendants, therefore, request the Court to reconsider the Order and exclude the evidence of their SOPs and training at trial.   See MIL at 5.

Solis-Marrufo asserts that: (i) reconsideration of the Order will "result in further prejudice

to Plaintiff caused by Defendants' late disclosures and failure to abide by discovery rules"; (ii) he "should be allowed to introduce evidence of the officer[s'] training and compliance with standard operating procedures so that the jury may evaluate" the officers' credibility and testimony; and (iii) he "should be allowed to introduce evidence of defendant officers' training on the standard operating procedures in order to evaluate the reasonableness of their actions."[2]   Response to Defendant Deputies' Motion to Reconsider Prior Trial Court's Ruling on Defendant Deputies' Motion in Limine No. II: The Exclusion of Evidence at Trial Regarding Police Standard Operating Procedures, Training, and Less Intrusive Alternatives, filed January 29, 2013 (Doc. 206)("Response").   Solis-Marrufo first contends that, although the Court may revisit an interlocutory order, the Court should, in its discretion, not revisit the Order, because "revisiting the previous trial judge's ruling would further enhance the prejudice suffered by Plaintiff as a result of Defendants' late disclosures in this case."   Response at 1-2.   Solis-Marrufo asserts that the Individual Defendants' "re-litigation of this issue" is prejudicial to him, all the more so because the Defendants' MIL "comes after their late-disclosure on the eve of trial."   Response at 2. Solis-Marrufo points out that the Defendants did not disclose a key witness until the eve of trial, a witness that is now a party to the lawsuit, and that the Individual Defendants' late disclosures prejudice him.   See Response at 2 (citing Davey v. Lockheed Martin Corp., 301 F.3d 1204, 1210 (10th Cir. 2002)).   Solis-Marrufo contends that the Individual Defendants "seek to benefit from

---

[2] Solis-Marrufo asserts that the Defendants failed to disclose two witnesses until the "eve of trial," which was set to commence on May 7, 2012.   Plaintiff's Motion for Entry of Default Judgment and Other Sanctions for Failure to Disclose Evidence, Withholding Evidence and Other Discovery Abuses at 1-2, filed May 3, 2012 (Doc. 143).   The Defendants did not disclose Plum and Veronica Quintana as witnesses until May 2, 2012.   See Plaintiff's Motion for Entry of Default Judgment and Other Sanctions for Failure to Disclose Evidence, Withholding Evidence and Other Discovery Abuses at 2.

the assignment of a new trial judge and the serious delay in this case by seeking reversal of a ruling that was given in Plaintiff's favor and in contrast to the Individual Defendants' desired outcome," and that the Individual Defendants' MIL could require him to prepare for trial afresh, further prejudicing his position.   Response at 3.

Solis-Marrufo further contends that the Individual Defendants have obtained no new evidence since the issuance of the Order, which would warrant reconsidering the Order. Solis-Marrufo asserts that the Individual Defendants "are only able to bring this issue to the court's attention once more due to their own discovery violations, and Plaintiff is now being forced to re-litigate an issue already decided."   Response at 4.

Solis-Marrufo also contends that evidence of the Individual Defendants' SOPs should be admitted as probative of the Individual Defendants' credibility.   Solis-Marrufo contends that he "must be allowed to 'expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inference relating to the reliability of the witnesses.'" Response at 4 (quoting <u>Davis v. Alaska</u>, 415 U.S. 308, 315 (1974)).   Solis-Marrufo contends that the evidence is permissible for impeachment purposes, as evidence of the Individual Defendants' bias.   <u>See</u> Response at 4.   Solis-Marrufo asserts that the SOPs and training evidence is "highly relevant to the credibility of the Defendants," and that, since the Order, "additional evidence has come to light making it even more evident that Defendants did not follow their SOPs, nor did they abide by their training when dealing with Mr. Solis."   Response at 4.   Solis-Marrufo asserts that no evidence has come to light that would bear on the Judge Schneider's rationale in the Order. <u>See</u> Response at 4-5.   Solis-Marrufo, therefore, asserts that the Court should permit him to introduce the evidence to "attack the truthfulness and credibility of the individual officers."

Response at 5.

Solis-Marrufo further argues that the Court should allow him to introduce the SOPs and training so that the jury can evaluate the reasonableness of the Individual Defendants' actions, which, he asserts, is a permitted purpose for admitting the evidence.   Solis-Marrufo contends that, in <u>Weigel v. Broad</u>, 544 F.3d 1143 (10th Cir. 2008), the Tenth Circuit held that "'the reasonableness of an officer's actions must be assessed in light of the officer's training." Response at 5 (quoting <u>Weigel v. Broad</u>, 544 F.3d at 1155).   Solis-Marrufo also asserts that, in <u>Weigel v. Broad</u>, the Tenth Circuit held that the training materials were relevant regarding "what law is clearly established."   Response at 6 (citing <u>Weigel v. Broad</u>, 544 F.3d at 1154). Solis-Marrufo asserts that, "[w]hether an officer ever bothered to read them or follow his or her training is evidence that the Plaintiff should be allowed to introduce for the purposes of addressing the officers' training and the reasonableness of their actions based on their training," in addition to attacking the Individual Defendants' credibility.   Response at 6.   Further, Solis-Marrufo points out that, in <u>Montoya v. Sheldon</u>, the Court stated that it "'may be required to allow training in future excessive force cases.'"   Response at 6 (quoting 2012 WL 5476882, at *14). Solis-Marrufo asserts that the Individual Defendants are specifically trained to follow the SOPs in their course of duties, yet, he has evidence that Plum "could not articulate what he is trained to do in certain situations."   Response at 7 (citing Deposition of Jason Plum at 54:16-22, taken December 6, 2012, filed January 29, 2013 (Doc. 206)).   Last, Solis-Marrufo contends that the "admissibility of the officers' failure to follow their training in the individual defendants' interactions with Mr. Solis is crucial to Plaintiff's ability to evaluate the credibility of the officers," and the reasonableness of their actions, and, thus, the Court should admit their SOPs and training

materials as evidence.   Response at 7.

Solis-Marrufo incorporates by reference his Response to Defendant Deputies' Motion in Limine No. II: The Exclusion of Evidence at trial Regarding Police Standard Operating Procedures, Training, and Less Intrusive Alternatives, filed April 23, 2012 (Doc. 108)("Previous Response").   Response at 4.   In addition to the arguments in the Response, Solis-Marrufo asserts that evidence regarding SOPs and officer training is "relevant for the jury to understand the steps that law enforcement officers are trained to take in certain circumstances," and for the jury to "understand the purposes of police investigation and the reasons for their conduct in particular situations."   Previous Response at 2-3.   Solis-Marrufo noted that Tenth Circuit precedent generally does not allow evidence of SOPs and training to prove a constitutional violation by the use of excessive force, but argued that this case is different, because "there were no internal affairs or departmental investigation into the conduct of the officers related to Plaintiff's arrest."   Previous Response at 4.   Solis-Marrufo asserts that, here, rather than proving a constitutional violation, the SOPs and training are "relevant for the jury to put into context and fully understand the significance of the Defendants' actions in detaining, arresting, charging and prosecuting Plaintiff," to the extent the Individual Defendants' actions deviated from their SOPs and training. Previous Response at 4.   Solis-Marrufo also asserted that "the training related to courtroom testimony is relevant in order for the jury to evaluate the credibility of the officers as they testify in Court."   Previous Response at 5.

In response, the Individual Defendants first contend that reconsideration of the Order will allow the Court to "remain consistent in its rulings on SOPs and training."   Defendant Deputies' Reply in Support of Their Motion to Reconsider Prior Trial Court's Ruling on Defendant

Deputies' Motion in Limine No. II: The Exclusion of Evidence at Trial Regarding Police Standard Operating Procedures, Training, and Less Intrusive Alternatives at 1, filed February 12, 2013 (Doc. 212)("Reply").   The Individual Defendants assert that their discovery delay did not give them the opportunity to file the MIL, but, rather, Judge Schneider's recusal "made it necessary to revisit this issue."   Reply at 2.   The Individual Defendants assert that reconsideration of the Order is "practically compelled, because it conflicts with this Court's standard practice of excluding this type of evidence and because, in a ruling made after that by the prior trial [c]ourt," the Court rejected Solis-Marrufo's asserted basis for admitting the SOPs and training materials at trial.   Reply at 2.   The Individual Defendants assert that, unlike the motion in <u>Davey v. Lockheed Martin Corp.</u>, their MIL does not arise on the eve of trial, and thus, any re-thinking that Solis-Marrufo must do of his trial strategy does not pose him unfair prejudice.   <u>See</u> Reply at 2 (citing <u>Davey v. Lockheed Martin Corp.</u> 301 F.3d at 1210).

The Individual Defendants assert that SOPs should be categorically excluded in an excessive force case, and that the Court should exclude the training materials under the circumstances of this case.   The Individual Defendants assert that the Court rejected Solis-Marrufo's proposed use for the SOPs in <u>Montoya v. Sheldon</u>, where the Court found that using the SOPs as context is a purpose for which Tenth Circuit law precludes.   <u>See</u> Reply at 3 (citing <u>Montoya v. Sheldon</u>, 2012 WL 5476882, at *9, 14).   The Individual Defendants also assert that the Tenth Circuit's holding in <u>Weigel v. Broad</u>, which the Court analyzed in <u>Montoya v. Sheldon</u>, does not allow Solis-Marrufo to introduce the training materials for the purpose of attacking the Individual Defendants' credibility.   The Individual Defendants assert that, while the Tenth Circuit used the training material in <u>Weigel v. Broad</u> as part of its qualified immunity

analysis, in <u>Tanberg v. Sholtis</u>, 401 F.3d 1151, 1163-64 (10th Cir. 2005), where the Tenth Circuit was asked to determine whether the law was clearly established, the Tenth Circuit "upheld the exclusion of evidence of training as irrelevant to the question of whether a Fourth Amendment violation occurred."   Reply at 4.   The Individual Defendants assert that the Court recognized, in <u>Montoya v. Sheldon</u>, that admitting training materials at the summary judgment stage did not pose the prejudice against defendant officers that could happen were the evidence submitted to a jury. <u>See</u> Reply at 4 (citing <u>Montoya v. Sheldon</u>, 2012 WL 5476882, at *13).   The Individual Defendants contend, however, that the Court also stated that introducing training materials as evidence before the jury "'may . . . be prejudicial to defendant officers, and also confuse the jury as to the requirements of the law, where those [value judgments about the law's requirements] may go beyond what the law requires.'"   Reply at 5 (quoting <u>Montoya v. Sheldon</u>, 2012 WL 5476882, at *13).   The Individual Defendants assert, therefore, that introducing the SOPs and training materials "is not compelled by Tenth Circuit precedent and . . . raises a substantial risk of jury confusion and unfair prejudice to Defendants."   Reply at 5.   The Individual Defendants request the Court to grant the MIL, exclude "any and all evidence regarding police standard operating procedures, training, and less intrusive alternatives," and to award the Individual Defendants' attorney's fees and costs, and any other relief the Court "deems just and proper."   Reply at 5.

The Court held a hearing on February 13, 2013.   <u>See</u> Transcript of Hearing (taken February 13, 2013)("Tr.").[3]   The Court stated that it believes it is "stuck with the Tenth Circuit's rulings [on] standard operating procedures."   Tr. at 38:14-17 (Court).   The Court noted that

---

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and/or line numbers.

training evidence may be admissible, but that, in Solis-Marrufo's case, the training does not "seem to be particularly useful except to try to back[]door the SOP's."   Tr. at 39:1-5 (Court).   The Court stated that it is inclined to grant the motion with respect to the SOPs and to allow Solis-Marrufo to discuss the Individual Defendants' training, but not to use the training as a backdoor for putting the SOPs before the jury.   See Tr. at 39:5-8 (Court).

The Individual Defendants asserted that the Tenth Circuit does not permit Solis-Marrufo's proposed purpose for the evidence as reflecting on their credibility.   See Tr. at 39:12-18 (Roman). The Individual Defendants contended that the Tenth Circuit has allowed training evidence to come in only to demonstrate reasonableness, and not credibility, and only in the context of a qualified immunity question, not to clarify disputed facts.   See Tr. at 39:19-40:3 (Roman).   The Individual Defendants asserted that admitting the training evidence on a qualified immunity issue does not prejudice them, because the evidence does not go before a jury.   See Tr. at 41:7-20 (Roman). The Individual Defendants asserted that, unlike a qualified immunity issue, Solis-Marrufo wants to put the training evidence before the jury to resolve disputed facts, which the Individual Defendants asserted is an impermissible purpose and would prejudice them.   See Tr. at 41:21-42:6 (Roman).

Solis-Marrufo conceded that SOPs are inadmissible to prove the violation of a constitutional right, but that he seeks to introduce the SOPs to demonstrate that the Individual Defendants' failure to follow SOPs undermines the credibility of their testimony.   See Tr. at 42:11-43:18 (Gorence).   Solis-Marrufo pointed out that the Individual Defendants did not take photographs of their alleged injuries, document the witnesses, or take witness statements.   See Tr. at 43:16-22 (Gorence).   Solis-Marrufo stated that he wants to demonstrate that their failure to

follow SOPs in the situation indicates that the situation did not happen as they say it did.   See Tr. at 43:19-44:2 (Gorence).   Solis-Marrufo contended that his use for the SOPs has nothing to do with establishing that the failure to follow a SOP violated his constitutional right, but, rather, he is seeking only to demonstrate that, had the events happened as the Individual Defendants said they did, they should have followed the SOP for the incident.   See Tr. at 44:6-21 (Gorence). Solis-Marrufo asserted that a jury instruction could be fashioned which would avoid any unfair prejudice or confusion.   See Tr. at 44:21-24 (Gorence).   Solis-Marrufo asserted that Plum admits to having never read a SOP, which Solis-Marrufo asserted is probative of Plum's credibility.   See Tr. at 14:46:5 (Gorence).

The Court pointed out that Solis-Marrufo can use a deposition where Plum admits to never reading the SOPs.   See Tr. at 46:6-8 (Court).   Solis-Marrufo asserted that the deposition will not allow him to probe why the Individual Defendants did not follow SOPs for their version of the events, specifically, that Solis-Marrufo assaulted and battered them, and attempted to escape.   See Tr. at 46:9-16 (Gorence).   The Court questioned what relevance the SOPs have if the Individual Defendants admit to having not read them, and Solis-Marrufo asserted that only Plum admits to not reading them, and, for Fuller and Leeper, the SOPs undermine their version of the events, because they did not follow SOPs for an assault, battery, and attempted escape.   See Tr. at 46:17-47:7 (Court, Gorence).

Regarding the training evidence specifically, Solis-Marrufo conceded that the Tenth Circuit's rationale for admitting training evidence in Weigel v. Broad does not apply to this case, because the Individual Defendants did not have specific training indicative of whether the law is clearly established.   See Tr. at 47:17-48:8 (Court, Gorence)(Gorence: "I don't think training . . .

really a[pplie]s here." . . . Court: "there's not anything from the training that you want to get into specifically[?]"   Gorence: "No I'm disavowing the . . . line of training.  I don't think that's legally [applicable].")

Solis-Marrufo asserted that the SOPs are "unique in terms of credibility."   Tr. at 48:7-9 (Gorence).   Solis-Marrufo proffered that, if he is allowed to inquire into SOPs at trial, he will question the Individual Defendants why they did not do certain procedures and then ask them whether they know that their SOPs require them to follow the procedures, which they did not follow.   See Tr. at 48:16-25 (Gorence).   Solis-Marrufo proffered that his line of questioning would be:

> ["Y]ou didn't document that,["] and then my proffered question . . . ["Y]ou know that the standard operating procedures for the Bernalillo County Sheriff's Department require you to do that in this type of allegation?["] . . . [I]f they say ["I don't know[,"] then I'll confront them with exactly those sections of SOP . . . [and state: "You have certain obligations in the investigation but you didn't do it."

Tr. at 48:16-49:5 (Gorence).   Solis-Marrufo stated that he will not question any further, but will only question them regarding the specific sections of the SOPs that cover their version of the events and ask them why they did not follow the SOPs, and nothing more.   See Tr. at 49:1-5 (Gorence).

The Court noted that Solis-Marrufo is not seeking to introduce a less intrusive alternative into evidence, but rather wants to introduce SOPs regarding "how to write a report and how to photograph."   Tr. at 49:11-15 (Court).   The Court noted that this use may be a different purpose for SOPs than it has discussed in the past and inquired whether the Individual Defendants would be satisfied with admitting the SOPs with a limiting instruction.   See Tr. at 49:11-20 (Court).   The Individual Defendants asserted that such use would still prejudice them.   See Tr. at 49:21-23

(Roman).   The Court expressed that usually the Tenth Circuit is concerned about prejudice when a defendant could have used a less intrusive means, and not about how the defendant wrote a report or took a photograph.   See Tr. at 49:24-50:6 (Court).   The Individual Defendants asserted, nonetheless, that the "case law has been pretty explicit and absolute about the SOP's coming in, though."   Tr. at 50:11-13 (Roman).   The Individual Defendants asserted that the Tenth Circuit has not distinguished between admissible and inadmissible SOPs, and the Individual Defendants asserted that the Court rejected word-for-word the identical argument regarding using SOPs to attack credibility in Montoya v. Sheldon.   See Tr. at 50:14-23 (Roman).

The Court stated it is inclined to rule with the Individual Defendants and not admit the SOPs, given that the language from the Tenth Circuit broadly precludes their use at trial.   See Tr. at 51:5-15 (Court).   The Court stated that it would look at the cases.   See Tr. at 51:17-20 (Court). The Court expressed that Solis-Marrufo's proposed use seems possible, but whether the Tenth Circuit allows the SOPs to come in at all controls its discussion.   See Tr. at 51:21-23 (Court).

## LAW REGARDING MOTIONS FOR RECONSIDERATION

Under Tenth Circuit case law,

[g]enerally, a "motion for reconsideration, not recognized by the Federal Rules of Civil Procedure, Clough v. Rush, 959 F.2d 182, 186 n.4 (10th Cir. 1992), may be construed in one of two ways: if filed within 10 days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e); if filed more than 10 days after entry of judgment, it is treated as a motion for relief from judgment under Rule 60(b)." Computerized Thermal Imaging, Inc. v. Bloomberg, L.P., 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).   In addition, "every order short of a final decree is subject to reopening at the discretion of the district judge."   Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 . . . (1983); see also Fed. R. Civ. P. 54(b).

Price v. Philpot, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005).   A district court has discretion to revise interlocutory orders before the entry of a final judgment.   See Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch., 212 F. App'x 760, 765 (10th Cir. 2007)(unpublished).4   When a plaintiff seeks to obtain reconsideration of a non-final order, his or her motion for reconsideration is considered "an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment."   Wagoner v. Wagoner, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991).   A motion for reconsideration is an "inappropriate vehicle[ ] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).   "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d at 1012.   "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."   Servants of Paraclete v. Does, 204 F.3d at 1012 (citation omitted).   A district court has considerable discretion in ruling on a motion to reconsider.   See Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997).

---

<sup>4</sup> Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch. is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .   However, if an unpublished opinion . . .   has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."   United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch. has persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

- 16 -

**RELEVANT LAW REGARDING SOPS IN CIVIL RIGHTS CASES**

In Whren v. United States, 517 U.S. 806 (1996), the Supreme Court of the United States examined the application of SOPs to traffic-stop cases as a method by which a court could determine if an officer made a pretextual stop.  See 517 U.S. at 813-14.   In concluding that the Fourth Amendment's reasonableness requirement "allows certain actions to be taken in certain circumstances, whatever the subjective intent," the Supreme Court stated:

> Indeed, it seems to us somewhat easier to figure out the intent of an individual officer than to plumb the collective consciousness of law enforcement in order to determine whether a "reasonable officer" would have moved to act upon a traffic violation.   While police manuals and standard procedures may sometimes provide objective assistance, ordinarily one would be reduced to speculating about the hypothetical reaction of a hypothetical constable -- an exercise  that might be called virtual subjectivity.
>
> Moreover, police enforcement practices, even if they could be practicably assessed by a judge, vary from place to place and time to time.   We cannot accept that the search and seizure protections of the Fourth Amendment are so variable and can be turned upon trivialities.

517 U.S. at 815 (citations omitted).  See United States v. Botero-Ospina, 71 F.3d 783, 787-88 (10th Cir. 1995), cert. denied, 518 U.S. 1007 (1999).

The Supreme Court has stated that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provisions."  Davis v. Scherer, 468 U.S. 183, 194 (1984)(footnote omitted).  Consistent with other circuit courts, the Tenth Circuit holds that the violation of state law and SOPs will not turn an otherwise constitutional use of force into a violation of § 1983.  See Tanberg v. Sholtis, 401 F.3d at 1167 ("Even if [the defendant officer] violated the SOPs, this violation would not create a violation of a clearly established constitutional right ex nihilo.")(McConnell, J.); Medina v. Cram, 252 F.3d at 1133 (excluding expert affidavit which stated that the "officers' use of force did not

- 17 -

conform with accepted police guidelines and practices," because "claims based on violations of state law and police procedure are not actionable under § 1983")(Tacha, J.); <u>Romero v. Bd. of Cnty. Comm'rs of Cnty. Lake</u>, 60 F.3d 702, 704 (10th Cir. 1995)("[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim.")(citations omitted)(Anderson, J.), <u>cert. denied</u>, 516 U.S. 1073 (1996); <u>Wilson v. Meeks</u>, 52 F.3d at 1554 ("[V]iolation of a police department regulation is insufficient for liability under section 1983.").   <u>See also</u> <u>Greenridge v. Ruffin</u>, 927 F.2d 789, 792 (4th Cir. 1991)(upholding the trial court's decision to exclude officer's failure to follow standard arrest procedures, because it was not relevant to whether the officer acted reasonably in using force); <u>Diaz v. Salazar</u>, 924 F. Supp. 1088, 1097 (D.N.M. 1996)(Hansen, J.)("The fact that their conduct may not have conformed with police regulations or training does not operate to create constitutional liability under Section 1983.").

The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs.   The clearly established law requires the exclusion of any evidence regarding the violation of SOPs, because such evidence is irrelevant to the Fourth-Amendment inquiry.   In <u>Tanberg v. Sholtis</u>, Judge McConnell discussed the propriety of admitting SOPs as evidence of a constitutional violation in an excessive-force, and an assault-and-battery, case.   The Tenth Circuit held that the proffered SOP was irrelevant to the issues in the case:

> In the exclusionary rule context, the Supreme Court has rejected the use of local police regulations as a standard for evaluating constitutionality of police conduct, on the ground that such a "basis of invalidation would not apply in jurisdictions that had a different practice." <u>Whren v. United States</u>, 517 U.S. 806, 815 (1996). That logic would seem to apply equally to damage suits under § 1983.   This Court has consistently held that the violation of police regulations is insufficient to ground a § 1983 action for excessive force.   <u>Marquez v. City of Albuquerque</u>, 399 F.3d 1216 (10th Cir. 2005); <u>Medina[ v. Cram]</u>, 252 F.3d at 1133; <u>Romero v. B[]d[.]</u>

of C[]nty[.] Com[m]'rs of County of lake, State of Colo., 60 F.3d 702, 705 (10th Cir. 1995); Wilson v. Meeks, 52 F.3d 1547, 1554 (10th Cir. 1995). . . .  That an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefore irrelevant.   If Officer Sholtis violated the SOP governing the use of force in effecting arrest, that fact might well be pertinent to the Albuquerque Police Department's future decisions to promote, retain, or discipline him; it is not relevant to determining if Plaintiff's arrest violated the reasonableness requirement of the Fourth Amendment.

Tanberg v. Sholtis, 401 F.3d at 1163-64.   As the Tenth Circuit explained:

Although plaintiffs frequently wish to use administrative standards, like the Albuquerque SOPs, to support constitutional damages claims, this could disserve the objective of protecting civil liberties.   Modern police departments are able -- and often willing -- to use administrative measures such as reprimands, salary adjustments, and promotions to encourage a high standard of public service, in excess of the federal constitutional minima.   If courts treated these administrative standards as evidence of constitutional violations in damages actions under § 1983, this would create a disincentive to adopt progressive standards.   Thus, we decline Plaintiffs' invitation here to use the Albuquerque Police Department's operating procedures as evidence of the constitutional standard.

401 F.3d at 1164.

In Medina v. Cram, Judge Tacha reviewed the relevance of SOPs to a Fourth-Amendment excessive-force claim.   The police responded to a call regarding Medina's refusal to return to jail on a bail bond violation and statement that he was armed with a gun.   See 252 F.3d at 1126. After their arrival, the police tried to convince Medina to leave his house peacefully.   See id. Instead, Medina told the officers that he needed more time, was suicidal, and was armed with a handgun.   See id.   Ultimately, Medina "emerged from the house with his left hand in a cup and his right hand wrapped in a towel concealing a staple gun, which Mr. Medina intended as a representation of a weapon."   Id.   Although ordered to stop, Medina "walked" toward and onto the street.   Id.   The officers' use of bean-bag rounds did not stop Medina's movement.   See 252 F.3d at 1126.   After the bean-bag rounds failed to stop Medina, "an officer released an attack dog,

- 19 -

which bit [Medina] and released, returning to the officer."   Id.   The "attack dog was released a second time," causing Medina to drop to the ground and expose the staple gun.   Id.   As he dropped to the ground, Medina pointed the staple gun in the direction of other officers.   See id. Two officers shot Medina five times.   See id.

In response to the officers' assertion of qualified immunity, Medina submitted an affidavit of an expert who opined that the officers' use of force did not conform with accepted police guidelines and practices, and was therefore excessive.   See 252 F.3d at 1126.   The expert's affidavit did not persuade the Tenth Circuit:

> We have, of course, recognized that claims based on violations of state law and police procedure are not actionable under § 1983.   Romero, 60 F.3d at 705 (state law and police procedure); Wilson I, 52 F.3d at 1554 (police department regulation); see also Davis v. Scherer, 468 U.S. 183, 194-96 (1984)(rejecting the argument that § 1983 liability may be based solely on a violation of a state statute or regulation).

252 F.3d at 1133.

In the cases in which the Court has addressed this issue, most, and all recent, cases have ruled that evidence regarding the violation of police procedure is not admissible in a § 1983 excessive force case.   See Montoya v. Sheldon, 2012 WL 5476882, at **9-10 (excluding evidence that defendants violated SOPs, where plaintiffs sought to introduce the violations for the "jury to put into context and fully understand the significance of the Defendants' actions in detaining, arresting, charging and prosecuting Plaintiffs," and not to show that the Defendants' actions were unreasonable, because the Plaintiffs "hope the jury will use the APD SOPs to find that Sheldon and Lovato did not conform their conduct to the SOPs, and thus acted unreasonably under the circumstances"); Mata v. City of Farmington, 798 F. Supp. 2d at 1219 (excluding, under rule 402, "evidence that the Defendant Officers did not follow SOPs and police training, because

this evidence is not relevant"); Jonas v. Bd. of Comm'rs of Luna Cnty., 699 F. Supp. 2d at 1299

("The clearly established law also does not permit a plaintiff to establish a constitutional violation

with evidence that the officers violated SOPs and their training."); Vondrak v. City of Las Cruces,

2009 WL 3241555, at *14 (concluding that "expert testimony that refers to SOPs or other

established law-enforcement standards" was inadmissible under Tenth Circuit precedent);

Chamberlin v. City of Albuquerque, 2005 WL 3213527, at *4 (Browning, J.)("[U]nder United

States v. Marquez and Tanberg v. Sholtis, evidence of the SOPs is irrelevant to whether [defendant

officer] acted objectively reasonably.  Accordingly, the Court will preclude [plaintiff] from

offering testimony or evidence about SOPs on his § 1983 claim.").

In Taylor v. Hudson, No. CIV 02-0775 JB/RHS, 2003 U.S. Dist. LEXIS 26736 (D.N.M.

Nov. 21, 2003)(Browning, J.), which the Court decided before the Tenth Circuit's decision in

Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005), the Court found:

> The use of SOP evidence with respect to the reasonableness of the amount of force
> actually used in effecting the arrest implicates the rule of law that a violation of
> police procedures cannot serve as the basis for a constitutional violation.
> Accordingly, the Court would caution [the plaintiff] that, while he may be allowed
> to argue that the Defendants' use of force was unreasonable because [the Defendant
> Officer] was the initial aggressor, he cannot argue at trial that such force was
> unreasonable because [the Defendant Officer] violated a SOP requiring him to
> distance himself from an aggressive person.

Taylor v. Hudson, 2003 U.S. Dist. LEXIS 26736, at *16.   The Court recognized that "courts have

consistently held that a violation of a SOP is not equivalent to a constitutional violation," but noted

that -- at the time of the opinion -- SOP evidence was not categorically excluded from

excessive-force cases.   2003 U.S. Dist. LEXIS 26736, at *17-18 (noting that Medina v. Cram,

Romero v. Bd. of Cnty. Comm'rs, and Bella v. Chamberlain, 24 F.3d 1251, 1256 n. 7 (10th Cir.

1994), "do not unequivocally preclude the introduction of SOP evidence in excessive force

cases.").   The Court concluded that Tenth Circuit precedent clearly precluded admission of the SOPs to the extent the plaintiff wished to offer them as evidence of less intrusive alternatives to the amount of force used.   See 2003 U.S. Dist. Lexis 26736, at *18.   The Court distinguished introduction of the SOPs for purposes of assessing the reasonableness of the force used, opining that it would be permissible to admit the SOPs for this limited reason if two requirements were met:

> Evidence related to the appropriateness of the amount of force used is a different issue. This evidence would need to be unrelated to less intrusive alternatives. [The Plaintiff] would then face the additional burden of establishing that the SOP in question was designed or adopted for the benefit and protection of persons like himself.

2003 U.S. Dist. Lexis 26736, at *20 (citing Scott v. Henrich, 39 F.3d 912, 915-16 (9th Cir. 1994)). The Court concluded that it would presume any evidence of SOPs would be inadmissible; however, if the plaintiff could present a specific SOP to the Court that met the two requirements above, the Court would "consider the appropriateness of such evidence."   2003 U.S. Dist. LEXIS 26736, at *21.

Two years later, in Chamberlin v. City of Albuquerque, the primary issue was whether the Court should allow the plaintiff, Chamberlain, to introduce the APD's SOPs.   See 2005 WL 3213527, at *1.   Because of two recent Tenth Circuit decisions, the Court granted the defendant police officer's motion in limine to exclude the SOPs.   The Court, after reviewing the two recent decisions pertaining to SOP admissibility that the Tenth Circuit decided after the Court's decision in Taylor v. Hudson -- Tanberg v. Sholtis and Marquez v. City of Albuquerque -- excluded any evidence or testimony pertaining to SOPs.   The Court stated that, in light of these recent Tenth Circuit decisions, and in light of those holdings, it would not allow the plaintiff to offer evidence or

testimony of the APD's SOPs.   In light of the recent Tenth Circuit precedent, the Court, contrary to its decision in <u>Taylor v. Hudson</u>, held that the plaintiff could not introduce the APD's SOPs to support the allegation that the defendant officer acted unreasonably in directing his police service dog to attack the plaintiff in violation of his Fourth-Amendment rights.   Specifically, the Court would not allow the plaintiff to introduce SOPs that he had provided to the Court on use of force, use of canines, response to the mentally ill/suspected mentally ill, and rights of onlookers.   <u>See</u> 2005 WL 3213527, at **2-4.

The Court in <u>Chamberlin v. City of Albuquerque</u> acknowledged that, although both of the Tenth Circuit decisions were distinguishable from the facts in <u>Chamberlin v. City of Albuquerque</u> in that the SOPs which the plaintiff sought to introduce in <u>Chamberlin v. City of Albuquerque</u> were different than those at issue in the two Tenth Circuit cases, and that, unlike <u>Tanberg v. Sholtis</u>, there was no suggestion that the plaintiff in <u>Chamberlin v. City of Albuquerque</u> also sought to introduce testimony whether the police department disciplined the defendant police officer for violating any SOP, the language of the Tenth Circuit's cases was sufficiently broad and sweeping to encompass the SOPs at issue in <u>Chamberlin v. City of Albuquerque</u>.   The Court stated that, under <u>Marquez v. City of Albuquerque</u> and <u>Tanberg v. Sholtis</u>, evidence of the SOPs was irrelevant to whether the Defendant Police Officer acted objectively reasonably.   <u>See</u> 2005 WL 3213527, at **2-3.   Accordingly, the Court precluded the plaintiff from offering testimony or evidence about the SOPs on his § 1983 claim.   <u>See</u> 2005 WL 3213527, at **2-4.

## **RELEVANT LAW REGARDING RULE 403**

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.   See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).   "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."   United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)).   "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."   Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).   The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."   United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).   As the Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .   This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, at 4-16 (3d ed. 1999)).

- 24 -

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to the defendant's guilt or innocence of the crime charged.   See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999).   "Evidence is not unfairly prejudicial merely because it is damaging to an opponent's case."   United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)).   Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"   United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original).

## LAW REGARDING RULE 608 EVIDENCE

Rule 608 of the Federal Rules of Evidence provides mechanisms for attacking witnesses' character for truthfulness or untruthfulness.   See Montoya v. Sheldon, 2012 WL 1132505, at *5 (D.N.M. Mar. 20, 2012)(Browning, J.); United States v. Huerta-Rodriguez, 83 Fed. R. Evid. Serv. 681, 2010 WL 3834061, at *7 (D.N.M. 2010)(Browning, J.).   Rule 608(a) states:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.   But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Fed. R. Evid. 608(a).   The truthfulness or untruthfulness of a witness may be attacked by opinion or reputation evidence, without any proffer of evidence of a good character for truthfulness.   See United States v. Holt, 486 F.3d 997, 1002 (7th Cir. 2007)(noting that, while it is within the trial court's discretion to prohibit cross-examination of a police officer whether he had been suspended

to call into question his credibility, the plaintiff "could have used Rule 608(a) and called a member of the department to testify directly about his opinions or reputation of [the credibility of the officer].").   To establish a proper foundation for the opinion or reputation testimony, a witness must show "such acquaintance with the person under attack, the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded."   United States v. Rios, 92 F.3d 1519, 1529 (10th Cir. 1996), overruled on other grounds by United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006).

Rule 608(b) provides the rule for admission of specific instances of conduct:

Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.   But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

(1) the witness; or

(2) another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b).   "Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness." United States v. Beltran-Garcia, 338 F. App'x 765, 770 (10th Cir. 2009)(unpublished).   "Though Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence."   United States v. Beltran-Garcia, 338 F. App'x at 770.

Although 608(b) of the Federal Rules of Evidence does state that specific instances

- 26 -

of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.

United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993).

Rule 608(b)'s exclusion of extrinsic evidence does not apply to using extrinsic evidence to contradict a witness's testimony at trial.   See 2 Stephen A. Saltzburg, Michael A. Martin, Daniel J. Capra, Fed. Rules of Evidence Manual § 608.02[7], at 608-17 (9th ed. 2006)("[E]xtrinsic evidence offered for contradiction is not barred by Rule 608(b) . . . .").   Rule 608 was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness's character for truthfulness," and not "to bar extrinsic evidence for bias, competency and contradiction impeachment."   Fed. R. Evid. 608 advisory committee's note to 2003 amendment (emphasis added).   See Fed. Rules of Evidence Manual, supra § 608.02[7], at 608-16 ("The exclusionary principle of Rule 608(b) applies only . . . to impeach the witness' character for veracity.   If the specific act is offered to impeach the witness on other grounds, then the absolute preclusion of extrinsic evidence is inapplicable.").   The Tenth Circuit has noted: "This rule [which] precludes the admission of extrinsic evidence . . . does not apply, however, when extrinsic evidence is used to show that a statement made by a defendant on direct examination is false. . . ."   United States v. Fleming, 19 F.3d 1325, 1331 (10th Cir. 1994)(citing 27 C. Wright & V. Gold, Fed. Practice and Procedure § 5096, at 546-47 (1990)).   "If there is evidence that specifically contradicts a witness's testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying."   United States v. Cerno, 529 F.3d 926, 944 (10th Cir. 2008).   "This doctrine, known as specific contradiction, allows such impeachment even if the evidence elicited

- 27 -

ordinarily might be collateral or otherwise inadmissible."   Montoya v. Shelden, No. CIV 10-0360

JB/WDS, 2012 WL 4950707, at *12 (D.N.M. Oct. 12, 2012)(Browning, J.)(quoting United States

v. Crockett, 435 F.3d 1305, 1313 (10th Cir. 2006)(internal quotations and alterations omitted).

Thus, an opposing party may not prove up past specific instances of truthfulness or untruthfulness

extrinsically unless and until the witness has offered false statements on the stand.   See Montoya

v. Shelden, 2012 WL 4950707, at *22   ("Should Lovato disclaim any of the information

regarding his providing false information to Chavez or the investigation board, the Court will

allow the Montoyas to prove up the lies extrinsically . . . .").

## ANALYSIS

The Court, in its discretion, reconsiders the Order, and finds that it is contrary to Tenth

Circuit precedent and the Court's previous rulings.   Solis-Marrufo seeks to inquire whether the

Individual Defendants violated SOPs in their documentation, or lack thereof, of their version of the

events giving rise to Solis-Marrufo's Complaint.[5]   Although Solis-Marrufo asserts that this

inquiry does not seek to establish that the Individual Defendants' violation of SOPs demonstrates

that they violated his constitutional rights, the Tenth Circuit has held that SOPs are irrelevant to a

jury's determination in an excessive-force case, and the Court, therefore, will not allow

Solis-Marrufo to inquire into the SOPs on cross-examination of the Individual Defendants.   Even

---

[5] The MIL seeks to exclude evidence of SOPs and training.   See MIL at 2.   At the
hearing, Solis-Marrufo represented that he seeks only to question the Individual Defendants
regarding whether their documentation of the incident comported with SOPs, and he conceded that
evidence of their training is not admissible under Tenth Circuit precedent.   See Tr. at 47:21-48:8
(Court, Gorence).   Given Solis-Marrufo's concessions at the hearing that he no longer seeks to
use training to impeach the Individual Defendants, the Court will hold Solis-Marrufo to his
representation and evaluate only whether the SOPs are admissible, as that is all about which
Solis-Marrufo seeks to inquire on cross-examination.

if Solis-Marrufo has proposed a narrow purpose for inquiring into the SOPs that Tenth Circuit case law does not preclude, the SOPs are likely to be substantially more prejudicial than probative to the Individual Defendants.   The Tenth Circuit recognizes that holding law enforcement officers accountable for a violation of a SOP creates a negative incentive for adopting progressive SOPs and, moreover, is likely to confuse a jury regarding its task at trial.   The Court, therefore, will not allow Solis-Marrufo to inquire into SOPs on cross-examination of the Individual Defendants. The Court will not award the Individual Defendants' attorney's fees and costs.[6]

## I.   THE COURT WILL, IN ITS DISCRETION, RECONSIDER THE ORDER.

The Individual Defendants move the Court to reconsider Judge Schneider's Order on the grounds that the Order is contrary to Tenth Circuit precedent and the Court's own rulings regarding admissibility of SOPs in an excessive-force case.   See MIL at 4-5.   The Individual Defendants note that, after Judge Schneider issued the Order, the Court rejected a nearly identical argument by the counsel for Solis-Marrufo in Montoya v. Sheldon, when the Court held that plaintiffs could not inquire whether defendants violated SOPs for the limited purpose of putting the defendants' conduct "into context," which the plaintiffs asserted would allow the jury to "fully

---

[6] Under the American Rule, each party generally pays their own attorney's fees, unless there is a contract or a statute specifying otherwise.   See Marx v. Gen. Revenue Corp., 668 F.3d 1174, 1179 (10th Cir. 2011); Mountain Highlands, LLC v. Hendricks, No. CIV 08-0239, 2010 WL 1631856, at *3 (D.N.M. April 2, 2010)(Browning, J.).   Here, there is no contract which would require Solis-Marrufo to pay attorney's fees for the Individual Defendants' MIL. Congress has legislated exceptions for prevailing plaintiffs in actions to enforce federal rights.   See, e.g., 42 U.S.C. § 1988(b); 29 U.S.C. § 216(b); 17 U.S.C. § 505; 28 U.S.C. § 3905(a).   Other statutes make an exception to the American Rule for suits brought in bad faith, brought for purposes of harassment, or known to be meritless.   See, e.g., 28 U.S.C. § 1875(d)(2); 15 U.S.C. § 1693m(f). The Individual Defendants have cited no authority on which the Court should base an award of attorney's fees.   See Reply at 5.   The Court, therefore, in keeping with the American rule, will not award the Individual Defendants fees or costs.

understand the significance of the Defendants' actions in detaining, arresting, charging and prosecuting Plaintiffs;" the plaintiffs asserted they would not argue that a violation of a SOP is evidence that the defendants' conduct was unreasonable.   Montoya v. Sheldon, 2012 WL 5476882, at **9-10.   See MIL at 4-5.   Solis-Marrufo contends that reconsidering the Order will cause him substantial prejudice, which, he asserts, the Defendants' alleged discovery abuses in this matter compounds.   See Response at 4.   He also contends that the Individual Defendants do not have new evidence upon which they could base a request for reconsideration of the Order.   See Response at 4-5.

Solis-Marrufo contends that he will suffer substantial prejudice if the Court reconsiders the Order, as it requires him to re-litigate an issue already decided in his favor.   See Response at 2. The Court concludes, however, that it should, in its discretion, reconsider the Order, because Judge Schneider's ruling regarding the admissibility of SOPs against the Individual Defendants is contrary to Tenth Circuit case law and the Court's precedent.   It appears as though Judge Schneider has "misapprehended the law," and, thus, reconsideration is appropriate.   Servants of Paraclete v. Does, 204 F.3d at 1012.   Additionally, given the Tenth Circuit's proclivity to exclude SOPs as irrelevant in excessive-force cases, allowing the Order to stand would cause "injustice" to the Individual Defendants.   Servants of Paraclete v. Does, 204 F.3d at 1012.   Furthermore, the MIL is timely, and although Solis-Marrufo may indeed have to prepare a different theory for trial based upon the Court's ruling, such is the nature of litigation, and it does not prejudice Solis-Marrufo to change course in advance of trial.[7]   See Response at 3.   Finally, while the Court's ruling would not be possible if Judge Schneider had not recused, the Court is not

---

[7] The deadline for pretrial motions was January 15, 2013.   See Amended Minute Order, filed January 8, 2013 (Doc. 203).

convinced that the substitution in judges is a result of the Defendants' discovery misconduct; the Court, as the trial judge, should be comfortable with what evidence is going to be introduced in the trial before it.   The Court, therefore, reconsiders the Order.

## II.   SOLIS-MARRUFO MAY NOT INQUIRE INTO SOPS ON CROSS-EXAMINATION.

The Court will not allow Solis-Marrufo to inquire into SOPs when cross-examining the Individual Defendants.   "The clearly established law requires the exclusion of any evidence regarding the violation of SOPs and training, because such evidence is irrelevant to Fourth-Amendment inquiry."   Jonas v. Bd. of Comm'rs of Luna Cnty., 699 F.Supp.2d at 1299 (discussing Tanberg v. Sholtis and Medina v. Cram).   See Marquez v. City of Albuquerque, 399 F.3d at 1222 (finding that SOPs are "both irrelevant and confusing" in an excessive-force case because "the violation of such standards is not *ipso facto* a Fourth Amendment violation."). Solis-Marrufo attempts to overcome this categorical bar by asserting that he seeks not to equate the violation of a SOP with the violation of his constitutional rights, but, rather, he wants to question the Individual Defendants regarding their failure to follow SOPs when documenting the incident to undermine the credibility of their version of events.   See Tr. at 42:11-43:18 (Gorence).   For two reasons, this approach does not overcome the Tenth Circuit's categorical bar against evidence of SOPs in excessive-force cases.

First, the Court is not convinced that whether the Individual Defendants accurately documented the incident, as the SOPs require, is relevant to their credibility.   The Tenth Circuit is clear in its precedent that the failure to follow a SOP does not, in and of itself, establish that a law enforcement officer's actions were wrongful.   Although the Tenth Circuit's discussion of the relevance of SOPs arises when a plaintiff seeks to equate the violation of a SOP with the violation

of a constitutional right that the Tenth Circuit refuses to equate a SOP violation with wrongdoing indicates what little import the Tenth Circuit attaches to SOP violations.   See Tanberg v. Sholtis, 401 F.3d at 1163-64 ("That an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefor irrelevant.").   The Tenth Circuit has recognized that following SOPs may impact whether a law enforcement officer will receive a reprimand, promotion, and/or a salary adjustment, and, thus, that a law enforcement officer chose to not follow a SOP when documenting an incident and may have foregone a salary and/or promotional incentive attached to following the SOP does not mean that improper documentation of an incident demonstrates that the officer is lying about an incident.   See Tanberg v. Sholtis, 401 F.3d at 1163-64 ("Modern police departments are able -- and often willing -- to use administrative measures such as reprimands, salary adjustments, and promotions to encourage a high standard of public service, in excess of the federal constitutional minima.").   There are many reasons why a law enforcement officer may not follow a SOP when documenting an incident, and the failure to be meticulous in record keeping does not equate with a lack of credibility when testifying.   Therefore, were Solis-Marrufo permitted to question the Individual Defendants regarding their failure to adequately document the incident, the Court does not agree with Solis-Marrufo that such an inquiry is indicative of the Individual Defendants' truthfulness.   Moreover, although Solis-Marrufo is not requesting the jury to draw a direct inference that failing to document the incident in accordance with SOPs violated his constitutional right, he is asking the jury, indirectly, to conclude that because the Individual Defendants violated a SOP in documenting the incident, their testimony is not credible, and his allegation that they acted unreasonably is true.   The Court rejected a similar use for SOPs in Montoya v. Sheldon, and

the Court sees no reason to determine that Solis-Marrufo should be permitted to inquire into the SOPs here.  See Montoya v. Sheldon, 2012 WL 5476882, at *9 ("In other words, the Montoyas hope the jury will use the APD SOPs to find that Shelden and Lovato did not conform their conduct to the SOPs, and thus acted unreasonably under the circumstances. Thus, the Montoyas argument does not survive Tenth Circuit law.").   The Court will, therefore, exclude evidence of the Individual Defendants' alleged SOP violations as irrelevant.

The foregoing discussion demonstrates a second reason to exclude any inquiry into SOPs from trial.  The SOPs potential for unfair prejudice substantially outweighs any probative value that the Individual Defendants' violated a SOP may have.   "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."   Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d at 1274. According to Solis-Marrufo, the maximum probative value that inquiring whether the Individual Defendants failed to document the incident in accordance with SOPs may have is to ask the jury to infer that the failure to follow a SOP makes an Individual Defendants' testimony less credible. The Court believes the probative effect of such an inquiry is minimal.   On the other hand, the possibility that an inquiry into SOPs will have a prejudicial effect is substantial.   The relevance of an officer's failure to follow a SOP, in any instance, may only be demonstrated by explaining what a SOP is, when it applies, and how it applies in a particular context.   The jury could only weigh whether an Individual Defendants' failure to properly document the incident in accordance with SOPs through testimony regarding the details and applicability of a particular SOP.   The Tenth Circuit has expressed distaste for the additional information that is required to make a SOP relevant:

> This additional testimony explaining the procedures used at each step in the APD's investigation and decision-making would have led the jury ever further from the questions they were required to answer, and embroiled them in the dispute over whether Officer Sholtis's actions did or did not violate the SOPs.   At the end of this time-consuming detour through a tangential and tendentious issue, the jury would have arrived at the conclusion that the APD itself seems to have been unable to resolve satisfactorily the question whether Plaintiffs' arrest violated the APD SOPs.   The rules of evidence and our prior law caution against detours as extended and fruitless as this one would almost certainly have been.   See Fed. R. Evid. 611(a)(2); U.S. v. McVeigh, 153 F.3d 1166, 1191 (10th Cir. 1998)(upholding exclusion of evidence with the potential to "sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue in the current case.").

Tanberg v. Sholtis, 401 F.3d at 1164-65.   See Marquez v. City of Albuquerque, 399 F.3d at 1222 ("Similarly, the district court held the testimony regarding law enforcement standards was both irrelevant and confusing on the ground that the violation of such standards is not *ipso facto* a Fourth Amendment violation. . . .   [B]oth of these grounds are supported by well established precedent . . . .").   Just as the Tenth Circuit in Tanberg v. Sholtis concluded that evidence of SOPs had a "minimal probative value," the Court believes that the probative value of inquiring into SOPs as a form of impeachment is minimal in this case.   Tanberg v. Sholtis, 401 F.3d at 1164. Although credibility is never a collateral issue, the import of an Individual Defendant's failure to properly document the incident is, in the Court's perspective, largely collateral to an Individual Defendant's credibility, as the inquiry would require additional testimony, tending to confuse the jury, which tips the 403 balancing test in favor of excluding the evidence.   See Tanberg v. Sholtis, 401 F.3d at 1164 (not allowing a plaintiff to introduce SOPs as evidence, because of "the minimal probative value of an SOP . . . , and the likelihood that the jury could confuse legal and administrative standards . . . .").   Additionally, the Tenth Circuit recognizes that introducing SOPs into evidence in an excessive-force case may create a disincentive for law enforcement agencies to adopt progressive standards:

- 34 -

> Although plaintiffs frequently wish to use administrative standards, like the Albuquerque SOPs, to support constitutional damages claims, this could disserve the objective of protecting civil liberties.   Modern police departments are able -- and often willing -- to use administrative measures such as reprimands, salary adjustments, and promotions to encourage a high standard of public service, in excess of the federal constitutional minima.   If courts treated these administrative standards as evidence of constitutional violations in damages actions under § 1983, this would create a disincentive to adopt progressive standards.   Thus, we decline Plaintiffs' invitation here to use the Albuquerque Police Department's operating procedures as evidence of the constitutional standard.

Tanberg v. Sholtis, 401 F.3d at 1164.   The possibility of creating such a disincentive, in the Tenth Circuit's view, makes the unfair prejudicial effect of admitting SOPs in an excessive-force case all the more weighty.   The Court concludes, therefore, that allowing Solis-Marrufo to inquire regarding the Individual Defendants SOP violations in documenting the incident has a prejudicial effect, which substantially outweighs any probative value the inquiry may serve to impeach the Individual Defendants.   The Court will not allow Solis-Marrufo to inquire into SOPs on cross-examination of the Individual Defendants.

On a clean slate, the Court would still probably be where it was when it decided Taylor v. Hudson.   Juries are smart and can use SOPs for all sorts of purposes other than equating a violation of a SOP with a violation of the Constitution.   The Court had experience with products liability before taking the bench, and it was routine to use SOPs and guidelines for a comparison. They inform reasonableness, even if they do not define reasonableness.   The Tenth Circuit has not thought SOPs can serve this useful purpose in excessive-force cases.   If the Court were to allows SOPs in to test credibility, that rationale could be used to justify SOPs coming in in every excessive-force case.   They could have been added in Tanberg v. Sholtis and Marquez v. City of Albuquerque to test the officer's credibility, but the Tenth Circuit did not allow them in for any purpose.   A creative plaintiffs' lawyer can think of some rationale in every case, in a backdoor

attempt to get SOPs before the jury.   In this Circuit, however, SOPs should probably, with the Tenth Circuit's expansive rationale, be left out, and it probably does not matter to what the SOPs relate.   The Tenth Circuit appears hostile to their use at all.

**IT IS ORDERED** that the Defendant Deputies' Motion to Reconsider Prior Trial Court's Ruling on Defendant Deputies' Motion in Limine No. 11: The Exclusion of Evidence at Trial Regarding Police Standard Operating Procedures, Training, and Less Intrusive Alternatives, filed January 15, 2013 (Doc. 205), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Robert Gorence
Louren M. Oliveros
Andrea D. Harris
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

Terri S. Beach
Miller Stratvert P.A.

 -- and --

Luis E. Robles
David Roman
Robles, Rael, & Anaya
Albuquerque, New Mexico

 *Attorneys for the Defendants*