## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JAVIER SOLIS-MARRUFO,

      Plaintiff,

vs.                                                                      No. CIV 11-0107 JB/KBM

BOARD OF COMMISSIONERS FOR
THE COUNTY OF BERNALILLO,
BENJAMIN FULLER,
CHRISTOPHER LEEPER, AND
JASON PLUM,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion for Entry of Default

Judgment and Other Sanctions for Failure to Disclose Evidence, Withholding Evidence and Other

Discovery Abuses, filed May 3, 2012 (Doc. 143)("First Motion for Sanctions"); (ii) Defendants'

Motion to Reopen Discovery and Reset Certain Discovery-Related Deadlines, filed May 24, 2012

(Doc. 156)("Motion to Reopen Discovery"); (iii) Plaintiff's Objection to Defendants' Eighth

Supplemental Disclosures, filed June 7, 2012 (Doc. 157)("Obj. to Eighth Disclosures"); (iv)

Plaintiff's Second Motion for Entry of Default Judgment and Other Sanctions for Failure to

Disclose Evidence, Withholding evidence and Other Discovery Abuses, filed June 7, 2012 (Doc.

158)("Second Motion for Sanctions"); [1] and Plaintiff's Objection to Defendants' Ninth

Supplemental Disclosures, filed June 14, 2012 (Doc. 162)("Obj. to Ninth Disclosures.").   The

---

[1] On March 29, 2013, the Court issued an Order in which it granted the Motion to Reopen Discovery, and granted in part and denied in part the First Motion for Sanctions and Second Motions for Sanctions, stating: "The Court will . . . at a later date issue an opinion more fully detailing its rationale for this decision."   Doc. 249 at 2.   This is Memorandum Opinion and Order is the promised opinion for those three motions.

Court held hearings on July 26, 2012, July 27, 2012, and December 13, 2012.   The primary issues are: (i) whether the Defendants Board of Commissioners for the County of Bernalillo's ("Bernalillo County"), Benjamin Fuller's, and Christopher Leeper's late disclosure to Plaintiff Javier Solis-Marrufo that Bernalillo County Sheriff's Office ("BCSO") Deputy Jason Plum and former BCSO Deputy Veronica Quintana witnessed the incident underlying this lawsuit was done in bad faith and prejudiced Solis-Marrufo to the extent that the Court should grant him a default judgment; or, (ii) in the alternative, whether and what lesser sanctions may make Solis-Marrufo whole from any prejudice the late disclosure caused him.   The Court concludes that Bernalillo County, Fuller, and Leeper did not fail to disclose Plum's and Quintana's role in the incident out of bad faith or willful misconduct, and, therefore, the Court will not grant Solis-Marrufo a default judgment.   The Court finds that the late disclosure has caused Solis-Marrufo some prejudice, but the Court believes that prejudice may be cured by reopening discovery for Solis-Marrufo's benefit, and awarding Solis-Marrufo costs and expenses in briefing and appearing at hearings on this issue, and deposing Plum and Quintana.   The Court also concludes that the late disclosure of Plum and Quintana was not so prejudicial to Solis-Marrufo that Bernalillo County, Fuller, Leeper, and Plum should be precluded from presenting evidence from Plum and Quintana at trial.

## FACTUAL BACKGROUND

This case arises from Solis-Marrufo's alleged civil rights violations, which he asserts occurred in relation to an incident on February 2, 2009, involving the BCSO in Albuquerque, New Mexico.   See Third Amended Complaint for Violations of Civil Rights, Tort Claims, and Damages ¶¶ 8-35, at 2-6, filed October 5, 2012 ("Complaint").   On February 2, 2009, Fuller responded to a 911 call reporting domestic violence at 1521 Aragon Road SW.   See Complaint ¶¶

5,8-10, at 2.   Fuller was tasked with finding a suspect and found Solis-Marrufo seated in a stopped car.   Fuller determined that Solis-Marrufo was not the suspect for which he was searching, but he nonetheless investigated Solis-Marrufo for driving under the influence of alcohol or drugs and arrested Solis-Marrufo for possession of a controlled substance.   See Complaint ¶¶ 9, 11, 14-16, 19-20 at 2-4.   The dollar bill on Solis-Marrufo that Fuller believed contained a controlled substance was not preserved in evidence.   See Complaint ¶ 19, at 4.   Fuller transported Solis-Marrufo to the BCSO South Valley Command Center, where BCSO Lieutenant Sergeant Tafoya was supervising the deputies on watch at that time.   See Transcript of Hearing (taken July 26, 2012) at 84:18-85:7 (Robles, Tafoya), filed August 16, 2012 (Doc. 176)("July 26 Witness Tr."); South Area Command - Watch I: Pay Period January 31, 2009 to February 13, 2009 at 1, filed May 3, 2012 (Doc. 143-5)("Watch Roster I").   Solis-Marrufo attempted to leave the South Valley Command Center's area, and Fuller, Leeper, and Plum, among other officers, attacked Solis-Marrufo.   See Complaint ¶ 24, at 4; First Motion for Sanctions at 2.   While attempting to leave, Solis-Marrufo kicked Fuller, knocking the wind out of him.   See Motion to Reopen Discovery at 1.   Fuller was carrying a laptop when he chased after Solis-Marrufo.   See July 26 Witness Tr. at 100:5-12 (Oliveros, Plum).   Solis-Marrufo continued to attempt to leave but was intercepted by a BCSO deputy, whom Fuller could not identify at the time.   See Motion to Reopen Discovery at 1.

During the altercation, Solis-Marrufo was allegedly hit and/or "kicked numerous times on his body, and specifically in his groin area."   Complaint ¶ 26, at 5.   Solis-Marrufo states that he has suffered numerous temporary and permanent physical and emotional injuries from the altercation at the substation.   See Complaint ¶¶ 30-33, at 6.   He states that he has incurred

$14,172.62 in medical bills for the treatment of his injuries, and he believes he will need future medical and mental health treatment for the injuries he suffered from the incident at the substation. See Complaint ¶¶ 34-35, at 6.

The parties consented on September 23, 2011, to the Honorable W. Daniel Schneider, United States Magistrate Judge conducting "all proceedings in this civil action (including a jury or nonjury trial) and to order the entry of final judgment."   Notice, Consent, and Reference of a Civil Action to Magistrate Judge W. Daniel Schneider, filed September 23, 2011 (Doc. 70).

## PROCEDURAL BACKGROUND

Solis-Marrufo alleges in Count I of the Complaint that Fuller, Leeper, and Plum used excessive and unreasonable force against him during the incident which the Complaint describes, in violation of 42 U.S.C. § 1983.   See Complaint ¶¶ 35-40, at 6.   Solis-Marrufo alleges in Count II of the Complaint that Fuller, Leeper, and Plum are liable under 42 U.S.C. § 1983 for failing to intervene to prevent the harm he suffered at the substation.   See Complaint ¶¶ 41-45, at 7. Solis-Marrufo alleges in Count IV[2] of the Complaint that Fuller, Leeper, and Plum battered and assaulted him at the substation, causing him "physical, mental and emotional damages, including, but not limited to, both temporary and permanent physical injury and pain and suffering." Complaint ¶¶ 46-52, at 7-8.   Solis-Marrufo alleges in Count V of the Complaint that Fuller, Leeper, and Plum and Bernalillo County are liable for negligence for breaching their duty to protect him from assault and battery by law enforcement officers.   See Complaint ¶¶ 53-61, at 8-9.   Solis-Marrufo seeks compensatory and special damages against Bernalillo County, Fuller, and Leeper, punitive damages against Fuller, Leeper, and Plum, costs, expenses and attorneys'

---

[2] The Complaint does not contain a count "III."   Complaint at 7.

fees, and pre- and post-judgment interest.   See Complaint at 9.   He demands a jury.   See Complaint at 9.

This matter was set for trial on May 7, 2012, with discovery closing on December 9, 2011. See Amended Scheduling Order at 1, filed September 28, 2011 (Doc. 74); Notice of Hearing: Jury Selection/Jury Trial, filed November 17, 2011 (Doc. 90).   On May 2, 2012, Bernalillo County, Fuller, and Leeper provided Solis-Marrufo with a seventh supplement discovery response, listing two witnesses to the incident, Plum and Quintana.   See First Motion for Sanctions at 1-2.   Plum is the BCSO deputy who intercepted Solis-Marrufo after he kicked Fuller, and attempted to leave the BCSO South Valley Command Center.   See First Response at 5-6.   Solis-Marrufo believes Plum and Quintana are potential defendants in the case.   See First Motion for Sanctions at 2. Deputy Quintana moved out of New Mexico at some point after the incident.   See July 26 Witness Tr. at 40:12-41:19 (Oliveros, Hampsten).

Judge Schneider recused himself from the case on May 7, 2012 and the case was reassigned to the Honorable C. LeRoy Hansen, Senior United States District Judge for the District of New Mexico.   See Doc. 151.   Judge Schneider recused himself because Solis-Marrufo sought sanctions against Bernalillo County's, Fuller's and Leeper' counsel, which included Terri S. Beach, an attorney that formerly worked as Judge Schneider's law clerk.   See Transcript of Hearing at 37:3-9 (Gorence)(taken December 13, 2012)("Dec. 13 Tr.").[3]   The case was reassigned to the Court on May 23, 2012.   See Doc. 155.

---

[3] The Court's citations to the Dec. 13 Tr. refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and/or line numbers.

- 5 -

1.      **The Parties' Discovery Process**.

Solis-Marrufo contends that Bernalillo County, Fuller, and Leeper committed an egregious discovery violation by not disclosing Plum's and Quintana's identity during the discovery period. Solis-Marrufo asserts that Bernalillo County, Fuller, and Leeper could have easily discovered Plum's and Quintana's role in the incident, had Bernalillo County, Fuller, and Leeper made a reasonable inquiry during discovery.   Bernalillo County, Fuller, and Leeper contend that they discovered Plum's and Quintana's involvement only through an arduous process, and, therefore, their failure to inform Solis-Marrufo earlier that Plum and Quintana witnessed the incident is excusable.

a.      **Solis-Marrufo's Interrogatories and Bernalillo County's, Fuller's and Leeper's Responses**.

Through Solis-Marrufo's Interrogatory Nos. 3, 6, 14, and 15, which he served upon Bernalillo County, Fuller, and Leeper on May 6, 2011, Solis-Marrufo requested the names of all officers involved in the incident.   See Second Motion for Sanctions at 3-4.   Specifically, Solis-Marrufo's discovery requests asked:

> **Interrogatory No. 3:**  Please provide the full name and address of all known individuals present during the incident forming the basis of Plaintiff's complaint or who may have knowledge regarding the incident forming the basis of Plaintiff's complaint, including whether- or not said individual was a government employee, and if so, in what capacity.
>
> **Interrogatory No. 6:**  Please provide in specific detail all facts and evidence upon which the County, through its agents, including but not limited to, the Bernalillo County Sheriff's Office and Bernalillo County Sheriff's Department, its agents, servants and employees, rely/relied to support all affirmative defenses raised in its answer.
>
> **Interrogatory No. 14:**  Please identify any individual, other than the named Defendants, Defendant Leeper and Defendant Fuller, that was involved in the physical takedown and arrest of Plaintiff at or near the Bernalillo County Sheriff's

Department substation, and for each such individual, please explain and describe the following:

    a.    the individual's role in the detention and/or arrest of Plaintiff;

    b.    the manner in which the individual touched Plaintiff, if any;

    c.    the proximity of the individual in relation to Plaintiff and Defendant Leeper and Defendant Fuller; and

    d.    the observations of the individual related to Plaintiff's encounter with Defendants.

**Interrogatory No.   15:**   Please identify the "unnamed tortfeasors" alleged in the Eighth Affirmative Defense in your Answer, Doc. 10, and explain the facts which form the basis for this affirmative defense as to each individual identified.

First Motion for Sanctions at 3-4.   In response, Bernalillo County, Fuller, and Leeper produced the names of Fuller, Leeper, Cleo Barela, Deputy John McCauley, Deputy Anthony Allen, Deputy Ronald Griffith, Deputy Harry Landis, Tafoya, Erika Ortiz, Corrections Officer Debbie Padilla, Richard Barela, and Solis-Marrufo.   See County's Answers to Plaintiff's First Set of Interrogatories to Defendant Board of Commissioners for the County of Bernalillo at 1-5, filed May 3, 2012 (Doc. 143-2)("County's First Answers").   Solis-Marrufo asked Bernalillo County, Fuller, and Leeper in his Supplemental Request for Production No. 16 to provide all information about everyone involved in the incident that night who was a part of the South Valley Command and/or involved in Solis-Marrufo's arrest or detention.   See Defendant Board of Commissioners for the County of Bernalillo's Response to Plaintiff's Second Set of Interrogatories and Second Set of Requests for Production to Defendant Board of Commissioners for the County of Bernalillo at 3, filed May 3, 2012 (Doc. 143-3).   Nowhere in the disclosure did Bernalillo County, Fuller, and Leeper name Plum or Quintana.   See id. at 3-4.

Bernalillo County, Fuller, and Leeper provided Solis-Marrufo with the South Valley Command Center watch rosters for the two shifts of deputies on duty the night of the incident,

computer-aided dispatch ("CAD") CDs for February 2-3, 2009, Fuller, Leeper, John McCauley, Harry Landis, Anthony Allen, Ronald Griffith, and Sergeant Lawrence Tafoya's unit histories from February 2-3, 2009, and the BCSO CAD report from the night of the incident during discovery.   See July 26 Witness Tr. at 82:10-83:7 (Robles, Tafoya); County Defendants' Fourth supplemental Rule 26(a)(1) Initial Disclosures at 2-3, dated October 4, 2011, filed May 4, 2012 (Doc. 146-4); July 26 Witness Tr. at 137:1-21 (Sauer, Oliveros); id. at 141:13-17 (Beach, Sauer). The unit history includes "every single call that [the deputy] went to on that shift, February 2nd spilling over into February 3rd."   July 26 Witness Tr. at 137:1-5 (Sauer).   See July 26 Witness Tr. at 138:11-139:4 (Beach, Sauer).   A CAD Report is a "computer printout, . . . generated by the Bernalillo County communications center," and it lists the "time, what happened, and then any notes the dispatcher had" regarding each occurrence the night of the incident.   July 26 Witness Tr. at 139: 10-23 (Beach, Sauer).   The CAD CDs are audio files that contain "every transmission that occurred between a deputy and a dispatcher who works for the Bernalillo County communications center for the evening of February 2nd, 2009, going into February 3rd, 2009."   July 26 Witness Tr. at 140:1-9 (Sauer, Beach).   The watch roster for the first shift, which Tafoya supervised, lists Plum and Quintana as on-duty the night of the incident.   See Watch Roster I at 1.

### b. Bernalillo County's, Fuller's and Leeper's Discovery Inquiries.

Mr. Robles drafted Bernalillo County's, Fuller's and Leeper's answer to Solis-Marrufo's first set of interrogatories.   See July 26 Witness Tr. at 171:6-11 (Oliveros, Robles).   Mr. Robles relied on Bernalillo County's, Fuller's and Leeper's documents and his conversations with Fuller, Leeper, and BCSO Lieutenant James Hampsten in drafting the answer.   See July 26 Witness Tr. at 171:15-24 (Oliveros, Robles).   Mr. Robles answered Solis-Marrufo's request for the identities of

all deputies involved in the incident by speaking with Fuller, and Leeper, and reading the deputies' reports from the night of the incident.  See July 26 Witness Tr. at 172:16-173:25 (Oliveros, Robles).   Mr. Robles knew from the time Solis-Marrufo filed the Complaint that another, unidentified deputy assisted Fuller in intercepting Solis-Marrufo.  See July 26 Witness Tr. at 175:3-175:15 (Oliveros, Robles).   Mr. Robles spoke with Leeper, Fuller, Hampsten, Tafoya, and other BCSO deputies to try to determine the identity of the deputy who assisted Fuller when Solis-Marrufo attempted to escape.   See July 26 Witness Tr. at 175:16-176:8 (Oliveros, Robles). Hampsten does not have personal knowledge of the incident, and he was not present in the parking lot when the incident occurred.   See July 26 Witness Tr. at 7:6-13 (Oliveros, Hampsten); id. at 55:19-56:10 (Oliveros, Hampsten).   From the date of the incident, February 2-3, 2009, through May 2, 2012, Fuller did not take any steps to identify who the deputy was that intercepted Solis-Marrufo.  See July 26 Witness Tr. at 125:11-126:6 (Oliveros, Fuller).   Plum did not participate, in any way, in Bernalillo County's, Fuller's and Leeper's discovery responses.   See July 26 Witness Tr. at 111:18-20 (Oliveros, Plum).

To assist Mr. Robles with his discovery responses, Hampsten provided Mr. Robles with a roster from the date of the incident -- February 2 and 3, 2009.  See July 26 Witness Tr. at 4:25-5:15 (Oliveros, Hampsten).   Hampsten provided Mr. Robles with a roster of all the deputies working at the South Valley Command Center, but he did not inquire further whether any of the listed deputies were involved in the incident.   See July 26 Witness Tr. at 6:12-25 (Oliveros, Hampsten); id. at 7:18-22 (Oliveros, Hampsten).   The South Valley Command Center rosters do not list every deputy who was possibly at the Center on the night of the incident, as other units report to the center but are not necessarily listed on the rosters.   See July 26 Witness Tr. at

28:21-29:8 (Oliveros, Hampsten).   Hampsten attempted to acquire a list of additional deputies that may have been present at the South Valley Command Center on the night of the incident, but was unable to acquire additional records.   See July 26 Witness Tr. at 29:9-30:4 (Hampsten, Oliveros).   Hampsten provided Mr. Robles with all the documentation of which he could think, and any information that came to his mind, to assist Mr. Robles in answering Solis-Marrufo's interrogatories.   See July 26 Witness Tr. at 32:16-33:2 (Oliveros, Hampsten).

Plum and Quintana were on the shift that Tafoya supervised the night of the incident.   See July 26 Witness Tr. at 44:16-22 (Robles, Hampsten).   No deputy from Tafoya's shift provided any information to Hampsten regarding the incident.   See July 26 Witness Tr. at 46:19-25 (Robles, Hampsten).   Tafoya did not help Bernalillo County, Fuller, and Leeper prepare answers to Solis-Marrufo's interrogatories.   See July 26 Witness Tr. at 88:20-22 (Oliveros, Tafoya).

### c.   Tafoya's and Hampsten's, Fuller's Depositions.

Tafoya supervised the deputies on the first shift the night of the incident, which included Plum and Quintana, and no deputy discussed being involved in the incident with Tafoya.   See July 26 Witness Tr. at 84:18-85:7 (Robles, Tafoya); Watch Roster I at 1.   After he reviewed Fuller's incident report, Tafoya did not attempt to identify any additional witnesses to the incident.   See July 26 Witness Tr. at 75:20-24 (Oliveros, Tafoya).   Tafoya does not routinely investigate the facts underlying an incident report, and he did not attempt to collect evidence regarding Fuller's report of the incident.   See July 26 Witness Tr. at 76:1-77:20 (Tafoya, Oliveros).   The extent of Tafoya's involvement in the incident was to ask dispatch to check whether any deputies were involved in the incident and signing Fuller's incident report.   See July 26 Witness Tr. at 92:7-17 (Oliveros, Tafoya).

- 10 -

Mr. Robles met with Tafoya in August of 2011 to help him prepare for his deposition, but he did not play the CAD CDs for Tafoya at the time.  See July 26 Witness Tr. at 176:9-24 (Oliveros, Robles).   Tafoya did not attempt to contact BCSO dispatch, before his deposition, to confirm which deputies were involved in the incident, but rather, he relied upon Fuller's incident report to see which deputies were involved, and nobody from Mr. Robles' firm asked Tafoya to make a further inquiry regarding which deputies were involved.  See July 26 Witness Tr. at 63:18-65:12 (Oliveros, Tafoya).   Mr. Robles never asked Tafoya to take additional measures to identify the deputy that intercepted Solis-Marrufo, beyond attempting to remember who was present the night of the incident.  See July 26 Witness Tr. at 73:5-9 (Oliveros, Tafoya); id. at 88:20-22 (Oliveros, Tafoya).

Solis-Marrufo deposed Tafoya in October, 2011.  See July 26 Witness Tr. at 65:22-23 (Oliveros, Tafoya).   Solis-Marrufo asked about the existence of additional people on the scene in multiple depositions, and Tafoya informed him a mystery man was present on scene, but that no one knew the identify of this man.  See Deposition of Lawrence Tafoya, taken October 5, 2011 at 31:23-33:22, filed May 3, 2012 (Doc. 143-4).   Tafoya stated in his deposition that no deputies from the shift he supervised were involved in the incident.  See July 26 Witness Tr. at 89:14-24 (Oliveros, Tafoya).   Tafoya specifically stated that Plum and Quintana had no involvement in the incident, as he said no one else on his watch participated.  See Tafoya Depo. at 20:6-17.   Tafoya did not believe that any deputy from the first shift was involved in the incident, until Hampsten informed him on May 4, 2012 that Plum was involved in the incident.  See July 26 Witness Tr. at 60:3-61:8 (Oliveros, Tafoya).

In addition, Hampsten specifically stated in his deposition that he did not have knowledge

of anyone else on his watch having involvement in the incident.  See Deposition of James

Hampsten at 21:4-21, taken September 6, 2011, filed May 3, 2012 (Doc. 143-6).  Fuller, in his

deposition, referred to a man wearing a tan uniform who was present at the incident.  See

Deposition of Benjamin Fuller at 47:22-48:12, taken September 7, 2011, filed May 3, 2012 (Doc.

143-4).  Fuller stated in his deposition that the mystery man was an employee of Bernalillo

County, because he was wearing a tan uniform, the same uniform that BCSO deputies wear.  See

Fuller Depo. at 47:22-28:12.

### d. Bernalillo County, Fuller, and Leeper Discover Plum's and Quintana's Involvement in the Incident.

Ms. Taylor Sauer has been working with the law firm of Robles, Rael & Anaya, P.C.,

counsel for Defendants in this case, since May, 2010.  See July 26 Witness Tr. at 133:20-23

(Beach, Sauer).  Ms. Sauer is currently a third-year student at the University of New Mexico

School of Law; she was a second-year student at the time that Bernalillo County, Fuller, and

Leeper discovered that Plum and Quintana were involved in the incident.  See July 26 Witness Tr.

at 133:23-134:4 (Oliveros, Sauer).  Ms. Sauer performs administrative and law clerk work for the

firm.  See July 26 Witness Tr. at 134:6-11 (Sauer).  In April, 2012, Mr. Luis Robles, lead counsel

on the case, asked Ms. Sauer to determine the location of each BCSO deputy on duty at the South

Valley Command Center at the time of the incident.  See July 26 Witness Tr. at 136:3-23 (Sauer,

Beach).  Mr. Robles did not task Ms. Sauer with determining the identity of the deputy who

tackled Solis-Marrufo.  See July 26 Witness Tr. at 136:11-13 (Beach, Sauer); id. at 144:23-25

(Beach, Sauer).  Ms. Sauer used the South Valley Command Center watch rosters for the two

shifts of deputies on duty the night of the incident, CAD dispatch CDs for February 2-3, 2009,

Fuller, Leeper, McCauley, Landis, Allen, Griffith, and Sergeant Tafoya's unit histories from

February 2-3, 2009, and the CAD reports to determine the location of each deputy the night of the incident, all of which Bernalillo County, Fuller, and Leeper previously provided to Solis-Marrufo. <u>See</u> July 26 Witness Tr. at Tr. at 82:10-83:7 (Robles, Tafoya); <u>id.</u> at 137:1-21 (Sauer, Beach); <u>id.</u> at 138:11-139:4 (Sauer, Beach); <u>id.</u> at 139: 10-23 (Beach, Sauer); <u>id.</u> at 141:13-17 (Beach, Sauer); County Defendants' Fourth supplemental Rule 26(a)(1) Initial Disclosures at 2-3, dated October 4, 2011, filed May 4, 2012 (Doc. 146-4).   Ms. Sauer created a timeline for the night of the incident by listening to the CAD CDs, and cross-referencing the deputies' identified on the CAD CD with the CAD report detailing a particular incident at a particular time.   <u>See</u> July 26 Witness Tr. at 141:20-142:16 (Sauer).   Ms. Sauer also used the unit histories as a cross-reference to the CAD CDs, because CAD report did not record every event from the night of the incident.   <u>See</u> July 26 Witness Tr. at 143:7-9 (Sauer).   Ms. Sauer listened to each track on the CAD CDs multiple times to determine what was happening in the particular dispatch recorded.   <u>See</u> July 26 Witness Tr. at 143:7-13 (Sauer).   Bernalillo County, Fuller, and Leeper did not use the unit histories that they provided to Solis-Marrufo in the Eighth Disclosures to discover Plum and Quintana's identity, although those histories are helpful for determining that Plum and Quintana were present at the incident.   <u>See</u> July 26 Witness Tr. at 157:11-160:19 (Oliveros, Sauer).   Ms. Sauer spent approximately fifteen hours creating the timeline.   <u>See</u> July 26 Witness Tr. at 143:14-17 (Beach, Sauer).

Ms. Sauer met with Hampsten around April 18, 2012, and he assisted Ms. Sauer with identifying certain codes on the CAD CDs that she did not understand.   <u>See</u> July 26 Witness Tr. at 144:8-22 (Sauer, Beach); <u>id.</u> at 145:3-12 (Sauer).   Several weeks before the May 7, 2012 trial setting in this matter, Hampsten assisted Ms. Sauer in going through CAD CDs from the night of

the incident, and through the process, Bernalillo County, Fuller, and Leeper learned that Plum was the deputy who intercepted Solis-Marrufo while he attempted to leave the South Valley Command Center.   See July 26 Witness Tr. at 12:25-13:10 (Hampsten, Oliveros).   The first time Hampsten listened to the CAD CDs was when he met with Ms. Sauer, and only he and Ms. Sauer were present to listen to the tapes.   See July 26 Witness Tr. at 14:23-15:1 (Oliveros, Hampsten). Nothing impeded Hampsten from listening to the CAD CDs earlier than in April, 2012.   See July 26 Witness Tr. at 23:3-14 (Oliveros, Hampsten).   Through listening to the CAD CDs, Hampsten helped Ms. Sauer determine that Quintana was present at the South Valley Command Center on the night of the incident, and a possible witness to the incident, because Quintana was listed on the BCSO rosters for the South Valley Command Center for the night and Hampsten identified her voice at the appropriate time on the CAD CDs.   See July 26 Witness Tr. at 15:12-16:9 (Hampsten, Oliveros); id. at 17:16-21 (Hampsten, Oliveros); id. at 18:2-5 (Hampsten); id. at 146:3-10 (Sauer, Beach).   Hampsten did not believe that Quintana was involved in the incident until he met with Ms. Sauer.   See July 26 Witness Tr. at 47:10-16 (Robles, Hampsten).

Nothing in the CAD CDs indicated to Hampsten that Plum was present and involved in the incident.   See July 26 Witness Tr. at 53:8-15 (Robles, Hampsten).   Hampsten did not believe, after meeting with Ms. Sauer, that Plum was involved in the incident.   See July 26 Witness Tr. at 48:4-12 (Robles, Hampsten).   Hampsten was able to determine when he met with Ms. Sauer that Tafoya was not a witness to the incident, because the CAD CDs indicate that he was inside the South Valley Command Center at the time of the incident, which occurred outside.   See July 26 Witness Tr. at 50:8-18 (Robles, Hampsten); id. at 52:11-17 (Hampsten, Robles).   Hampsten did not follow-up with Quintana to confirm that she was present at the South Valley Command Center

on the night of the incident after learning that she was present.  See July 26 Witness Tr. at 11:14-17 (Oliveros, Hampsten).   Hampsten did not have an updated address for Quintana in May, 2012.  See July 26 Witness Tr. at 40:12-41:19 (Oliveros, Quintana).

Ms. Sauer determined that Quintana was not the deputy that tackled Solis-Marrufo, because Fuller identified that deputy as a man, but Ms. Sauer found, from the CAD CDs, that Quintana and Plum were dispatched on the same call before the incident.   See July 26 Witness Tr. at 147:6-25 (Sauer, Beach).    Ms. Sauer then suspected that Plum may have tackled Solis-Marrufo.  See July 26 Witness Tr. at 148:4-12 (Sauer, Beach).   Ms. Sauer informed Mr. Robles of her suspicion, then called Plum, and he confirmed that he was present at the incident and had tackled Solis-Marrufo.   See July 26 Witness Tr. at 97:11-98:14 (Oliveros, Plum); id. at 106:16-24 (Oliveros, Plum); id. at 148:11-23 (Sauer, Beach).   Ms. Sauer's discussion with Plum regarding the incident was the first time he was contacted regarding the incident.   See July 26 Witness Tr. at 97:11-17 (Oliveros, Plum).   Plum did not recognize Solis-Marrufo's name, but he remembered that the night of the incident Fuller, while carrying a laptop, chased a person; when Ms. Sauer reminded Plum that Fuller had chased a person with a laptop, Plum remembered that he was involved in the incident.   See July 26 Witness Tr. at 100:5-12 (Oliveros, Plum).   Plum did not initially recall that Quintana witnessed the incident when he spoke with Ms. Sauer.   See July 26 Witness Tr. at 101:13-21 (Oliveros, Plum).

Ms. Sauer informed Mr. Robles of Plum's role in the incident around noon on May 2, 2012, and she set up an appointment for Mr. Robles to meet with Plum, at 3:00 p.m. that day.   See July 26 Witness Tr. at 148:25-149:8 (Sauer).   Mr. Robles did not learn that Plum and Quintana were involved in the incident before May 2, 2012.  See Transcript of Hearing at 7:2-12 (Robles,

Oliveros)(taken July 27, 2012), filed October 29, 2012 (Doc. 187)("July 27 Tr.").   Bernalillo County, Leeper, and Fuller informed Solis-Marrufo that Plum and Quintana are witnesses to the incident at approximately 4:00 p.m. on May 2, 2012.   See First Motion for Sanctions at 1-2.

Mr. Robles informed Fuller on May 2, 2012, that he could not account for Plum and Quintana's location on the night of the incident.   See July 26 Witness Tr. at 121:18-25 (Fuller, Oliveros).   Fuller did not remember Quintana being present at the incident.   See July 26 Witness Tr. at  123:11-16 (Oliveros, Fuller).   On May 2, 2012, Fuller attempted to contact Plum and Quintana, but he could not reach Quintana.   See July 26 Witness Tr. at 121:21-122:4 (Fuller, Oliveros).   When Fuller contacted Plum and asked him if he remembered an incident from 2009 in which a person kicked Fuller while attempting to escape and another deputy helped Fuller detain the person, Plum told Fuller that he remembered the incident.   See July 26 Witness Tr. at 122:5-11 (Fuller).

Hampsten did not know that Plum was involved in the incident until Mr. Robles informed him of Plum's role.   See July 26 Witness Tr. at 8:6-22 (Oliveros, Hampsten); id. at 9:17-24 (Oliveros, Hampsten).   Hampsten did not attempt to verify Mr. Robles' representation that Plum was involved in the incident.   See July 26 Witness Tr. at 10:12-15 (Oliveros, Hampsten). Hampsten did not canvas the South Valley Command Center to determine whether anybody else was present and witnessed that incident after learning of Plum and Quintana's involvement.   See July 26 Witness Tr. at 11:18-21 (Oliveros, Hampsten).

Plum met with Mr. Robles and Ms. Sauer on July 20, 2012 to listen to the CAD CDs.   See July 26 Witness Tr. at 102:1-18 (Plum, Oliveros).   When Plum listened to the CAD CDs, he recognized Quintana's voice, and remembered that she witnessed the incident.   See July 26

Witness Tr. at 102:105 (Plum).   Plum did not remember, apart from the CAD CDs, that Quintana was present at the incident.   See July 26 Witness Tr. at 113:19-24 (Oliveros, Plum).   To the best of Plum's knowledge, only he, Fuller, and Quintana were present when he intercepted Solis-Marrufo.   See July 26 Witness Tr. at 113:11-18 (Oliveros, Plum).

After learning that Plum was involved in the incident on May 2, 2012, Mr. Robles and his firm spent over two weeks meeting with the other deputies present at the South Valley Command Center the night of the incident.   See July 27 Tr. at 8:13-9:20 (Oliveros, Robles).   Through the meetings, Mr. Robles did not learn of any other deputies, besides Plum and Quintana, who had personal knowledge of the incident.   See July 27 Tr. at 9:21-10:1 (Oliveros, Robles).

> e.   **Bernalillo County's, Fuller's, and Leeper's Eighth and Ninth Disclosures.**

On May 21, 2012, Bernalillo County, Fuller, and Leeper provided Solis-Marrufo with Bernalillo County Defendants' Eighth Supplement Rule 26(a)(1) Initial Disclosures, filed June 7, 2012 (Doc. 157-1)("Eighth Disclosures"), in which Bernalillo County, Fuller, and Leeper list forty-three new individuals who potentially have information regarding the case.   On June 13, 2012, Bernalillo County, Fuller, and Leeper provided Solis-Marrufo with a Bernalillo County Sheriff's Office Report from the night of the incident.   See County Defendants' Ninth Supplemental Rule 26(a)(1) Initial Disclosures, filed June 26, 2012 (Doc. 165-1)("Ninth Disclosures").

> 2.   **Solis-Marrufo's First Motion for Sanctions.**

Solis-Marrufo moves the Court to sanction Bernalillo County, Fuller, and Leeper pursuant to rules 37(b) and (c) of the Federal Rules of Civil Procedure.   See First Motion for Sanctions at 1. Solis-Marrufo contends that the "mere possibility that the mystery person may have been an

employee of the County signifies that the County had it well within their means to discover[] the identity of the mystery person."  First Motion for Sanctions at 5.  Solis-Marrufo asserts that Bernalillo County, Fuller, and Leeper failed to disclose "material evidence" and failed to comply with discovery rules.  First Motion for Sanctions at 1.  Solis-Marrufo contends that Bernalillo County's, Fuller's and Leeper's "deliberate, willful and/or grossly negligent" actions prejudice him, and he requests the Court to grant a default judgment in his favor, or, exclude a newly disclosed witness and any reference thereto and give a missing witness jury instruction.  See First Motion for Sanctions at 1.  Solis-Marrufo contends that he repeatedly asked for a list of all witnesses from Bernalillo County, Fuller, and Leeper.  Solis-Marrufo contends that, had he known that Plum and Quintana were present at the South Valley Command Center, he would have named them as defendants as well.  See First Motion for Sanctions at 2.

Solis-Marrufo asserts that Bernalillo County's, Fuller's and Leeper's failure to timely disclose the two witnesses "is so egregious that it warrants sanctions against the County Defendants in the form of a default judgment."  First Motion for Sanctions at 5.  Solis-Marrufo contends that he has diligently litigated his case and engaged in discovery, but Bernalillo County, Fuller, and Leeper "have deliberately thwarted Plaintiff's discovery efforts," by concealing "the identity of these two individuals until the eve of trial."  First Motion for Sanctions at 5-6.  Solis-Marrufo contends that Bernalillo County, Fuller, and Leeper had "ample notice" of the identity of these witnesses, but "chose to wait to disclose this information less than one week before trial."  First Motion for Sanctions at 6.  Solis-Marrufo asserts that Bernalillo County, Fuller, and Leeper delay is "unexplainable," and demonstrates a "deliberate, willful pattern of withholding critical evidence with significant prejudice resulting to the Plaintiff."  First Motion

for Sanctions at 6.   Solis-Marrufo asserts that, because Bernalillo County, Fuller, and Leeper disclosed the witnesses after discovery ended, he cannot respond "in a meaningful manner through other discovery," and, thus, the only appropriate remedy for Bernalillo County's, Fuller's and Leeper's delay is an entry of default judgment in his favor.   First Motion for Sanctions at 6.

Solis-Marrufo contends that the public policy considerations underlying sanctions, including ensuring future compliance with discovery rules, would be served by awarding him default judgment.   See First Motion for Sanctions at 7.   Solis-Marrufo asserts that he has "no ability to depose the potential defendants, add them as defendants to the instant suit, or even obtain the substance of their knowledge and testimony."   First Motion for Sanctions at 7. Solis-Marrufo asserts that if the "Defendants are permitted to engage in this type of discovery abuse, a pattern will emerge and the overall impact will be harmful not only to Plaintiff . . . but to all citizens of this district."   First Motion for Sanctions at 7.

Solis-Marrufo asserts that a default judgment is an appropriate remedy for Bernalillo County's, Fuller's and Leeper's late disclosure.   He contends that Bernalillo County, Fuller, and Leeper "intentionally concealed the identity of two potential defendants, or, at a minimum, key witnesses, and only chose to disclose them on the eve of trial, when Plaintiff couldn't possibly adequately prepare for the cross-examination."   First Motion for Sanctions at 8.   Solis-Marrufo contends that, when a party engages in obstructive discovery tactics by failing to truthfully respond to discovery, the Court "may impose even the ultimate sanction of dismissal directly, without first issuing an order to compel discovery."   First Motion for Sanctions at 8 (citing Fed. R. Civ. P. 37, Archibeque v. Atchison, Topeka & Santa Fe Ry. Co., 70 F.3d 1172, 1175 (10th Cir. 1995)).   In the alternative, Solis-Marrufo requests the Court to strike Bernalillo County's, Fuller's and

Leeper's Seventh Supplemental Discovery Responses, exclude Plum and Quintana as witnesses from this matter, and give a jury instruction that the jury should construe that any missing evidence against Bernalillo County, Fuller, and Leeper.   See First Motion for Sanctions at 10 (citing Knowlton v. Teltrust Phones, Inc., 189 F.3d 1177, 1182 (10th Cir. 1999)).   Solis-Marrufo asserts that courts uniformly prohibit parties from supplementing discovery "at this late time in a case." First Motion for Sanctions at 10.   Solis-Marrufo also requests attorneys' fees and costs "incurred thus far in this case, as well as future costs and fees."   First Motion for Sanctions at 10.

Bernalillo County, Fuller, and Leeper conceded that, had they willfully failed to comply with their discovery obligations, sanctions would be warranted, but they assert that they "turned over the evidence to Plaintiff within hours of it coming to light."   County Defendants' Response to Plaintiff's Motion for Entry of Default Judgment and Other Sanctions, filed May 4, 2012 (Doc. 146)("First Response").   Bernalillo County, Fuller, and Leeper additionally assert that the "subject of the disclosure at issue was also in Plaintiff's hands long before the close of discovery, as a result of County Defendants' supplemental disclosures."   First Response at 2.   Bernalillo County, Fuller, and Leeper contend that Solis-Marrufo is attempting to "deter ongoing fact development close to trial and discourage the disclosure of late-discovered information" through the First Motion for Sanctions.   First Response at 2.

Bernalillo County, Fuller, and Leeper assert that they responded to Solis-Marrufo's interrogatories with lists of those who may have knowledge of the incident "to the best of County Defendants' counsels' knowledge, information, and belief, after conducting a reasonable inquiry." First Response at 2-3.   Bernalillo County, Fuller, and Leeper assert that Fuller could not identify the mystery BCSO deputy at any point.   Bernalillo County, Fuller, and Leeper contend that,

before the mystery deputy came onto the scene, Solis-Marrufo had kicked Fuller, knocking the wind out of him.   Bernalillo County, Fuller, and Leeper assert that Fuller was new to his job and not familiar with the mystery deputy, and, thus, could not identify the deputy at the time. Bernalillo County, Fuller, and Leeper point out that, according to Tafoya and Hampsten's depositions, they were unable to identify any further deputies on the scene at the time of the incident, and had no knowledge of who the mystery deputy could be.   See First Response at 3 (citing Hampsten Depo. at 21:4-21, Tafoya Depo. at 8:10-16, 20:6-23).   Bernalillo County, Fuller, and Leeper assert, thus, that during discovery they had no knowledge of the mystery deputy's identity.   See First Response at 3.   Bernalillo County, Fuller, and Leeper assert that they only learned of Plum and Quintana's identities through an "intensive" process of reviewing BCSO Command watch rosters, unit histories, and CAD records, all of which they previously provided to Solis-Marrufo during discovery.   First Response at 4.

Bernalillo County, Fuller, and Leeper assert that the Court may only impose Solis-Marrufo's requested sanctions under rule 37 when a party does not disclose information of which it is aware.   Bernalillo County, Fuller, and Leeper assert that they "could not have turned over information of which they were not aware," and, thus, they did not willfully fail to comply with their discovery obligations, as Solis-Marrufo contends.   First Response at 5.   Bernalillo County, Fuller, and Leeper assert that Solis-Marrufo is making "profoundly serious accusations and is seeking extremely severe sanctions without offering any evidence whatsoever that County Defendants intentionally concealed the identity of two individuals with potentially relevant information."   First Response at 5.   Bernalillo County, Fuller, and Leeper assert that, had they known that Plum and Quintana were witnesses earlier, they would have disclosed Plum's and

Quintana's identities, because these witnesses benefit their case by corroborating Fuller's account of the incident.   See First Response at 7.

Moreover, Bernalillo County, Fuller, and Leeper contend that Tafoya informed Solis-Marrufo, during his deposition, that Plum and Quintana were at the BCSO South Valley Command Center on the night of the incident.   See First Response at 6 (citing Tafoya Depo. at 19:17-20).   Bernalillo County, Fuller, and Leeper assert that Solis-Marrufo is now seeking to hold Bernalillo County, Fuller, and Leeper "responsible for not discovering sooner the relevance of information that they ultimately uncovered using the same documents that were in Plaintiff's possession all along."   First Response at 7.

**3.      Bernalillo County's, Fuller's and Leeper's Motion to Reopen Discovery.**

Bernalillo County, Fuller, and Leeper move the Court to reopen discovery and reset certain discovery deadlines.   See Motion to Reopen Discovery at 1.   Bernalillo County, Fuller, and Leeper point out that Solis-Marrufo has not had the opportunity to conduct discovery regarding Plum and Quintana.   See Motion to Reopen Discovery ¶ 3, at 3.   Bernalillo County, Fuller, and Leeper request, as of May 24, 2012, ninety additional days to complete discovery.   See Motion to Reopen Discovery ¶ 5, at 3.

Solis-Marrufo opposes the Motion to Reopen Discovery.   See Plaintiff's Amended Response in Opposition to Motion for Reopen Discovery and Reset Certain Discovery-Related Deadlines [Doc. 156], filed June 8, 2012 (Doc. 160)("Opposition to Reopening Discovery"). Solis-Marrufo asserts that reopening discovery "would greatly prejudice Plaintiff and it would frustrate both the letter, purpose and spirit of the rules of discovery."   Opposition to Reopening Discovery at 3.   Solis-Marrufo asserts that the only appropriate remedy for Bernalillo County's,

Fuller's and Leeper's untimely disclosure of Plum and Quintana is to enter default judgment in his favor.   See Opposition to Reopening Discovery at 3.   Solis-Marrufo points out that, on May 21, 2012, Bernalillo County, Fuller, and Leeper identified forty-one additional individuals who may have information regarding the case, which, in addition to Plum and Quintana, gives Solis-Marrufo forty-three new individuals to investigate.   See Opposition to Reopening Discovery at 2.

Solis-Marrufo contends that Bernalillo County, Fuller, and Leeper have failed to demonstrate good cause for reopening discovery, pursuant to rule 16(b)(4) of the Federal Rules of Civil Procedure.   Solis-Marrufo asserts that the Court should give no relief to Bernalillo County, Fuller, and Leeper for their "careless or untimely" discovery actions.   Opposition to Reopening Discovery at 3.   Solis-Marrufo contends that the factors which the Court should apply when considering whether to reopen discovery, which the Tenth Circuit announced in Smith v. United States, 824 F.2d 166, 169 (10th Cir. 1987), counsel in favor of not reopening discovery.   See Opposition to Reopening Discovery at 3.   Solis-Marrufo asserts that Bernalillo County's, Fuller's, and Leeper's disclosure of "highly relevant evidence and information at such a late date has unfairly prejudiced Plaintiff in his ability to prosecute this case and join parties to the complaint."   Opposition to Reopening Discovery at 4.   Solis-Marrufo further contends that he will suffer great prejudice if he is "required to investigate, essentially, an entirely new case." Opposition to Reopening Discovery at 4.   Solis-Marrufo asserts that the "sheer number of additional witnesses is, in and of itself, [] prejudicial."   Opposition to Reopening Discovery at 4. Solis-Marrufo asserts that Bernalillo County, Fuller, and Leeper were not diligent in meeting their discovery obligations.   Solis-Marrufo asserts that Bernalillo County, Fuller, and Leeper have

- 23 -

provided no explanation for why they were unable to identify Plum earlier, that they should have known they would need to make further inquiry regarding Plum's identity, and that their failure to identify him demonstrates "bad faith."   Opposition to Reopening Discovery at 5.   Solis-Marrufo asserts that the "Defendants also mislead Plaintiff throughout the discovery process."   Opposition to Reopening Discovery at 5.   Solis-Marrufo points to Tafoya's statement that he had no knowledge regarding the individuals involved in the incident, yet Plum and Quintana were on Tafoya's watch the night of the incident.   See Opposition to Reopening Discovery at 5. Solis-Marrufo asserts that Bernalillo County, Fuller, and Leeper are "essentially . . . stating that Sgt. Tafoya committed perjury" regarding the BCSO deputies present at the incident, which Solis-Marrufo asserts "further proves their deliberate and willful attempt to engage in 'trial by ambush' strategy."   Opposition to Reopening Discovery at 6.

In reply, Bernalillo County, Fuller, and Leeper state that "it appears that Plaintiff does not want to take advantage" of an opportunity to conduct discovery regarding the newly identified witnesses, but Bernalillo County, Fuller, and Leeper nonetheless "request that this Court afford Plaintiff that opportunity."   Reply to Response to Motion to Reopen Discovery and Reset Certain Discovery-Related Deadlines, filed Jun 26, 2012 (Doc. 166)("Reply to Reopening Discovery").

### 4.   Solis-Marrufo's Objection to the Eighth Supplemental Disclosures.

Solis-Marrufo requests that the Court, pursuant to rules 37(b) and (c), strike Bernalillo County's, Fuller's and Leeper's Eighth Disclosures and sanction Bernalillo County, Fuller, and Leeper for failing to comply with the Federal Rules of Civil Procedure.   See Obj. to Eighth Disclosures at 1.   Solis-Marrufo points out that Bernalillo County, Fuller, and Leeper identify forty-three new individuals with information about the case in the Eighth Disclosures, and that

Bernalillo County, Fuller, and Leeper made the Eighth Disclosures "more than five months after the close of discovery." Obj. to Eighth Disclosures at 1. Solis-Marrufo asserts that Bernalillo County's control over the newly identified individuals, as all of them either work for BCSO or Bernalillo County's Communications Department, and Bernalillo County, Fuller, and Leeper, therefore, had access to the individuals and could have disclosed their identities within the discovery period. Solis-Marrufo asserts that Bernalillo County's, Fuller's and Leeper's delay in disclosing these individuals until the "eve of trial . . . flagrantly violates the discovery rules." Obj. to Eighth Disclosures at 2. Solis-Marrufo asserts that courts uniformly prohibit supplementation of discovery "at this late time in the case." Obj. to Eighth Disclosures at 2.

Bernalillo County, Fuller, and Leeper assert that Solis-Marrufo's Obj. to Eighth Disclosures is based on his assertion that they "willfully failed to comply with their discovery obligations," which they assert the facts of the case do not support. County Defendants' Response to Plaintiff's Objection to Defendants' Eighth Supplemental Disclosures, filed June 26, 2012 (Doc. 164)("Response to Obj. to Eighth Disclosures"). Bernalillo County, Fuller, and Leeper point out that Fuller could not identify Plum at the time of the incident, and that Tafoya and Hampsten did not have knowledge of any other deputies present at the incident. See Response to Obj. to Eighth Disclosures at 2-3. Bernalillo County, Fuller, and Leeper assert that, because they did not know of any additional individuals, they truthfully informed Solis-Marrufo that they were unaware of Plum's identity until May, 2012. See Response to Obj. to Eighth Disclosures at 3. Bernalillo County, Fuller, and Leeper also point out that Plum and Quintana are listed on the BCSO South Valley Command Center rosters for the night of February 2-3, 2009, rosters which Bernalillo County, Fuller, and Leeper provided to Solis-Marrufo during discovery, and, thus,

Solis-Marrufo could have investigated whether Plum and Quintana and others had information regarding the incident at an earlier time.  See Response to Obj. to Eighth Disclosures at 4-6. Bernalillo County, Fuller, and Leeper point out that, as soon as they discovered that Plum had information regarding the incident, they disclosed his identity to Solis-Marrufo.  See Response to Obj. to Eighth Disclosures at 6-7.  Bernalillo County, Fuller, and Leeper also assert that Solis-Marrufo had information regarding each of the forty-three individuals identified in the Eighth Disclosures before discovery closed.  See Response to Obj. to Eighth Disclosures at 7-18.

Bernalillo County, Fuller, and Leeper contend that the Eighth Disclosures complies with rule 26's requirements, and thus, the Court should not impose sanctions.  Bernalillo County, Fuller, and Leeper contend that an appropriate remedy is to allow additional time for Solis-Marrufo to conduct discovery.  See Response to Obj. to Eighth Disclosures at 18. Bernalillo County, Fuller, and Leeper point out that, according to rule 26(e)'s advisory committee's note to the 1993 amendments, a party has "'no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process . . . .'"  Fed. R. Civ. P. 26(e), advisory committee's notes to the 1993 amendments.  Bernalillo County, Fuller, and Leeper assert that Solis-Marrufo had within his possession "significant amounts of information about the identities of the offending deputies but for unknown reasons failed to utilize this information."   Response to Obj. to Eighth Disclosures at 21.  Bernalillo County, Fuller, and Leeper point out that Solis-Marrufo had the South Valley Command Center's rosters for the night of the incident, and questioned Tafoya regarding the roster during his deposition, but did not question Tafoya regarding Plum or Quintana even though Solis-Marrufo knew, from Tafoya's deposition, that those two witnesses were present during the

incident.  <u>See</u> Response to Obj. to Eighth Disclosures at 22 (citing Tafoya Depo. at 18:16-18, 19:17-20, 26:7-9).   Bernalillo County, Fuller, and Leeper assert that Solis-Marrufo "chose not to analyze the information in his possession or to conduct any further meaningful discovery to assure he was suing the appropriate Deputies."   Response to Obj. to Eighth Disclosures at 22.  Bernalillo County, Fuller, and Leeper assert that the Federal Rules of Civil Procedure do not require them to gather all of the information for Solis-Marrufo.   <u>See</u> Response to Obj. to Eighth Disclosures at 22 (citing <u>Sender v. Mann</u>, 225 F.R.D. 645, 655-56 (D. Colo. 2004).

Bernalillo County, Fuller, and Leeper assert that imposing a default judgment would be an unwarranted remedy.   Bernalillo County, Fuller, and Leeper assert that Solis-Marrufo had more information in his possession than they did, and that he had over six months to gather relevant information during discovery.   Bernalillo County, Fuller, and Leeper point out that Solis-Marrufo chose to only depose three individuals.   <u>See</u> Response to Obj. to Eighth Disclosures at 23-24.  Bernalillo County, Fuller, and Leeper assert that Solis-Marrufo had "sufficient opportunity and information from which to identify the 'right' deputies," and that they have no duty to disclose the significance of documentary evidence to him.   <u>See</u> Response to Obj. to Eighth Disclosures at 24-25.  Bernalillo County, Fuller, and Leeper assert that an appropriate remedy is to provide Solis-Marrufo with more time to conduct discovery, "given that Plaintiff's inaction is the paramount reason he did not sue the correct deputies."   Response to Obj. to Eighth Disclosures at 25.

Solis-Marrufo incorporates by reference his Second Motion for Sanctions in reply to the Response to Obj. to Eighth Disclosures.   <u>See</u> Reply in Support of Plaintiff's Objection to Defendants' Eighth Supplemental Disclosures at 1, filed July 10, 2012 (Doc. 171).

5.      **Solis-Marrufo's Second Motion for Sanctions**.

Solis-Marrufo filed the Second Motion for Sanctions to notify the Court that he suffers prejudice from the Eighth Disclosures further and in addition to the prejudice he alleges in the First Motion for Sanctions, which he filed before Bernalillo County, Fuller, and Leeper made the Eighth Disclosures.  See July 27 Motion Tr. at 35:18-25 (Oliveros).  Solis-Marrufo asserts that the Eighth Disclosures "further illustrates the egregious discovery violations, pattern of conduct and trial tactics used by the Defendants."   Second Motion for Sanctions at 2.  Solis-Marrufo asserts that "there is no good cause for the late disclosure of 43 possible witnesses and/or defendants," and that Bernalillo County, Fuller, and Leeper "turned a blind eye toward individuals they know or should have known had relevant information about this case and failed to make basic inquiries of County employees about this case."   Second Motion for Sanctions at 2.  Solis-Marrufo asserts that Bernalillo County's, Fuller's and Leeper's actions are not "'mere oversight' that resulted in nondisclosure," and, rather, that Bernalillo County, Fuller, and Leeper engaged in discovery abuses that severely prejudice him.   Second Motion for Sanctions at 2 (quoting Archibeque v. Atchison, Topeka & Santa Fe Ry. Co., 70 F.3d at 1174-75).   Solis-Marrufo requests that the Court award him the attorneys' fees he has incurred thus far in this litigation, as well as future costs and fees.   See Second Motion for Sanctions at 3.

Bernalillo County, Fuller, and Leeper assert that the "deterrence" Solis-Marrufo seeks to encourage serves no purpose "where there has been no wrongdoing."   County Defendants' Response to Plaintiffs' Second Motion for Entry of Default Judgment and Other Sanctions for Failure to Disclose Evidence, Withholding Evidence and Other Discovery Abuses at 2, filed June 25, 2012 (Doc. 163)("Second Response").   Bernalillo County, Fuller, and Leeper assert that they

disclosed Plum and Quintana's identities to Solis-Marrufo as soon as they became aware that Plum and Quintana had information about the case, and that Solis-Marrufo also had in his possession the documents Bernalillo County, Fuller, and Leeper used to identify Plum and Quintana.   See Second Response at 8-9.   Bernalillo County, Fuller, and Leeper contend that their failure "to put together pieces of a puzzle sooner, just as Plaintiff did with the same information, is not grounds for sanctions."   Second Response at 10.

Solis-Marrufo asserts that Bernalillo County's, Fuller's and Leeper's statement that "but for Plaintiff's lack of diligence, Plaintiff would have discovered Jason Plum and Veronica Quintana were witnesses in this case . . . is without merit."   Reply in Support of Plaintiff's Second Motion for Default Judgment and Other Sanctions for Failure to Disclose Evidence, Withholding of Evidence and Other Discovery Abuses at 1, filed July 9, 2012 (Doc. 169)("Reply - Second Motion for Sanctions").   Solis-Marrufo asserts that he was "continuously mislead by Defendants" throughout discovery.   Reply - Second Motion for Sanctions at 1.   Solis-Marrufo points out that he deposed Tafoya and Hampsten, and that neither identified additional deputies involved in the incident, beyond those included in Bernalillo County's, Fuller's and Leeper's disclosures during discovery.   See Reply - Second Motion for Sanctions at 2.   Solis-Marrufo asserts that he "made every effort to investigate this case and ascertain the names of all individuals involved . . . . [and] wholly relied on Defendants' answers."   Reply - Second Motion for Sanctions at 2. Solis-Marrufo asserts that he should not be faulted for relying on the veracity of Bernalillo County's, Fuller's and Leeper's discovery responses.   See Reply - Second Motion for Sanctions at 2.   Solis-Marrufo contends that Bernalillo County, Fuller, and Leeper have given no justification for their failure to identify Quintana and Plum before the eve of trial.   See Reply -

Second Motion for Sanctions at 3.   Solis-Marrufo contends that, "[i]nstead of diligently responding to discovery requests, Defendants failed to take the necessary steps to identify the names of all individuals involved in the incident."   Reply - Second Motion for Sanctions at 3.

Solis-Marrufo asserts that sanctions are warranted, because Bernalillo County, Fuller, and Leeper had "multiple chances to investigate and disclose the identities of all deputies involved, yet they waited until the eve of trial to investigate this case." Reply - Second Motion for Sanctions at 3-4.   Solis-Marrufo asserts that a party is required by the discovery rules to supplement discovery throughout trial preparation "so that no party goes into the case blind."   Reply - Second Motion for Sanctions at 4 (citing <u>United States v. Procter & Gamble Co.</u>, 356 U.S. at 682)). Solis-Marrufo asserts, therefore, that Bernalillo County, Fuller, and Leeper "should not be rewarded by the Court allowing [them] to conduct discovery and delay the trial."   Reply - Second Motion for Sanctions at 4.

### 6.   Solis-Marrufo's Objection to Bernalillo County's, Fuller's and Leeper's Ninth Supplemental Disclosures.

Solis-Marrufo requests the Court, pursuant to rules 37(b) and (c), strike the Ninth Disclosures.   <u>See</u> Obj. to Ninth Disclosures at 1.   In the Ninth Disclosures, Bernalillo County, Fuller, and Leeper disclosed a BCSO report from February 3, 2009.   Ninth Disclosures at 1. Solis-Marrufo asserts that there is no justification for Bernalillo County's, Fuller's and Leeper's failure to disclose the report earlier, as the report was within Bernalillo County's control during discovery.   Solis-Marrufo further asserts that the police report is "meant to support their recent disclosure of a new witness to this case, Deputy Joshua Shores."   Obj. to Ninth Disclosures at 2 (citing Eighth Disclosures).   Solis-Marrufo asserts that "there is no justification for disclosing this most recent document at this late stage in the litigation, when the disclosure even occurs over three

(3) weeks after Defendants' latest Eighth Supplemental Disclosure."   Obj. to Ninth Disclosures at 2.   Solis-Marrufo asserts that Bernalillo County's, Fuller's and Leeper's "conduct of withholding relevant and material evidence, flagrantly violates the discovery rules."   Obj. to Ninth Disclosures at 2-3.   Solis-Marrufo asserts that the Ninth Disclosure is another example of Bernalillo County's, Fuller's and Leeper's "trial by ambush" strategy.   Obj. to Ninth Disclosures at 3.

Bernalillo County, Fuller, and Leeper contend that the BCSO report has no impact on Solis-Marrufo's claim.   See County Defendants' Response to Plaintiff's Objection to Defendants' Ninth Supplemental Disclosures at 1, filed June 26, 2012 (Doc. 165)("Response to Obj. to Ninth Disclosures").   Bernalillo County, Fuller, and Leeper assert that they provided information to Solis-Marrufo "[m]onths before discovery closed" indicating that Joshua Shores, a BCSO deputy, was working on the night of the incident. Response to Obj. to Ninth Disclosures at 2.   Bernalillo County, Fuller, and Leeper assert that the BCSO report indicates that a BCSO deputy on duty the night of the incident, Shores, was "in another location at the time that the alleged beating" occurred.   Response to Obj. to Ninth Disclosures at 2.   Bernalillo County, Fuller, and Leeper note that Solis-Marrufo has not contended that Shores was involved in the incident, and that the BCSO report prevents Solis-Marrufo from making such an allegation at trial.

Solis-Marrufo, in reply, incorporates by reference his Second Motion for Sanctions.   See Reply in Support of Plaintiff's Objections to Defendants' Ninth Supplemental Disclosures, filed July 10, 2012 (Doc. 170).

7.   **Bernalillo County's, Fuller's and Leeper's Brief Regarding Procedural Requirements for Rule 37 Sanctions Hearings.**

On July 25, 2012, Bernalillo County, Fuller, and Leeper filed a brief regarding the procedural requirements for rule 37 sanctions hearings.   See County Defendants' Memorandum

Regarding Procedural Requirements for Rule 37 Sanctions Hearings, filed July 25, 2012 (Doc. 173)("Procedure Brief").   Bernalillo County, Fuller, and Leeper assert that the Court "has the discretion to conduct an in camera review of any documents and/or testimony that is claimed to be privileged."   Procedure Brief at 5.   Bernalillo County, Fuller, and Leeper also assert that the Court need not provide a full adversarial proceeding to fulfill the rule 37's due-process requirements.   See Procedure Brief at 4-5 (citing F.D.I.C. v. Daily, 973 F.2d 1525, 1531 (10th Cir. 1992); Braley v. Campbell, 832 F.2d 1504, 1514-15 (10th Cir. 1987)).

   **8.    The July 26-27, 2012 Hearing.**

   The Court held an evidentiary and motion hearing on July 26 and July 27, 2012. Solis-Marrufo informed the Court that his motions are all regarding the same issue -- Bernalillo County's, Fuller's and Leeper's provision of two new witnesses to him on May 4, 2012.   See Transcript of Hearing (taken July 26, 2012) at 4:1-6 (Oliveros)("July 26 Motion Tr.").[4]   The Court inquired whether, given that the witnesses were disclosed in May and the Court -- after the reassignment from Judge Schneider to the Court -- had not set the case for trial, Solis-Marrufo believed the default judgment was no longer necessary and the case could be put on track for trial. See July 26 Motion Tr. at 4:7-17 (Court).   Solis-Marrufo responded "absolutely not, Judge." July 26 Motion Tr. at 5:3-4 (Oliveros).   Solis-Marrufo took that position, because the undisclosed witnesses are potential defendants in the case, and he asserted that he has sought the identity of the deputy who tackled him at the South Valley Command center throughout discovery.   See July 26 Motion Tr.   at 5:4-20 (Oliveros).

---

   [4] The Court's citations to the July 26 Motion Tr. refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and/or line numbers.

- 32 -

The Court noted that Fuller, who witnessed a deputy tackle Solis-Marrufo, did not know the deputy's identity, because he was new to BCSO at the time, and the Court questioned whether Solis-Marrufo was asserting that Bernalillo County, Fuller, and Leeper should have identified Plum earlier, notwithstanding Fuller's statement that he did not know who the deputy was.   See July 26 Motion Tr. at 6:10-17 (Court, Oliveros).   Solis-Marrufo asserted that Bernalillo County, Fuller, and Leeper determined Plum's identity through a simple inquiry, and, thus, they could have identified him earlier, notwithstanding Fuller's length of time with BCSO.   See July 26 Motion Tr. at 7:8-19 (Oliveros).   Solis-Marrufo asserted that Fuller could have determined Plum's identity with "any diligent inquiry into the matter."   July 26 Motion Tr. at 8:1-3 (Oliveros). Solis-Marrufo stated that, in addition to Fuller, Tafoya may have been able to know Plum's identity earlier.   See July 26 Motion Tr. at 9:4-11 (Oliveros).   Solis-Marrufo stated that he hopes to establish, through testimony at the hearing, that Tafoya could have identified Plum earlier.   See July 26 Motion Tr. at 9:16-22 (Oliveros).   The Court inquired whether Solis-Marrufo was seeking only to refresh Tafoya's recollection.   See July 26 Motion Tr. at 10:3-8 (Court).   Solis-Marrufo stated that his questions for Tafoya go beyond refreshing his recollection because Solis-Marrufo seeks to establish that Tafoya's recollection could have been refreshed sooner.   See July 26 Motion Tr. at 10:9-12 (Oliveros).   The Court noted that Solis-Marrufo has had access to the same documents as Bernalillo County, Fuller, and Leeper, and Bernalillo County, Fuller, and Leeper contend that Solis-Marrufo could have discovered Plum's identity earlier as well.   See July 26 Motion Tr. at 10:13-16 (Court).   Solis-Marrufo contended that Bernalillo County, Fuller, and Leeper provided him with false information, and, therefore, he could not have discovered Plum's identity earlier.   See July 26 Motion Tr. at 10:17-18, id. at 10:21-25 (Oliveros).   The Court

countered that Solis-Marrufo was not misinformed, but, rather, Bernalillo County, Fuller, and Leeper stated that they did not know who the deputy was until 4:00 p.m. on May 2, 2012.  See July 26 Motion Tr. at 11:1-5 (Court).  Solis-Marrufo asserted that a witness will testify that Bernalillo County, Fuller, and Leeper knew Plum's identity before May 2, 2012.  See July 26 Motion Tr. at 11:12-17 (Oliveros).   The Court stated that it did not understand for what Solis-Marrufo was faulting Bernalillo County, Fuller, and Leeper, given that Fuller, Tafoya, and Hampsten testified that they did not know who tackled Plum, even if Bernalillo County, Fuller, and Leeper had since learned Plum's identity.   See July 26 Motion Tr. at 12:5-10 (Court). Solis-Marrufo contended that Bernalillo County, Fuller, and Leeper did not inquire enough before they represented that they did not know Plum's identity.   See July 26 Motion Tr. at 12:11-23 (Oliveros).   The Court stated that it is hesitant to put a burden on Bernalillo County, Fuller, and Leeper to have done more discovery absent any evidence that they willfully did not disclose Plum's identity earlier.   See July 26 Motion Tr. at 13:1-18 (Court).   Solis-Marrufo asserted that, under the cases he had read, Bernalillo County, Fuller, and Leeper are required to show that they conducted thorough discovery.   See July 26 Motion Tr. at 13:19-14:2 (Oliveros).   Solis-Marrufo asserted that, after Bernalillo County, Fuller, and Leeper gave sworn answers in their depositions stating that they did now know who the deputy was, he does not believe he could have done anything else to discover Plum's identity.   See July 26 Motion Tr. at 14:6-19 (Oliveros). Solis-Marrufo informed the Court that the statute of limitations for his state-law claims termed on February 11, 2012, and the statute of limitations for his civil-rights claims termed on March 12, 2012.  See July 26 Motion Tr. at 14:21-24 (Oliveros).

        The Court inquired how Solis-Marrufo intended to establish that Bernalillo County, Fuller,

and Leeper should have made more inquiries earlier, and Solis-Marrufo stated that he intends to question Bernalillo County's, Fuller's and Leeper's liaison between Bernalillo County and their counsel regarding what he did to fully investigate and answer Solis-Marrufo's discovery inquiries. See July 26 Motion Tr. at 15:11-16:4 (Court, Oliveros).   Solis-Marrufo stated that he would need the liaison's testimony on the record.   See July 26 Motion Tr. at 16:20-17:2 (Oliveros, Court). The Court noted that, when it handles discovery disputes, it usually takes an attorney's representation, rather than taking depositions and sworn testimonies regarding the dispute.   See July 26 Motion Tr. at 17:3-10 (Court).   Solis-Marrufo asserted that because Fuller, Tafoya, and Hampsten had already given sworn testimony regarding their knowledge of Plum's identity, it "makes sense to me that it would also be sworn testimony," but also stated that he believes a different procedure would be sufficient as long as the record is complete.   July 26 Motion Tr. at 17:11-19 (Oliveros).   The Court inquired whether Solis-Marrufo would consent to an in camera review of some documents, and he said he does not object to the Court reviewing certain of Bernalillo County's, Fuller's and Leeper's documents in camera.   See July 26 Motion Tr. at 19:1-11 (Court, Oliveros).

Solis-Marrufo stated that, in addition to questioning the liaison for Bernalillo County's Fuller's and Leeper's counsels' with Bernalillo County, he would like to question Tafoya regarding his attempt to discovery Plum's identity.   See July 26 Motion Tr. at 19:12-25 (Court, Oliveros).   Solis-Marrufo stated that he needs to question the liaison and Tafoya before he can fully argue his motion, and he stated that the record is incomplete without those testimonies.   See July 26 Motion Tr. at 20:2-17 (Oliveros, Court).   The Court inquired whether Solis-Marrufo agrees that "there's an inadequate record for the Court to grant the relief that you want at this

time," and Solis-Marrufo responded "yes."   July 26 Motion Tr. at 20:18-23 (Court, Oliveros).

      The Court inquired how Solis-Marrufo would respond to a concession by Bernalillo County, Fuller, and Leeper that the late disclosure of Plum and Quintana prejudiced him, and an offer by them to pay Solis-Marrufo's attorneys' fees in briefing the motions before the Court.   See July 26 Motion Tr. at 21:9-22 (Court).   Solis-Marrufo responded that "the problem here is that you really can't . . . undo the prejudice here," because the statute of limitations had tolled.   July 26 Motion Tr. at 22:4-8 (Oliveros).   The Court inquired how prejudiced Solis-Marrufo's case could be if only a few minor officers are not included, but he can still litigate against Fuller, and Leeper. See July 26 Motion Tr. at 22:9-25 (Court).   Solis-Marrufo asserted that he could not identify which deputies exactly inflicted which injuries on him, and that he does not want to "minimize the conduct of the other officers th[at] were involved."   July 26 Motion Tr. at 23:6-20 (Oliveros). The Court inquired how Solis-Marrufo would be prejudiced if Bernalillo County, Fuller, and Leeper do not raise a statute-of-limitations defense, thereby allowing him to add Plum as a defendant.   See July 26 Motion Tr. at 24:7-13 (Court).   Solis-Marrufo stated he would still be prejudiced because he would have to re-depose Fuller.   See July 26 Motion Tr. at 24:14-17 (Oliveros).   The Court noted that some of that prejudice could be cured by reopening discovery, as Bernalillo County, Fuller, and Leeper have requested.   See July 26 Motion Tr. at 24:18-25:8 (Court).   Solis-Marrufo stated that he may be prejudiced because he dismissed Tafoya as a Defendant, but the Court inquired whether the statute had tolled on Tafoya given that he previously was a Defendant in the case, to which Solis-Marrufo responded that he does not know. See July 26 Motion Tr. at 25:9-24 (Oliveros, Court).   The Court asked Solis-Marrufo whether, "[k]nowing what you know right this minute," he would bring Tafoya back into the case as a

defendant, and Solis-Marrufo stated that he "might have" but that it is "hard to know."   July 26

Motion Tr. at 25:24-26:5 (Court, Oliveros).   Solis-Marrufo stated that he would have sued Plum

and Quintana, and not dismissed Tafoya, had he known what he does now.   See July 26 Motion

Tr. at 26:8-11 (Oliveros).   Solis-Marrufo stated that he would have to re-depose Tafoya and

conduct more discovery to determine whether to add Tafoya as a Defendant again.   See July 26

Motion Tr. at 26:11-19 (Oliveros).

Bernalillo County, Fuller, and Leeper agreed that Solis-Marrufo had been prejudiced "[t]o

a limited extent" by the late disclosure.   See July 26 Motion Tr. at 28:3-6 (Court, Robles).

Bernalillo County, Fuller, and Leeper agreed that the "Court probably needs to fashion some

remedy here that eliminates as much prejudice that" Solis-Marrufo has suffered.   July 26 Motion

Tr. at 28:7-10 (Court, Robles).   Bernalillo County, Fuller, and Leeper stated that many of

Solis-Marrufo's inquiries regarding the extent to which they investigated Plum's identity may be

answered, but Bernalillo County, Fuller, and Leeper stated that answering those inquiries may

require examining attorney-client privileged information.   See July 26 Motion Tr. at 28:18-21

(Robles).   Bernalillo County, Fuller, and Leeper suggested that the Court listen to Mr. Robles'

answers in camera regarding the discovery of Plum's and Quintana's involvement in the incident.

See July 26 Motion Tr. at 28:21-29 (Robles).   The Court inquired why Bernalillo County, Fuller,

and Leeper needed to invoke the work-product-protection doctrine at this point, and inquired why

the information Solis-Marrufo seeks is "this critical to the preparation of the trial."   July 26

Motion Tr. at 26:3-11 (Court).   The Court stated that, with an in camera review, it does not always

know for what to look.   See July 26 Motion Tr. at 29:16-19 (Court).   The Court inquired whether

the parties could begin to present evidence, and Bernalillo County, Fuller, and Leeper could

invoke an attorney-client privilege or work-product-protection doctrine as the evidence implicates those doctrines.   See July 26 Motion Tr. at 30:9-14 (Court).   Bernalillo County, Fuller, and Leeper agreed that they could likely come up with a way to circumvent an in camera review for purposes of the hearing.   See July 26 Motion Tr. at 30:15-31:3 (Robles).

Regarding the statute-of-limitations concerns, Bernalillo County, Fuller, and Leeper stated that the statute of limitations on Solis-Marrufo's state-law claims expired on February 2, 2009, and they asserted that it "would be wholly unfair to allow the state tort claims to move forward simply because the plaintiff waited as long as [he] did to file [his] Complaint."   July 26 Motion Tr. at 32:23-33:6 (Robles).   Bernalillo County, Fuller, and Leeper stated, because Solis-Marrufo's federal claims did not run until later, "that could be subject to negotiation to allow this proceeding to move forward," and Bernalillo County, Fuller, and Leeper suggested that under rule 15's relation-back doctrine, Solis-Marrufo may be able to add another Defendant on his federal claims. July 26 Motion Tr. at 33:3-14 (Robles).

Bernalillo County, Fuller, and Leeper contended that they had no incentive to hide Plum's identity because his testimony helps their case.   See July 26 Motion Tr. at 33:21-34:3 (Robles). Bernalillo County, Fuller, and Leeper stated that it is strange that Solis-Marrufo is contending that disclosing Plum's identity prejudiced him because the case "somehow" changes, given that Plum's testimony is "very similar to what Deputy Fuller says and Deputy Plum is here and will be able to confirm that."   July 26 Motion Tr. at 34:6-17 (Robles).   Bernalillo County, Fuller, and Leeper stated that Fuller did not know Plum's identity until Mr. Robles informed him that Plum had tackled Solis-Marrufo at the South Valley Command Center.   See July 26 Motion Tr. at 35:17-36:5 (Robles).   The Court inquired whether Bernalillo County, Fuller, and Leeper object to

- 38 -

Solis-Marrufo asking them about when they first discovered Plum's identity, and Bernalillo County, Fuller, and Leeper said they do not object to those questions, as long as Solis-Marrufo does not attempt to re-take a deposition regarding matters about which he already discovered in previous depositions.   See July 26 Motion Tr. at 36:18-37:11 (Court, Robles).   Bernalillo County, Fuller, and Leeper stated that they want to reopen discovery so that Solis-Marrufo can take additional depositions, but that they do not intend to take additional depositions or send out further interrogatories.   See July 26 Motion Tr. at 37:17-19 (Robles).

The Court inquired why identifying Plum is beneficial to Bernalillo County's, Fuller's and Leeper's case.   See July 26 Motion Tr. at 38:3-5 (Court).   Bernalillo County, Fuller, and Leeper asserted that the incident at the South Valley Command Center, to everybody present except Solis-Marrufo, "was a nonincident," and Bernalillo County, Fuller, and Leeper did not use any "real force" in apprehending him when he attempted to escape.   July 26 Motion Tr. at 38:16-25 (Robles).   Bernalillo County, Fuller, and Leeper asserted that most deputies present did not have information about the incident, because it was not "all that significant."   July 26 Motion Tr. at 39:1-3 (Robles).   Bernalillo County, Fuller, and Leeper asserted that identifying Plum allows them to corroborate Fuller's testimony, which is not helpful to Solis-Marrufo's case.   See July 26 Motion Tr. at 39:3-14 (Robles).

Mr. Robles asserted that he made no effort to hide Plum and Quintana from Solis-Marrufo, and that, with a simple explanation, all the confusion with the late disclosure can be cleared.   See July 26 Motion Tr. at 39:21-40:17 (Robles, Court).

The Court suggested to Solis-Marrufo that he could hold his motions for sanctions in abeyance while he gathers discovery in support of the motions.   See July 26 Motion Tr. at

- 39 -

40:19-41:11 (Court).    Solis-Marrufo said he would oppose that course of action to the extent that

the Court reopens discovery in addition to allowing Solis-Marrufo to gather information in support

of his motions for sanctions.    See July 26 Motion Tr. at 41:12-21 (Oliveros, Court).    The Court

stated that the parties are "stuck with the reality that the trial can't be done in May and [] it will

have to be done in the future," and that Solis-Marrufo may be entitled to some fee-shifting.    July

26 Motion Tr. at 41:22-42:6 (Court).    The Court noted that Solis-Marrufo had represented that

there is insufficient evidence to grant his motions.    See July 26 Motion Tr. at 42:6-11 (Court).

Solis-Marrufo stated that he may have misspoken when he said the Court could not grant his

motions for sanctions without further evidence, but asserted that discovery is over and that the

Court should not reopen discovery.    See July 26 Motion Tr. at 42:12-18 (Oliveros).    The Court

stated that Solis-Marrufo is in a "bit of a vacuum," regarding the evidence he needs for his motions

for sanctions, and that, therefore, holding his motions in abeyance would likely be appropriate.

July 26 Motion Tr. at 42:25-41:1 (Court).    Solis-Marrufo asserted that, when Judge Schneider had

his case, the parties agreed to bring in witnesses and present in-court testimony regarding

Bernalillo County's, Fuller's and Leeper's late disclosure.    See July 26 Motion Tr. at 44:20-45:4

(Oliveros).    Solis-Marrufo stated that, had Judge Schneider not recused himself from the case,

"we would have had this hearing already and it would have been done in that fashion and I think

everybody was on board at that time."    July 26 Motion Tr. at 45:7-11 (Oliveros).    Regarding

Bernalillo County's, Fuller's and Leeper's assertion that some of the information which

Solis-Marrufo seeks is privileged, Solis-Marrufo stated that his inquiry whether Bernalillo County,

Fuller, and Leeper "used due diligence" would not implicate privileged information.    July 26

Motion Tr. at 46:16-25 (Oliveros).    Solis-Marrufo contended, nonetheless, that he needs to gather

- 40 -

evidence through testimony in Court or in depositions, and not through interrogatories, and that Bernalillo County, Fuller, and Leeper agreed to that plan of action.   See July 26 Motion Tr. at 47:1-4 (Oliveros).   Solis-Marrufo asserted that a jury should be able to see that Bernalillo County, Fuller, and Leeper have no credible reason for not disclosing Plum's identity earlier.   See July 26 Motion Tr. at 47:14-22 (Oliveros).

The Court stated that Bernalillo County, Fuller, and Leeper do not seem to have had any reason to hide Plum from Solis-Marrufo, and, thus, their late disclosure was likely negligent and not willful.   See July 26 Motion Tr. at 47:23-48:6 (Court).   Solis-Marrufo asserted that he does not know what Bernalillo County's, Fuller's and Leeper's motive was for not disclosing Plum earlier, but that "an escaped prisoner is a big deal," and Bernalillo County's, Fuller's and Leeper's characterization of the incident as a nonincident is inaccurate.   See July 26 Motion Tr. at 48:7-25 (Oliveros).   Solis-Marrufo asserted that he objects to reopening discovery beyond discovering information that is necessary for the Court to use when determining which sanctions to impose on Bernalillo County, Fuller, and Leeper.   See July 26 Motion Tr. at 49:19-25 (Oliveros). Solis-Marrufo asserted that any further discovery would be inappropriate, because Bernalillo County, Fuller, and Leeper have no good cause for reopening discovery.   See July 26 Motion Tr. at 50:1-6 (Oliveros).

Upon the Court's inquiry, Bernalillo County, Fuller, and Leeper informed the Court that their counsel works with a paralegal at the BCSO Office, and that they sent a runner to the BCSO Office to find certain records, that Hampsten helped them find additional documents, including the rosters that indicate all BCSO deputies on duty the night of the incident, all of which they turned over to Solis-Marrufo.   See July 26 Motion Tr. at 50:7-23 (Court, Robles).   Bernalillo County,

- 41 -

Fuller, and Leeper stated they are not certain whether Solis-Marrufo can depose the paralegal, but he could depose their counsel's runner.   See July 26 Motion Tr. at 50:24-51:3 (Robles). Bernalillo County, Fuller, and Leeper informed the Court that they brought with them all the witnesses that Solis-Marrufo requested, and that those witnesses may testify at the hearing regarding what they knew at what time about Plum's identity.   See July 26 Motion Tr. at 51:4-11 (Robles).   Bernalillo County, Fuller, and Leeper asserted that Solis-Marrufo will not find any misconduct.   See July 26 Motion Tr. at 51:11-13 (Robles).   Bernalillo County, Fuller, and Leeper affirmed that they had agreed, with Solis-Marrufo, to conduct an evidentiary hearing before Judge Schneider before he recused himself.   See July 26 Motion Tr. at 52:12-22 (Robles).

The Court suggested that Solis-Marrufo question the witnesses present at the hearing, without prejudice to him asking further questions if he decided to depose anybody on the merits of the case, and allowing Bernalillo County, Fuller, and Leeper to raise objections based on privilege as they believe it is necessary.   See July 26 Motion Tr. at 53:5-16 (Court).   Solis-Marrufo stated he would like to proceed as the Court suggested.   See July 26 Motion Tr. at 53:20-54:2 (Oliveros). Mr. Robles informed the Court he would like to make an in camera proffer regarding the late disclosure.   See July 26 Motion Tr. at 54:3-9 (Court, Robles).   Mr. Robles stated he wanted everybody except his fellow counsel and the law students that are part of his firm to be excused from the courtroom during his proffer.   See July 26 Motion Tr. at 55:17-24 (Court, Robles).   The Court excused those whom Bernalillo County, Fuller, and Leeper requested and received Mr. Robles' proffer.   See July 26 Motion Tr. at 56:5-18 (Court, Oliveros).

After Mr. Roble's proffer and the after parties presented witnesses' testimony regarding the parties discovery in this case, Solis-Marrufo stated that he would like to depose Quintana and

has questions for Mr. Robles regarding his proffer.   See July 26 Witness Tr. at 164:14-18 (Oliveros).   Mr. Robles offered to testify regarding his discovery process at the hearing.   See July 26 Witness Tr. at 169:20-22 (Court)("Well, we'll do it British Style.   The Prime Minister stands for questions here.   Do you want to ask some questions, Ms. Oliveros?"); id. at 170:13-171:4 (Court, Robles, Oliveros)(Mr. Robles offers to take the stand and testifies in open court).   After Mr. Robles testified, Solis-Marrufo stated that he would prefer the Court not rule on his motions for sanctions until after he deposes counsel for Bernalillo County, Fuller, and Leeper, Terri S. Beach, and Quintana.   See July 27 Tr. at 10:23-11:7 (Oliveros, Court).   Bernalillo County, Fuller, and Leeper objected to the Court delaying its ruling on the motions for sanctions.   See July 27 Tr. at 11:22-12 (Beach).   The Court stated that it would allow "the movant sort of be the master a little bit of the motion," and informed Solis-Marrufo to notify the Court when he was ready to proceed to a ruling on the motion for sanctions.   July 27 Tr. at 13:1-10 (Court).

Turning to the Motion to Reopen Discovery, Solis-Marrufo informed the Court that he objects to reopening discovery "other than for the motion that we have . . . that's pending on the motion for sanctions."   July 27 Tr. at 13:21-24 (Oliveros).   The Court stated that it has not seen any evidence that Bernalillo County, Fuller, and Leeper willfully or maliciously delayed in disclosing Plum and Quintana to Solis-Marrufo, and, therefore, the Court is not inclined to grant Solis-Marrufo a default judgment, and is inclined to reopen discovery, especially because Bernalillo County, Fuller, and Leeper are not requesting additional discovery and are only seeking to reopen discovery for Solis-Marrufo's benefit.   See July 27 Tr. at 14:6-19 (Court).   Bernalillo County, Fuller, and Leeper affirmed that, "unless something very odd happens, [we] have no intentions of conducting discovery."   July 27 Tr. at 22:11-13 (Robles).

- 43 -

The Court then turned to Solis-Marrufo's Obj. to Eighth Disclosures.  See July 27 Tr. at 27:6-11 (Court).  Solis-Marrufo asserted that the Defendant's provision of forty-three new potential witnesses "at such a late date . . . frustrates the discovery process."  July 27 Tr. at 27:14-21 (Oliveros).  Solis-Marrufo suggested that perhaps Bernalillo County, Fuller, and Leeper could narrow the list so that he does not need to conduct depositions for each potential witness. See July 27 Tr. at 28:17-24 (Oliveros).  Bernalillo County, Fuller, and Leeper explained that individuals listed in the Eighth Disclosure are the same deputies listed on the watch rosters and dispatchers listed on the CAD reports that Bernalillo County, Fuller, and Leeper provided to Solis-Marrufo on October 4, 2011, and Bernalillo County, Fuller, and Leeper stated that, for most of the individuals listed, the information Bernalillo County, Fuller, and Leeper provided to Solis-Marrufo indicates that the individuals were not present at the incident.  See July 27 Tr. at 29:3-16 (Robles); id. at 30:1-9 (Robles).  Bernalillo County, Fuller, and Leeper stated that they do not intend to call any individuals listed on the Eighth Disclosures as witnesses, except Plum and Quintana.  See July 27 Tr. at 30:13-25 (Court, Robles).  Bernalillo County, Fuller, and Leeper stated that, aside from Plum and Quintana, to their knowledge, the other deputies listed in the Eighth Disclosures "simply know nothing about the incident."  July 27 Tr. at 31:16-24 (Robles).

The Court stated that it is inclined to overrule the Obj. to Eighth Disclosures, "given that it seems to me it's just tying up bells and whistles right before a trial, but it's not really any new information, because they're not going to . . . use these people."  July 27 Tr. at 32:2-14 (Court). Solis-Marrufo contended, nonetheless, that the Court should impose some sanction because of the Eighth Disclosures, because Bernalillo County, Fuller, and Leeper disclosed so many individuals so late in the litigation, after several individuals represented to Solis-Marrufo that no other

deputies had personal knowledge of the incident.   See July 27 Tr. at 32:15-33:24 (Oliveros). Solis-Marrufo asserted that the Court should strike some of the witnesses.   See July 27 Tr. at 34:6-19 (Oliveros).   The Court responded that it does not see how the Eighth Disclosures prejudices Solis-Marrufo, given that Bernalillo County, Fuller, and Leeper are not intending to call forty-one of the individuals as witnesses.   See July 27 Tr. at 35:20-36:7 (Court).   The Court stated that it will overrule the Obj. to Eighth Disclosures.   See July 27 Tr. at 35:8-10 (Court).

Turning to the Second Motion for Sanctions, the Court expressed that it does not see how the Second Motion for Sanctions is different from the First Motion for Sanctions.   See July 27 Tr. at 35:11-17 (Court).   Solis-Marrufo stated that the Second Motion for Sanctions is meant to include allegations regarding the Defendant's disclosures after the First Motion for Sanctions. See July 27 Tr. at 35:18-25 (Oliveros).   The Court stated that, to the extent the Second Motion for Sanctions is based upon the Eighth Disclosures, the Court is inclined to deny that portion of the Second Motion for Sanctions, and the Court stated that it will hold the rest of the motion in abeyance, as with the First Motion for Sanctions.   See July 27 Tr. at 36:1-6 (Court). Solis-Marrufo stated that holding the Second Motion for Sanctions in abeyance is acceptable to him.   See July 27 Tr. at 36:6-7 (Court, Oliveros).

Turning to Solis-Marrufo's Obj. to Ninth Disclosures, Bernalillo County, Fuller, and Leeper represented that they provided the BCSO report to Solis-Marrufo so that he would know that the deputies on that call were not present at the incident, and Bernalillo County, Fuller, and Leeper represented that they did not intend to call any witnesses at trial based upon the BCSO report in the Ninth Disclosures.   See July 27 Tr. at See July 27 Tr. at 37:20-25 (Court, Oliveros); id. at 38:10-25 (Robles, Court).   The Court stated that it will overrule the Obj. to Ninth

Disclosures for the same reasons as stated for overruling the Obj. to Eighth Disclosures, because the Ninth Disclosures does not appear to prejudice Solis-Marrufo in any way.   See July 27 Tr. at 39:1-10 (Court, Oliveros).   The Court noted that it will leave open any objections related to Bernalillo County's, Fuller's and Leeper's late disclosure of Plum and Quintana until the Court rules on the motions for sanctions.   See July 27 Tr. at 39:4-10 (Court).

9. **Solis-Marrufo Deposes Quintana.**

Solis-Marrufo took Quintana's deposition on August 8, 2012.   See Telephonic Deposition of Veronica Quintana, taken August 8, 2012, filed September 7, 2012 (Doc. 177-1).   Quintana remembers watching an incident where an individual attempted to escape in February of 2009, and stated that she does not witness "that stuff much or it doesn't happen as often," but she does not remember which deputies specifically were involved in the incident.   Quintana Depo. at 28:6-17 (Harris, Quintana).   Quintana remembers "seeing a guy run across the parking lot, and he . . . was in handcuffs, and he was caught right away."   Quintana Depo. at 28:21-25.   Quintana affirms that "it just took one phone call to find out whether" she had information regarding the incident. Quintana Depo. at 28:18-21 (Harris, Quintana).

10. **Solis-Marrufo Adds Plum as a Defendant.**

On October 5, 2012, Solis-Marrufo filed the Complaint, adding Plum as a Defendant.   See Complaint at 1.   Bernalillo County, Fuller, and Leeper, and Plum did not raise a statute of limitations defense to Solis-Marrufo's claims against Plum.

11. **Solis-Marrufo's Supplement to his First Motion for Sanctions.**

On September 7, 2012, Solis-Marrufo filed his Plaintiff's Supplement to his Motion for Entry of Default Judgment and Other Sanctions for Failure to Disclose Evidence, Withholding

Evidenced and Other Discovery Abuses [Doc. 143].   See Plaintiff's Supplement to his Motion for Entry of Default Judgment and Other Sanctions for Failure to Disclose Evidence, Withholding Evidenced and Other Discovery Abuses [Doc. 143], filed September 7, 2012 (Doc. 177)("Supplement").   Solis-Marrufo incorporates the Quintana deposition by reference into his First Motion for Sanctions, which is incorporated by reference into his Second Motion for Sanctions.   See Supplement at 1.

Bernalillo County, Fuller, and Leeper respond that Solis-Marrufo attached the Quintana Deposition without any legal argument or explanation, and they assert that the Quintana Deposition "only serves to further establish the lack of merit to Plaintiff's motion for sanctions." County Defendants' Response to Plaintiff's Supplement to his Motion for Entry of Default Judgment and Other Sanctions for Failure to Disclose Evidence, Withholding Evidence and Other Discovery Abuses at 1-2, filed September 27, 2012 (Doc. 179)("Response to Supplement"). Bernalillo County, Fuller, and Leeper assert that the Quintana Deposition demonstrates that they were "diligent and forthright throughout the discovery process," and that Solis-Marrufo suffered no prejudice when Bernalillo County, Fuller, and Leeper disclosed Plum and Quintana as soon as Bernalillo County, Fuller, and Leeper became aware of their role in the incident.   See Response to Supplement at 2.   Bernalillo County, Fuller, and Leeper assert that Quintana states that Solis-Marrufo fell of his own accord when fleeing the South Valley Command Center, and that he was not tackled.   See Response to Supplement at 2 (citing Quintana Depo. at 10:18-11:3, 13:2-8, 12:1-15).   Bernalillo County, Fuller, and Leeper assert that Quintana's version of the events "fully corroborates County Defendants' version of the incident."   Response to Supplement at 2. Bernalillo County, Fuller, and Leeper assert that it "defies logic to suggest that County Defendants

would have willfully held this witness back, or that County Defendants would not have wanted to uncover this beneficial witness earlier . . . ."   Response to Supplement at 3.   Bernalillo County, Fuller, and Leeper contend that the Court should deny Solis-Marrufo's motions for sanctions in their entirety, because Solis-Marrufo has not suffered any prejudice.   See Response to Supplement at 4.   Bernalillo County, Fuller, and Leeper note that they did not raise a statute-of-limitations defense to including Plum as a defendant after they disclosed that he participated in the incident, which, Bernalillo County, Fuller, and Leeper argue, "lessens any prejudice that Plaintiff could have claimed in the alternative."   Response to Supplement at 4. Bernalillo County, Fuller, and Leeper assert that Solis-Marrufo has not demonstrated that they acted with any malfeasance or willful desire to hide information, and, thus, sanctions are unwarranted.   See Response to Supplement at 4-5.

Solis-Marrufo asserts that, contrary to Bernalillo County's, Fuller's and Leeper's Response to Supplement, the Quintana Deposition bolsters his requests for sanctions.   See Reply in Support of Plaintiff's Supplement to his Motion for Entry of Default Judgment at 1, filed October 18, 2012 (Doc. 186)("Supplement Reply").   Solis-Marrufo asserts that the testimony at the July 26 and 27, 2012, hearing demonstrates that, "if the Defendants had conducted a diligent investigation, the identity of the witnesses could have easily been identified within the discovery deadlines." Supplement Reply at 2.   Solis-Marrufo points to Bernalillo County's, Fuller's and Leeper's failure to contact Quintana before May, 2012, in support that this theory.   See Supplement Reply at 2.   Solis-Marrufo asserts that Bernalillo County, Fuller, and Leeper knew that sixteen deputies had potential knowledge of the incident, and that Plum testified that "all it took was one phone call from defense counsel's law clerk to jog his memory and remember the incident," yet Hampsten,

who was assisting Bernalillo County, Fuller, and Leeper with their discovery responses, did not attempt to determine if any further deputies had information about the incident until May, 2012. Supplement Reply at 2-3.   Solis-Marrufo asserts that, "had Bernalillo County Defendants or their counsel, made a simple phone call to the 16 officers which were potentially involved in the incident, they would have found out that both Deputy Plum and Ms. Quintana had information related to the incident," which Bernalillo County, Fuller, and Leeper could have used in their discovery responses.   Supplement Reply at 3.   Solis-Marrufo asserts that Bernalillo County, Fuller, and Leeper have not provided any explanation for their failure to make the simple effort of calling the deputies listed on the watch rosters during discovery.   See Supplement Reply at 3. Solis-Marrufo asserts that, contrary to Bernalillo County's, Fuller's and Leeper's characterization of the process necessary to find Plum and Quintana as "arduous," there were a limited number of deputies "listed as possible participants during those shifts, and there is no reason they could not have been called or questioned during discovery . . . ."   Supplement Reply at 4.   Solis-Marrufo asserts that Bernalillo County, Fuller, and Leeper intentionally failed to make "any attempts to contact the officers on duty the night of the incident," and that the Defendant's willful decision and failure to diligently investigate is "sufficient to show a willful noncompliance with the Defendants discovery obligations."   Supplement Reply at 4.

> **12.    The December 13, 2012 Hearing.**

The Court held a hearing on December 13, 2012.   Solis-Marrufo asserted that the problem with Bernalillo County's, Fuller's and Leeper's discovery responses is that they told him that nobody at the South Valley Command Center, besides those involved in the call which Fuller answered at a residence, when he found Solis-Marrufo, had knowledge of the incident.   See Dec.

13 Tr. at 5:9-11 (Gorence).   Solis-Marrufo asserted that Bernalillo County, Fuller, and Leeper did not represent that they did not know whether additional individuals had information regarding the incident, but they responded that "no one had knowledge."   Dec. 13 Tr. at 5:9-12 (Gorence). Solis-Marrufo contended that Bernalillo County, Fuller, and Leeper had a duty to contact each deputy present at the South Valley Command Center the night of the incident, because Bernalillo County, Fuller, and Leeper knew that an unknown deputy was involved in the incident.   See Dec. 13 Tr. at 5:13-21 (Gorence).   Solis-Marrufo contended that the Watch Roster I lists Plum and Quintana as present the night of the incident, but Bernalillo County, Fuller, and Leeper did not contact either individual until after discovery closed.   See Dec. 13 Tr. at 6:1-7 (Gorence). Solis-Marrufo contended that the Federal Rules of Civil Procedure require, "at a minimum," that Bernalillo County, Fuller, and Leeper ask the deputies listed on the watch rosters whether they know anything about the incident.   Dec. 13 Tr. at 6:8-12 (Gorence).   Solis-Marrufo asserted that "[t]his isn't a question of a paralegal days before trial and all of a sudden" discovering the names, but that Bernalillo County, Fuller, and Leeper had a duty to "make a simple inquiry" of the deputies on duty the night of the incident.   Dec. 13 Tr. at 6:23-7:1 (Gorence).   Solis-Marrufo pointed out that Bernalillo County, Fuller, and Leeper had the watch rosters from the beginning of the litigation.   See Dec. 13 Tr. at 7:1-6 (Gorence).

Solis-Marrufo contended that Bernalillo County's, Fuller's and Leeper's actions go "beyond inadvertence" and that the real question is why Bernalillo County, Fuller, and Leeper did not, knowing that in the "universal of [people] at that particular substation . . . you didn't make a single phone call at any time" to inquire whether the deputies had knowledge of the incident. Dec. 13 Tr. at 7:7-15 (Gorence).   Solis-Marrufo contended that, in Norman v. Young, 422 F.2d

470 (10th Cir. 1970), the United States Court of Appeals for the Tenth Circuit found that "it's one thing not to produce documents but . . . to say or make any effort to produce a statement saying the documents were unavailable constitutes willfulness."   Dec. 13 Tr. at 8:2-12 (Gorence). Solis-Marrufo asserted that he wants the Court to focus on Bernalillo County's, Fuller's and Leeper's lack of any effort, and that the effort necessary to discovery Plum and Quintana did not require going through "enormous amounts of computerized data to figure out who's on first," but that Bernalillo County, Fuller, and Leeper failed to make a "simple phone call or an inquiry to less than . . . 33 people."   Dec. 13 Tr. at 8:12-19 (Gorence).   Solis-Marrufo contended that, under M.E.N. Co. v. Control Fluidics, Inc., 834 F.2d 869 (10th Cir. 1987), the Tenth Circuit found that a "bad, wrongful intent" was not necessary to sanction a party for discovery abuses.   Dec. 13 Tr. at 8:24-9:4 (Gorence).   Solis-Marrufo stated that he understands that Mr. Robles is very busy, and that he is not asserting that Mr. Robles actually knew Plum and Quintana had information, but that Bernalillo County, Fuller, and Leeper failed to make an effort to contact thirty-three individuals, knowing that one of them may have been the unidentified deputy that assisted in the incident.   See Dec. 13 Tr. at 9:2-14 (Gorence).   Solis-Marrufo contended, on the other hand, that Bernalillo County, Fuller, and Leeper intentionally failed to contact the deputies, and that, under M.E.N. Co. v. Control Fluidics, Inc., a party's intentional failure to identify witnesses can constitute willful failure.   See Dec. 13 Tr. at 9:15-24 (Gorence).

Solis-Marrufo asserted that Sender v. Mann exemplifies the prejudice he experienced from Bernalillo County's, Fuller's and Leeper's late disclosure.   See Dec. 13 Tr. at 9:25-10:3 (Gorence).   Solis-Marrufo asserted that the late disclosure prejudices him because he had to amend his complaint to add a new defendant, and that his right to a jury trial has been

- 51 -

"dramatically trampled upon . . . all because 33 phone calls weren't made," because the late disclosure required the Court to change his trial setting.  Dec. 13 Tr. at 10:2-15 (Gorence). Solis-Marrufo asserted that Bernalillo County's, Fuller's and Leeper's waiving a statute-of-limitations defense to adding Plum as a defendant does not make him whole.  See Dec. 13 Tr. at 11:4-8 (Gorence).

Solis-Marrufo contended that, although his requested sanctions are extreme, Bernalillo County's, Fuller's and Leeper's conduct was extreme.  See Dec. 13 Tr. at 11:20-22 (Gorence). Solis-Marrufo asserted that the situation would be different had Bernalillo County, Fuller, and Leeper not had the watch rosters, but Bernalillo County, Fuller, and Leeper knew who each individual was working the night of the incident and Bernalillo County, Fuller, and Leeper failed "to do the one thing that would have identified people."  Dec. 13 Tr. at 11:23-12:8 (Gorence). Solis-Marrufo asserted that, under Sender v. Mann, a delay in trial and mounting attorneys' fees can prejudice a party.  See Dec. 13 Tr. at 12:11-13 (Gorence).  Solis-Marrufo asserted that he was "ready for trial and . . . subpoena[d] everybody . . . [and then] ha[d] to abort the whole thing for them to make 33 phone calls, [and] wait ten months."  Dec. 13 Tr. at 12:14-17 (Gorence). Solis-Marrufo asserted that the Court may award his counsel fees for briefing the issue, "at a minimum," which would make his firm whole, but would not help him get to trial any sooner. See Dec. 13 Tr. at 13:10-22 (Gorence).

Bernalillo County, Fuller, and Leeper countered that they did not willfully choose to not discover Plum and Quintana earlier, and asserted that Plum and Quintana are helpful to their case; thus, they had no reason to withhold their identities.  See Dec. 13 Tr. at 14:5-18 (Robles). Bernalillo County, Fuller, and Leeper asserted that their counsel "went to great lengths because it

was in our best interest to find this individual," but Mr. Robles did not succeed, despite having spoken with deputies on both shifts the night of the incident.   Dec. 13 Tr. at 15:8-20 (Robles). Bernalillo County, Fuller, and Leeper asserted that Fuller did not know whether the deputy who assisted with apprehending Solis-Marrufo was listed on the rosters, and, thus, Mr. Robles had more than thirty-three individuals to contact to try to find the mystery deputy.   See Dec. 13 Tr. at 15:21-4 (Robles).   Mr. Robles stated that he contacted every deputy listed on the watch rosters, except for Plum and Quintana, but no deputy stated they had information about the incident.   See Dec. 13 Tr. at 16:6-21 (Robles).   Bernalillo County, Fuller, and Leeper asserted that Solis-Marrufo has experienced no prejudice, because they waived a statute-of-limitations defense to adding Plum as a defendant.   See Dec. 13 Tr. at 17:5-15 (Robles).   Mr. Robles stated that he is "sorry that it happened the way it did, and I truly regret how that occurred."   Dec. 13 Tr. at 17:16-25 (Robles).   Bernalillo County, Fuller, and Leeper asserted, nonetheless, that they were not "hiding some smoking gun about a deputy who was going to tell all and support [Solis-Marrufo's] claim that somehow he was sexually tortured," because Plum remembers "a very minor incident, an event that seemed rather humorous that ended without much fanfare." Dec. 13 Tr. at 18:1-10 (Robles).   Bernalillo County, Fuller, and Leeper asserted that they have given Solis-Marrufo the opportunity he needed to take further depositions and conduct discovery to amend their late disclosure of Plum and Quintana.   See Dec. 13 Tr. at 18:17-19:3 (Robles). Bernalillo County, Fuller, and Leeper asserted that, because they had no motive to not identify Plum and Quintana, their late disclosure "does not warrant the imposition of great monetary sanctions."   Dec. 13 Tr. at 19:9-21 (Robles).   Bernalillo County, Fuller, and Leeper stated, nonetheless, that they understand "the need to pay for the depositions of the two [witnesses]," but

that, beyond that expense, no further sanctions are necessary.   Dec. 13 Tr. at 19:22-20:5 (Robles).

Bernalillo County, Fuller, and Leeper stated that they will call Plum as a witness at trial, but they do not plan to call Quintana.   See Dec. 13 Tr. at 20:13-18 (Robles).   The Court noted that, under rule 37(c)(1), when a party fails to supply information regarding a witness when requested, the Court cannot allow that witness to testify at a hearing or trial "'unless the failure was substantially justified or is harmless.'"   Dec. 13 Tr. at 20:19-25 (Court)(quoting Fed. R. Civ. P. 37(c)(1).   Bernalillo County, Fuller, and Leeper stated that their failure to disclose Plum is "substantially justified," because Bernalillo County, Fuller, and Leeper, and their counsel made "substantial efforts . . . to identify this individual and it's . . . within hours of that individual being identified [that] was he disclosed."   Dec. 13 Tr. at 21:6-11 (Robles).   Bernalillo County, Fuller, and Leeper asserted that allowing Plum to testify would not substantially prejudice Solis-Marrufo, as Plum's version of the incident is not consistent with Solis-Marrufo's, and Plum "simply . . . did not see what Mr. Solis-Marrufo saw, . . . in that way there is not this great prejudice."   Dec. 13 Tr. at 21:18-24 (Robles).   Bernalillo County, Fuller, and Leeper contended that Plum's testimony will not change Solis-Marrufo's theory of the case "other than in now there is []an[] individual who has been identified who will[,] essentially, testify in a manner that's consistent with Deputy Fuller."   Dec. 13 Tr. at 22:1-5 (Robles).

Bernalillo County, Fuller, and Leeper offered to pay for the cost of Solis-Marrufo deposing Plum and Quintana.   See Dec. 13 Tr. at 22:21-23 (Robles, Court).   The Court inquired whether Bernalillo County, Fuller, and Leeper believed they should pay for the costs of briefing the issue.   See Dec. 13 Tr. at 22:24-23:13 (Court).   Bernalillo County, Fuller, and Leeper responded that, by the time the issue was before Judge Schneider, it was clear to Solis-Marrufo that "this was not an

omission that was intentional . . . ."   Dec. 13 Tr. at 23:16-24 (Robles).   Bernalillo County, Fuller,

and Leeper stated that they made it possible for Solis-Marrufo to depose Quintana and Plum, and

to postpone the trial date before the Court's hearing on July 26-27, 2012.   See Dec. 13 Tr. at

26:2-16 (Court, Robles).

Solis-Marrufo contended that Bernalillo County, Fuller, and Leeper "made no effort

whatsoever in response to discovery request to [] even talk to people working" the night of the

incident.   Dec. 13 Tr. at 26:22-28:4 (Gorence).   Solis-Marrufo noted that both the newly

identified witnesses were listed on the watch rosters; therefore, even if additional deputies were

present at the South Valley Command Center, Bernalillo County, Fuller, and Leeper could have at

least contacted the deputies listed on the watch rosters the night of the incident, and that inquiry

would have revealed that Plum and Quintana witnessed the incident.   See Dec. 13 Tr. at 28:5-14

(Gorence).   Solis-Marrufo asserted that he had to pursue sanctions for the late disclosure at least

until the July 26-27, 2012 hearings, when he understood the extent of Bernalillo County's, Fuller's

and Leeper's efforts in responding to interrogatories.   See Dec. 13 Tr. at 28:14-22 (Gorence).

Solis-Marrufo stated that Mr. Robles' apology is "nice but that didn't make up for the enormous

amounts of ti[m]e that we put in much less . . . [it] doesn't really restore [Solis-Marrufo's] speedy

trial right."   Dec. 13 Tr. at 28:23-29:1 (Gorence).   Solis-Marrufo contended that discovering

Plum's and Quintana's involvement could have been done without much effort, but Bernalillo

County, Fuller, and Leeper did not make any effort "whatsoever to do so something that a

modicum, a modicum of due diligence would have required."   Dec. 13 Tr. at 29:10-23 (Gorence).

Solis-Marrufo asserted that is "inexplicable" for Bernalillo County, Fuller, and Leeper to not call

every deputy whom they knew was working the night of the incident.   Dec. 13 Tr. at 30:1-3

- 55 -

(Gorence).   Solis-Marrufo asserted that the failure to call the deputies on the watch rosters "falls below the standard of what's not only required but it equates with exactly the sanctions" he requested.   Dec. 13 Tr. at 30:3-6 (Gorence).     Solis-Marrufo contended that an extreme sanction is required, under the case law, but that he is also entitled to "attorney's fees for every minute that we've had to pursue to get to the bottom" of the issue.   Dec. 13 Tr. at 31:15-18 (Gorence).   Solis-Marrufo stated that if the Court does not grant him default judgment as a discovery sanction, he will request "all of the subpoena costs, the costs that we had for process servers, preparation for trial" on May 7, 2012, as well as his costs for preparing the briefs on the late disclosure, filing an amended complaint, and preparing for the currently set trial date.   Dec. 13 Tr. at 31:24-33:12 (Gorence).   Solis-Marrufo stated that he might want to call Plum as a witness at trial, because he is a Defendant, and stated that he would reserve the possibility of precluding Plum.   See Dec. 13 Tr. at 33:13-19 (Gorence).

The Court stated that it is not inclined to grant Solis-Marrufo a motion for default judgment, because Bernalillo County's, Fuller's and Leeper's failure to disclose Plum and Quintana was not so egregious that it warrants a default judgment.   See Dec. 13 Tr. at 33:20-34:2 (Court).   The Court stated that the late disclosure appears to be "at most" negligence, and that there is no evidence that Bernalillo County, Fuller, and Leeper delayed in disclosing Plum and Quintana in bad faith.   Dec. 13 Tr. at 34:3-8 (Court).   The Court stated that a lesser sanction of cost-shifting is appropriate, for at least Solis-Marrufo's preparation for the hearing before Judge Schneider on the issue, and some of the activity through the July 26-27, 2012 hearing as well.   See Dec. 13 Tr. at 34:9-16 (Court).   The Court stated it is not inclined to grant additional costs, because Bernalillo County, Fuller, and Leeper seem to have mitigated any further costs to

- 56 -

Solis-Marrufo by offering to pay for the cost of deposing Plum and Quintana and waiving a statute of limitations defense to adding Plum as a defendant.   See Dec. 13 Tr. at 34:17-24 (Court).   The Court stated that the delay in Solis-Marrufo's trial date seems to have resulted from Judge Schneider's recusal and not only the late disclosure.   See Dec. 13 Tr. at 35:5-12 (Court).   The Court stated that it is not inclined to exclude any witnesses.   See Dec. 13 tr. at 35:21-24 (Court). Solis-Marrufo asserted that the case was "not going to go to[] trial quickly because we had to take [Plum's] deposition, [and] file a Complaint," notwithstanding Judge Schneider's recusal, and thus, the case was going to take months to get to trial.   Dec. 13 Tr. at 38:11-23 (Gorence). Solis-Marrufo thus contended that he should receive costs for preparation for the current trial date, which the Court stated it would consider.   See Dec. 13 Tr. at 39:15-40:1 (Gorence, Court).

<u>**RELEVANT LAW REGARDING RULE 37 SANCTIONS**</u>

Rule 37(c) of the Federal Rules of Civil Procedure provides for certain sanctions if a party fails to "disclose, to supplement an earlier response, or to admit" information in accordance with rules 26(a) or (e):

> **(1)** ***Failure to Disclose or Supplement.*** If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > **(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> >
> > **(B)** may inform the jury of the party's failure; and
> >
> > **(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Rule 37(b)(2)(A)(i)-(vi) authorizes a court to impose various sanctions upon a party for failure to

- 57 -

comply with "an order to provide or permit discovery," including: (i) ordering that designated facts be taken as established; (ii) precluding the disobedient party from supporting or opposing matters at issue, or "introducing designated matters in evidence;" (iii) "striking pleadings in whole or in part;" (iv) "staying further proceedings until the order is obeyed;" (v) dismissing the action; and (vi) "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi). "Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make." Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992). Sanctions must be "just" and related to the claim "at issue in the order to provide discovery." Klein-Becker USA v. Englert, No. CIV 12-4076, 2013 WL 1223819, at *3 (10th Cir. 2013)(unpublished)(quoting Ehrenhaus v. Reynolds, 965 F.2d at 920).[5]

1.   **Whether a Discovery Violation is "Substantially Justified or Harmless."**

"Whether a failure to disclose is harmless and/or justified under Rule 37 depends upon several factors that a district court should consider in exercising its discretion." Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999). These factors include: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." Id.

---

[5] Klein-Becker USA v. Englert is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that Klein-Becker USA v. Englert has persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey, 663 F.3d 1124, 1129-30 (10th Cir. 2011).   "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness" of a rule 26(a) violation.   Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 993.   In the context of considering whether a district court properly excluded evidence because a party's failed to comply with rule 26(a) or (e), the Tenth Circuit has explained: "The parties to a litigation are not merely players in a game, trying to catch each other out.   Rather, litigation should promote the finding of the truth, and, wherever possible, the resolution of cases on their merits."   Gillum v. United States, 309 F. App'x 267, 270 (10th Cir. 2009)(unpublished).

For example, in Gillum v. United States, the Tenth Circuit determined a party's failure to produce a written expert report in compliance with rule 26(a)(2)(B) did not warrant the extreme sanction of excluding the expert's testimony.   See 309 F. App'x at 269-70.   The district court had found that the inadequate expert report prejudiced the United States, because it could not adequately prepare for deposing the expert, and the court determined that the prejudice could not be cured on the premise that the United States had "only . . . one chance to confront that expert, . . . flat-footed, with the benefit of the homework that you can do before you take that expert deposition, and that opportunity is now gone permanently in this case."   309 F. App'x at 269-70 (internal quotations omitted).   The Tenth Circuit held that the district court "abused its discretion in analyzing the 'cure factor,'" because the district court "focused on the fact that the inadequate report permanently deprived the United States of the opportunity to confront [the expert] . . . 'flat-footed.'"   309 F. App'x at 270.   The Tenth Circuit held that this analysis was faulty, because the plaintiff had arranged for the United States to depose the expert a second time before the end of

the discovery period, and any prejudice that the costs of a second deposition caused could be cured by the plaintiff covering the United States' costs.   See 309 F. App'x at 270.   While stating that "[b]y no means do we condone the provision of inadequate expert report and begrudging snippets of information, and we caution that parties who behave in this manner act to their peril," the Tenth Circuit held that the total exclusion of the expert's testimony was unnecessary.   309 F. App'x at 370.

On the other hand, in Martinez v. Target Corp., 384 F. App'x 840 (10th Cir. 2010), the Tenth Circuit found that a district court properly struck a plaintiff's untimely expert report, which the plaintiff filed nine months after the deadline for expert disclosure had passed, seven weeks after discovery closed, and after the defendant had filed for summary judgment.   See 384 F. App'x at 847-48.   The plaintiff argued that the defendant should have been on notice of the expert reports, because they were filed in a separate action in Oklahoma before the plaintiff's trial, but the district court found "no precedent for the proposition that the timely disclosure of expert reports in a different case could satisfy the deadline requirements established in the present case."   384 F. App'x at 847-48.   The plaintiff also provided no explanation for her failure to seek an "extension of the expert-disclosure deadline if, as she argued, she had an extremely difficult time locating experts she considered critical to her case."   384 F. App'x at 848.

The Court has previously applied the Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co. to overrule a defendant's objection to a plaintiff's supplement to an expert report.   See Coffey v. United States, No. CIV 08-0588 JB/LFG, 2012 WL 2175747, at *1, **12-14 (D.N.M. May 26, 2012)(Browning, J.).   The Court determined that any prejudice or surprise the defendant suffered was low, because the defendant's main argument against admitting the supplemented

report was that it lacked relevance, which the Court explained the defendant could raise as an objection at trial and, thus, did not warrant precluding the report pretrial.   Additionally, the Court determined that, because the defendant had the supplemented report before it deposed the plaintiff's expert, any prejudice to the defendant was cured.   There was no evidence that the supplemented report would disrupt trial, because the defendant did not assert that it "would need additional witnesses to combat improper testimony."   2012 WL 2175747, at **12-13.   Lastly, although the plaintiff did not have a consistent explanation for the need to supplement the report rather than including the new information in the expert's first report, the Court did not find any evidence of bad faith or willfulness in the plaintiff's delay, and, therefore, the Court did not exclude the supplemented expert report.   See 2012 WL 21275747, at **14-15.

On the other hand, in Guidance Endodontics, LLC v. Dentsply Int'l, Inc., the Court did not permit a party to supplement its expert report given the timing of the supplementation and the harm to the opposing side.   See 2009 WL 3672502, at *4.   The Court found it particularly relevant that the party seeking to supplement -- the plaintiff -- "had all of the information necessary to develop this supplemental report since June 17, 2009 -- two weeks before the deadline for designating rebuttal experts, a month and a half before the deadline for supplementing expert reports, and three months before trial," but did not give the supplement "to the Defendants until the day the trial began."   Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672502, at *4.   The Court had entered a preliminary injunction against the defendants, and was wary of delaying the trial because even one day could substantially prejudice the defendants.   See 2009 WL 3672502, at *5.   Relying on the Tenth Circuit's case in Jacobsen v. Deseret Book Co., the Court noted in a discussion of that case: "The Tenth Circuit appeared to find that the fact that the opposing party

was unaware of the substance of the witnesses direct examination testimony was sufficient prejudice to weigh against permitting amendment." Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672502, at *4.   The Court, addressing the contents of the supplemental expert report and the timing issues, stated:

> While the Defendants are not entirely in the dark regarding Desrosiers' testimony, the timing of the supplemental report is such that it will impede the Defendants' ability to rebut any testimony based on it.   The trial of a case is a substantial undertaking that consumes most or all of an attorney's time.   Delivering an expert report to opposing counsel on the first day of trial, therefore, is not helpful.   There is no time to prepare a rebuttal expert or investigate the principles underlying the expert's opinions.
>
> In this case, the Defendants have little if any time to prepare a new or existing expert witness by sending the witness to the Johnson City facility nor doing additional research to rebut Desrosiers' new expected testimony. Furthermore, the supplemental report ambiguously references "some recent research" that underlies these new opinions.   With no indication what that research was and no properly informed expert witness to prepare the Defendants' counsel, the Defendants would be left going fishing in the expert's superior knowledge on cross-examination, which is never an enviable position for one to be in.

Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672502, at *5 (citation omitted). The Court also concluded that, given that the case was currently in trial, "neither party can substantially decrease the level of prejudice."   Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672502, at *5.   The Court also found it significant that the Defendants were still encumbered by a preliminary injunction the Court had earlier issued.   Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672502, at *5.   The Court also noted that the particularly late timing of the disclosure was disruptive, because,

> if the Court were to put the trial on hold to allow the Defendants to prepare for this testimony, even if it only took one day, someone would have to rework the travel arrangements of many of the out-of-town witnesses and the trial would not be completed within the three weeks that the Court has allotted for it.

Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672502, at *5.

> **2.     Dismissing an Action or Granting a Default Judgment for a Discovery Violation.**

The Tenth Circuit has noted: "Our case law makes it clear that a district judge may dismiss an action for discovery violations."   Archibeque v. Atchison, Topeka & Santa Fe Ry. Co., 70 F.3d 1172, 1174 (10th Cir. 1995).   Dismissal or a default judgment, however, is "an extreme sanction" that is appropriate only if there has been "willful misconduct."   Ehrenhaus v. Reynolds, 965 F.2d at 920 (citing Meade v. Grubbs, 841 F.2d 1512, 1520 (10th Cir.1988); M.E.N. Co. v. Control Fluidics, Inc., 834 F.2d at 872-73; In re Standard Metals Corp., 817 F.2d 625, 628-29 (10th Cir.), modified on other grounds sub nom Sheftelman v. Standard Metals Corp., 839 F.2d 1383 (10th Cir. 1987)(per curiam)).   See Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 640 (1976)(explaining that a default judgment is appropriate only when a party's noncompliance is caused by the party's "willfulness, bad faith, or any fault," and not when the party is unable to comply with a discovery order).   The Supreme Court of the United States has held that "Rule 37 should not be construed to authorize dismissal of the complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner," and noted that a district court "possesses wide discretion to proceed in whatever manner it deems most effective" and just in the realm of discovery.   Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers, 357 U.S. 197, 212-13 (1958).   Accord Archibeque v. Atchison, Topeka & Santa Fe Ry. Co., 70 F.3d at 1174 ("Because of the harshness of dismissal, however, due process requires that the discovery violation be predicated upon 'willfulness, bad faith, or some fault of petitioner' rather than inability to comply.")(quoting Nat'l Hockey League v. Metro.

Hockey Club, Inc., 427 U.S. at 640 (1976)(per curiam)).  The Tenth Circuit defines "willful failure" as "any intentional failure as distinguished from involuntary noncompliance.  No wrongful intent need be shown."  Patterson v. C.I.T. Corp., 352 F.2d 333, 336 (10th Cir. 1965).

The Tenth Circuit has held that a district court may not dismiss a complaint with prejudice as a sanction for failing to obey a discovery order without considering the non-exhaustive factors listed in Ehrenhaus v. Reynolds:

> Before imposing dismissal as a sanction, a district court should [] evaluate the following factors on the record: (1) the degree of actual prejudice to the [other party]; (2) the amount of interference with the judicial process;  . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.  This list, hereinafter referred to as the *Ehrenhaus* factors, is not exhaustive, nor are the factors necessarily of equal weight.  Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction.

Procter & Gamble Co. v. Haugen, 427 F.3d 727, 738 (10th Cir. 2005)(internal quotation marks and citations omitted).

In Archibeque v. Atchison, Topeka and Santa Fe Ry. Co., the Tenth Circuit affirmed the Honorable C. LeRoy Hansen, United States District Judge's order granting the motion to dismiss the plaintiff's complaint for failure to disclose her past medical history.  See 70 F.3d at 1172. The plaintiff sought workers' compensation damages for personal injury to her back allegedly occurring at an unwitnessed work-related accident occurring in December 1990.  See 70 F.3d at 1173.   The defendant requested a complete set of medical records and asked through an interrogatory the number of accidents in which she had been involved.  See 70 F.3d at 1173.   The Tenth Circuit noted that her responses did not mention any lower back pain before 1990; she listed only two car accidents, in 1990 and 1992, and a bicycle accident in 1987; she stated that she had

- 64 -

not had her lower back x-rayed before the alleged work-related incident in 1990; and she stated in her deposition that she had no recollection of lower back pain before the alleged 1990 incident. See 70 F.3d at 1173.   When the defendant independently sought to verify her answers, it found documents proving that, for over ten years before 1990, "on over fifteen occasions, involving at least six physicians, Appellant sought treatment for a variety of lower back ailments and related symptoms."   70 F.3d at 1173.   The documents revealed that she had x-rays taken multiple times at least as far back as 1984.   See Archibeque v. Atchison, Topeka and Santa Fe Ry. Co., 70 F.3d at 1174.   When the defendant filed its motion to dismiss under rule 37, asking Judge Hansen to dismiss the case for these discovery abuses, she responded that the problems were with her tailbone and not with her back, and "that her failure to disclose her past medical history was merely oversight." 70 F.3d at 1174.   The Tenth Circuit noted that "[s]he did not file amended interrogatory responses or an affidavit regarding her compliance with the discovery process.   She has [not], even in her arguments to this court on appeal, explained her conduct.   Instead, she concludes . . . she 'fully cooperated in the discovery process.'"   70 F.3d at 1174.   The Tenth Circuit upheld Judge Hansen's dismissal of the case, noting:

> The district court . . . noted the degree of prejudice suffered . . . and the impact Appellant's actions had with regard to AT & SF's ability to prepare for trial. The court noted the culpability of Appellant which we described above, specifically addressing the failure to disclose, the false statements, and the court's determination as to the credibility of Appellant's statements that her failures were mere oversight. The court found that Appellant's willful conduct seriously interfered with the judicial process, and expressly stated that it had considered lesser sanctions and determined that they were not appropriate.

70 F.3d at 1175.

In Garcia v. Berkshire Life Ins. Co. of Am., 569 F.3d 1174 (10th Cir. 2009), the Tenth Circuit upheld the district court's dismissal sanction where the district court concluded that it "was

'an especially egregious case,' finding that 'the [plaintiff's] fabrications were prepared over a period of years and are calculating, carefully constructed, and self-serving.'"   569 F.3d at 1179. The issue litigated was whether the plaintiff, Garcia, was entitled to full benefits from her disability policy, because she was suffering from total disability "due to cognitive defects."   569 F.3d at 1177.   The defendant paid Garcia's claims under protest, because during the time she was allegedly fully impaired, she had received her Doctor of Jurisprudence "from the University of Denver College of Law, where she was named an 'Outstanding Law Graduate,' and subsequently [] a Masters []. Moreover . . . Ms. Garcia had operated a real estate business during 2002, three years after the time she had first claimed total disability."   569 F.3d at 1177.   The defendant brought a motion for dismissal as a sanction for discovery abuses, "asserting that Ms. Garcia falsified or fabricated at least four documents submitted during discovery." 569 F.3d at 1177. Two of the four allegedly fabricated documents were a "smoking gun" letter that the defendant's adjuster allegedly wrote and a letter to the Colorado Board of Bar Examiners in support of her request to be allowed double time for the bar examination, which her doctor allegedly wrote. Garcia v. Berkshire Life Ins. Co. of Am., 569 F.3d at 1177-78.   Both the alleged author of the smoking-gun letter and the doctor alleged to have written the letter to the bar examiners testified at the sanctions hearing, and repudiated the assertion that they authored the documents.   See 569 F.3d at 1178.   The Tenth Circuit noted that the district court "found Ms. Garcia's testimony at the Sanctions hearing to be 'incredible,' []'refused to rely on any of it.'   . . . [and] concluded that Ms. Garcia prepared fabricated evidence 'willfully, knowingly, intentionally, after careful contemplation, for self-serving purposes, and with a full understanding of the impropriety involved.'"   569 F.3d at 1177.   The Tenth Circuit agreed with the district court's dismissal,

reasoning:

> Ample evidence supported the conclusion that Ms. Garcia was herself culpable for the fabrications submitted in this case.  Numerous inauthentic documents were submitted over a several year period, counseling against an explanation of mistake.  Moreover, the fabrications were carefully constructed to look like authentic documents.  Letters were made to look as though they were printed on authentic letterhead; emails were carefully spliced together so as to appear accurate; fax banners were added to documents to disguise their origin. . . .  Finally, Ms. Garcia's evasive, inconsistent answers and inability to provide an explanation for the fabrications during the hearing cast further doubt on her accounting of events.

569 F.3d at 1181 (internal references omitted).

In Maples v. Vollmer, No. CIV 12-0294, 2013 WL 1009558 (March 5, 2013)(Browning, J.), the Court did not grant a motion to dismiss a case based upon a plaintiff's "imprecise and apparently contradictory statements in his answers to interrogatories and during his deposition." 2013 WL 1009558, at *1.   The defendants asserted that the plaintiff's contradictory statements "hampered their ability to file a motion for summary judgment on qualified immunity grounds" against the plaintiffs' claims of excessive force under § 1983, but the Court concluded that the plaintiffs' contradictory statements did not cause the defendants substantial, if any, prejudice. 2013 WL 1009558, at **19-20 (internal quotations omitted).   The plaintiff had told the defendants that he "was at home the night before the arrest and on the morning of the incident, as [University of New Mexico Hospital] records indicate."   2013 WL 1009558, at *19.   The Court found that it was "not clear that, even if [Plaintiff] Maples had admitted he visited UNMH the night before the arrest, and admitted he was there because he was a suicide risk, his statements would have placed the Defendants in any better position regarding qualified immunity," and those facts would not have made the defendant Albuquerque Police Department officers' use of force any more reasonable in the circumstances.   2013 WL 1009558, at *20.   The Court also

concluded that the plaintiff's statement did not substantially interfere with the judicial process, because there was no evidence that the plaintiff intended to misstate certain facts "to put him at a tactical advantage," his misstatements did not cause any delay in the judicial proceedings, and, any contradictions in his statements could be explored on cross-examination to discredit his version of the events.  2013 WL 1009558, at *21.  Lastly, the Court found that the plaintiff's culpability, if any, was not commensurate with that of the parties the Tenth Circuit has recognized warrants dismissal of a case, because the plaintiff's statements were not carefully crafted or falsified to evade the defendants' discovery inquiries, and the plaintiff had an adequate explanation for his statements -- that he frequently visited hospitals, and could not remember if the night before the incident was the same night as one of his multiple visits.  See 2013 WL 1009558, at **22-23.

## LAW REGARDING MODIFICATION OF SCHEDULING ORDERS

"The District Court has wide discretion in its regulation of pretrial matters."  Si-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990).  Scheduling orders, however, "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Accord Street v. Curry Bd. of Cnty. Comm'rs, No. CIV 06-0776 JB/KBM, 2008 WL 2397671, at *6 (D.N.M. Jan. 30, 2008)(Browning, J.).  The advisory committee notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.  Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a "manifest injustice" or "substantial hardship" test.  Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment.

The Tenth Circuit has held that the concepts of good cause, excusable neglect, and diligence are related.  "The Tenth Circuit . . . has recognized the interrelation between

'excusable neglect' and 'good cause.'"   Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D.

295, 301 (D. Kan. 1996)(citing In re Kirkland, 86 F.3d 172, 175 (10th Cir. 1996)).   "Properly

construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent

efforts."   Street v. Curry Bd. of Cnty. Comm'rs, 2008 WL 2397671, at *6.   See Advanced Optics

Electronics, Inc. v. Robins, 769 F. Supp. 2d 1285, 1313 (D.N.M. 2010)(Browning, J.)(noting that

the "rule 16(b) good-cause inquiry focuses on the diligence of the party seeking [to] amend the

scheduling order.").   In re Kirkland, the Tenth Circuit dealt with the definition of "good cause"

in the context of rule 4(j) and noted:

> [W]ithout attempting a rigid or all-encompassing definition of 'good cause,' it
> would appear to require at least as much as would be required to show excusable
> neglect, as to which simple inadvertence or mistake of counsel or ignorance of the
> rules usually does not suffice, and some showing of 'good faith on the part of the
> party seeking the enlargement and some reasonable basis for noncompliance within
> the time specified' is normally required.

86 F.3d at 175 (emphasis in original)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir.

1987))(internal quotation marks omitted).   The Tenth Circuit explained that Putnam v. Morris

"thus recognized that the two standards, although interrelated, are not identical and that 'good

cause' requires a greater showing than 'excusable neglect.'"   In re Kirkland, 86 F.3d at 175.

Where a party is diligent in its discovery efforts and nevertheless cannot comply with the

scheduling order, the Court has found good cause to modify the scheduling order if the requesting

party timely brings forward its request.   In Advanced Optics Electronics, Inc. v. Robins, the Court

found that, where the defendant did not conduct discovery or make any good-faith discovery

requests, and where the defendant did not make efforts "diligent or otherwise" to conduct

discovery, the defendant did not, therefore, show good cause to modify the scheduling order.   769

F.Supp.2d at 1313 n. 8.   In Street v. Curry Bd. Of Cnty. Comm'rs, however, the Court found that

- 69 -

the plaintiff had "shown good cause for a delay in seeking leave to amend," because she "was

diligent in pursuing discovery . . . [and] brought to the Court's attention her identification of an

additional claim in a timely manner," where she discovered the claim through "documents

provided in discovery."   2008 WL 2397671, at *11.   In Montoya v. Sheldon, No. CIV 10-0360

JB/WDS, 2012 WL 5353493 (D.N.M. Oct. 7, 2012)(Browning, J.), the Court did not find good

cause to modify the scheduling order and reopen discovery, and refused to grant the plaintiffs'

request do so, where the plaintiffs' excuse for not disclosing their expert before the close of

discovery was that they thought that the case would settle and they would thus not require expert

testimony.   See 2012 WL 5353493, at *14.   The Court noted:

> The [plaintiffs] filed this case on April 15, 2010. Because [Plaintiff] D. Montoya
> had seen the physician before that date, the fact that the [plaintiffs] are only now
> bringing the physician forward as a newly identified expert witness, over two years
> later, and over one and a half years after the deadline to disclose expert witnesses,
> does not evidence circumstances in which the Court can find excusable neglect nor
> good cause.

2012 WL 5353493, at *14.

In Scull v. Mgmt. & Training Corp., 2012 WL 1596962 (D.N.M. May 2, 2012)(Browning,

J.), the Court did not grant a plaintiff's request for an extension of time to name an expert witness

against a defendant, when the plaintiff asserted that he had waited to name an expert witness until

a second defendant joined the case, because, before the second defendant entered the case, a

scheduling order was in effect and the plaintiff should have known that he would need to name an

expert witness against the defendant already in the case.   See 2012 WL 1596962, at *8.   The

Court determined that the plaintiff was seeking "relief from his own disregard" for the deadline.

2012 WL 1596962, at *8.   "Despite his knowledge that [Defendant] PNA had yet to enter the

case, [Plaintiff] Scull chose to allow the deadline to pass without naming expert witnesses against

[Defendant] MTC."   2012 WL 1596962, at *8.   Regarding the defendant who entered the case at a later date, however, the Court allowed the plaintiff an extension of time to name an expert witness, because it "was not unreasonable for Scull to expect a new deadline to name expert witnesses upon PNA's entrance into the case because he had not yet had the opportunity to engage in discovery against PNA as he had against MTC."   2012 WL 1596962, at *9.   The Court also noted that not naming an expert witness "is a high price to pay for missing a deadline that was arguably unrealistic when it was set," as Scull could not have determined the need for an expert witness until after PNA entered the case.    2012 WL 1596962, at *9.

In  Stark-Romero v. Nat'l R.R. Passenger Co (AMTRAK), 275 F.R.D. 544 (D.N.M. 2011)(Browning, J.), the Court found that a lawyer had shown excusable neglect when his reason for missing a scheduling deadline was that, soon after his son's wedding, his father-in-law developed a tumor in his chest and the lawyer handled arranging his father-in-law's medical care, and only after the lawyer returned to his work did he realize that a deadline passed.  See 275 F.R.D. 549-550.   The Court noted that the lawyer could have avoided missing the deadline had he not left his work until the last minute, just before his son's wedding, but found that the lawyer had demonstrated good faith and missed the deadline because of "life crises," and not because of his own inadvertence.   275 F.R.D. 549-550.   In West v. N.M. Taxation & Revenue Dept., No. CIV 09-0631 JB/CEG, 2010 WL 3834341 (D.N.M. July 29, 2010)(Browning, J.), the Court allowed a plaintiff extended time to file a response to a defendant's motion for summary judgment, in part because of the difficulty the plaintiff's counsel experienced attempting to obtain depositions with certain defense witnesses, and thus it was not her fault, and in part because cross-motions on summary judgment are particularly helpful for the Court:

> [C]ross-motions tend to narrow the factual issues that would proceed to trial and
> promote reasonable settlements.   In some cases, it allows the Court to determine
> that there are no genuine issues for trial and thereby avoid the expenses associated
> with trial.   The Court prefers to reach the merits of motions for summary judgment
> when possible.

2010 WL 3834341, at **4-5.   On the other hand, in Liles v. Washington Tru Solutions, LLC, No.

CIV 06-854 JB/CEG, 2007 WL 2298440 (D.N.M. June 13, 2007)(Browning, J.), the Court denied

a plaintiff's request for additional time to respond to a defendant's motion for summary judgment,

when the only rationale the plaintiff provided was that its counsel's "family and medical

emergencies" precluded the plaintiff from timely responding.   2007 WL 2298440, at *2.

## ANALYSIS

The Court will grant Solis-Marrufo's motions for sanctions in part and deny them in part.

The Court does not believe that Bernalillo County's, Fuller's and Leeper's failure to identify Plum

and Quintana as witnesses during the discovery period was deliberate, willful, or gross negligent.

The Court, therefore, will not grant Solis-Marrufo default judgment based upon the late disclosure.

Additionally, the Court does not believe that the prejudice Solis-Marrufo experienced by the late

disclosure was so great and without possibility of cure that the Court should preclude Bernalillo

County, Fuller, and Leeper from introducing Plum and Quintana as witnesses as trial.   On the

other hand, the Court will award Solis-Marrufo the costs and fees that he incurred from Bernalillo

County's, Fuller's and Leeper's late disclosure, although the Court will not order Bernalillo

County, Fuller, and Leeper to pay for Solis-Marrufo's expenses incurred in preparation for the

April 1, 2013, trial, beyond the cost of deposing Plum and Quintana and briefing and attending

hearings on this issue.

I.     **BERNALILLO COUNTY'S, FULLER'S AND LEEPER'S FAILED TO MAKE A REASONABLE INQUIRY REGARDING PLUM AND QUINTANA'S INVOLVEMENT IN THE INCIDENT.**

Notwithstanding the multiple supplements that Bernalillo County, Fuller, and Leeper provided to Solis-Marrufo and the multiple depositions that Solis-Marrufo took, the rules show that Bernalillo County, Fuller, and Leeper have a continuing duty to supplement discovery.   See United States v. Lujan, 530 F. Supp. 2d 1224, 1246 (D.N.M. 2008)(stating that there is a continuing duty to supplement discovery).

Rule 36(a)(4) states:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).   The possibility that the mystery person may have been a County employee signifies that Bernalillo County had it within its means to discover the identity of the mystery person.   All that was necessary to determine whether Plum and Quintana were involved in the incident was a telephone call to each of them.   See July 26 Witness Tr. at 97:11-98:14 (Oliveros, Plum)(Plum states that he was not questioned regarding the incident until Ms. Sauer telephoned him); id. at 148:11-23 (Sauer, Beach)(Ms. Sauer states that she confirmed Plum's involvement in the incident with one telephone call); Quintana Depo. at 28:18-21 (Harris, Quintana)(Quintana affirms that "it just took one phone call to find out whether" she had information regarding the incident).   Additionally, that Mr. Robles contacted every deputy listed on the watch rosters for the night of the incident, except Plum and Quintana, indicates that

discovering Plum and Quintana's involvement in the case would not have been an arduous task during the discovery period: If Mr. Robles could contact each other deputy listed on the watch rosters, the Court sees little reason why he could not have contacted Plum and Quintana earlier. See Dec. 13 Tr. at 16:6-21 (Robles)(Mr. Robles informing the Court that he contacted each deputy listed on the watch rosters except Plum and Quintana).   Quintana has since left the BCSO, but Solis-Marrufo was able to locate her quickly, further indicating that discovering Plum and Quintana's involvement in the incident was a reasonable possibility during the discovery period. See July 26 Tr. at 118:4-11 (Robles)("I understood, from the May hearing, that as of May the 4th Mr. Gorence, through his investigator, contacted Ms. Quintana, and we have finally found her."). Although the Court concludes that Bernalillo County, Fuller, and Leeper did not intentionally fail to disclose Plum's and Quintana's identity in bad faith or out of willful misconduct, the Court concludes that a reasonable inquiry would have included contacting each deputy listed on the watch rosters the night of the incident, and Bernalillo County's, Fuller's, and Leeper's failure to conduct this reasonable inquiry warrants some measure of sanctions.

II.   **BERNALILLO COUNTY'S, FULLER'S, AND LEEPER'S LATE DISCLOSURE CAN BE RENDERED LARGELY HARMLESS WITH LESSER SANCTIONS THAN DEFAULT JUDGMENT.**

Solis-Marrufo seeks, in the alternative to a default judgment, an award of attorneys' fees and costs through his preparation for the present trial date.   See Dec. 13 Tr. at 39:15-40:1 (Gorence, Court).   Bernalillo County, Fuller, and Leeper have offered to pay for the cost of deposing Plum and Quintana, and the Court finds that remedy will help to cure any prejudice Solis-Marrufo suffers from Bernalillo County's, Fuller's, and Leeper's late disclosure.   See Dec. 13 Tr. at 19:22-20:5 (Robles).   Additionally, the Court reopens discovery for the limited purpose of Solis-Marrufo acquiring the information he needs regarding Plum and Quintana's involvement

in the incident, and the Court will order Bernalillo County, Fuller, and Leeper to cover the costs of Solis-Marrufo's briefing regarding this issue, and in preparation for the May 3-4, 2012 hearings before Judge Schneider, and the July 26-27, 2012 hearings before the Court.   The Court will not require Bernalillo County, Fuller, and Leeper to pay for Solis-Marrufo's preparation for the current trial setting.   Neither will the Court preclude Bernalillo County, Fuller, and Leeper from presenting evidence from Plum and Quintana at the trial, because the Court's sanctions render the late disclosure harmless to Solis-Marrufo's case.

Solis-Marrufo has asked the Court to exclude Plum and Quintana as witnesses, but Solis-Marrufo indicated at the hearing that he may want to call Plum as a witness, and would reserve the right to object to his testimony in the future.   See Dec. 13 Tr. at 33:13-19 (Gorence). Under rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."   Fed. R. Civ. P. 37(c)(1).

> "Whether a failure to disclose is harmless and/or justified under Rule 37 depends upon several factors that a district court should consider in exercising its discretion."   Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999).   These factors include: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." Id.

Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey, 663 F.3d at 1129-1130.   As the Court has explained, Bernalillo County's, Fuller's, and Leeper's late disclosure of Plum and Quintana has prejudiced Solis-Marrufo, but that prejudice may be cured, and the Court has found no evidence that Bernalillo County, Fuller, and Leeper failed to disclose Plum and Quintana earlier out of bad faith or willfulness.

First, the Court will reopen discovery for the Solis-Marrufo's benefit alone, which will help cure any prejudice he suffers from the late disclosure.   As the Court indicated at the hearing, modifying the scheduling order to allow Solis-Marrufo adequate time to depose Plum and Quintana is appropriate.   See July 27 Tr. at 21:9-19 (Court); id. at 22:25-23:7 (Court); id. at 24:11-15 (Court, Robles, Oliveros); id. at 25:3-7 (Court).   Further, Bernalillo County, Fuller, and Leeper are not seeking to reopen discovery for their benefit: They have filed the Motion to Reopen Discovery only so that Solis-Marrufo has the opportunity to conduct the discovery he needs to prepare for trial.   See July 27 Tr. at 22:4-13 ("[I]t is, essentially, plaintiff's opportunity to conduct what discovery they need to in order to be prepared for trial. . . .   And defendants, unless something very odd happens, have no intentions of conducting discovery.").   Just as in Gillum v. United States, where the plaintiff allowing the defendant to depose its expert a second time cured, in part, prejudice that the plaintiff's inadequate expert report caused to the defendant, allowing Solis-Marrufo to depose Plum and Quintana helps cure any prejudice the late disclosure caused. See 309 F. App'x at 269-70.   Additionally, although Solis-Marrufo opposes the Motion to Reopen Discovery, the Court finds that Bernalillo County, Fuller, and Leeper have given the Court good cause to reopen discovery and modify the scheduling order.   "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."   Street v. Curry Bd. of Cnty. Comm'rs, 2008 WL 2397671, at *6.   Although Bernalillo County, Fuller, and Leeper have moved to reopen discovery and the Court believes they could have discovered Plum and Quintana during the discovery deadlines, Bernalillo County, Fuller, and Leeper seek to reopen discovery because Solis-Marrufo could not have acquired the information he needed within the scheduling order in place at the time.   See Amended Scheduling Order at 1 (setting the close of

discovery as December 9, 2011).   Because reopening discovery and modifying the Amended

Scheduling Order will help cure the prejudice Solis-Marrufo suffers from the late disclosure, the

Court will grant the Motion to Reopen Discovery, based upon Bernalillo County's, Fuller's, and

Leeper's representation that they are not seeking to conduct further discovery and the Motion to

Reopen Discovery is for Solis-Marrufo's benefit alone.

Second, the Court will grant Solis-Marrufo the fees and costs that he incurred from the late

disclosure.   See Fed. R. Civ. P. 37(c)(1)(A)(authorizing a court to award "reasonable expenses,

including attorney's fees, caused by the failure" to follow discovery rules); Gillum v. United

States, 309 F. App'x at 269-70 (finding that an award of costs incurred from deposing an expert

witness a second time helps to cure any prejudice that an inadequate expert report caused).

Solis-Marrufo requests fees incurred in preparing for the May 7, 2012 trial date, through his

preparation for the current trial setting, but the Court does not believe such an expansive award is

warranted.   See Dec. 13 Tr. at 31:24-33:12 (Gorence).   Although Solis-Marrufo contends that the

late disclosure would have delayed the case by several months, thus requiring his counsel to

educate themselves in preparation for trial again -- a cost that he asserts Bernalillo County, Fuller,

and Leeper should cover -- the Court believes that Judge Schneider's recusal caused more delay to

the trial setting than the late disclosure.   Solis-Marrufo persisted pursuit of an ultimate sanction of

default judgment -- a sanction that requires a Court to find willful misconduct -- likely persuaded

Judge Schneider that he must recuse himself from the case.   Had Solis-Marrufo sought only lesser

sanctions, Judge Schneider may have not chosen to recuse himself and the parties could have

proceeded to trial much more quickly; indeed, Solis-Marrufo objected to delaying the trial date in

May, 2012.   See Clerk's Minutes before the Honorable W. Daniel Schneider, United States

Magistrate Judge, taken May 4, 2012, filed May 4, 2012 (Doc. 148)(indicating that counsel for Solis-Marrufo Mr. Robert Gorence objected to a continuance of the May 7, 2012 trial date).   If Judge Schneider had not recused himself, all of these sanction issues regarding discovery could have been quickly sorted out, and the trial might not have been pushed further at all. Solis-Marrufo has presented no reason why Plum was not available for a deposition as early as May, 2012, when his role in the incident was discovered, and the parties indicated at the hearing that Solis-Marrufo had located Quintana as of May 4, 2012.   See July 26 Tr. at 104:22-105:11 (Oliveros, Plum)(Plum indicating that he was present at a motion hearing before Judge Schneider on May 4, 2012); id. at 118:4-11 (Robles)("I understood, from the May hearing, that as of May the 4th Mr. Gorence, through his investigator, contacted Ms. Quintana, and we have finally found her.").   Therefore, the continued discovery that Solis-Marrufo needed to prepare for trial in light of the late disclosure of Plum and Quintana could have been completed within a few months' -- or even a few days' -- time, had Judge Schneider not recused.   The Court does not believe that Judge Schneider's recusal and the costs Solis-Marrufo has incurred because his counsel must prepare afresh for trial is a prejudice that Bernalillo County, Fuller, and Leeper should repair.

While the Court ultimately finds that Bernalillo County, Fuller, and Leeper should have discovered Plum's and Quintana's role in the incident during the discovery period, the Court also concludes that the discovery of their role was the result of a third-year law student's clever investigative process.   It is unfair for the Court to punish Bernalillo County, Fuller, and Leeper for good investigative work on the eve of trial.   On the other hand, the Court recognizes that Mr. Robles could have telephoned Plum and Quintana earlier in this litigation, and there was no reason Bernalillo County, Fuller, and Leeper could not have timely disclosed Plum's and Quintana's role

in the incident during the discovery period had Mr. Robles conducted that simple inquiry.   On the

other hand, Solis-Marrufo had all of the documents necessary to discover Plum's and Quintana's

involvement as well, and Bernalillo County, Fuller, and Leeper could have asserted that

Solis-Marrufo's failure to identify Plum and Quintana as witnesses was also negligence.   In the

end, there was a breakdown in the parties' discovery, but the non-discovery could have continued

but for Ms. Sauer's work.   There is no reason to severely punish anyone for what ended up being

good last minute work by a summer law clerk that all of the attorneys -- both for Solis-Marrufo and

Bernalillo County, Fuller, and Leeper -- had not uncovered.

The Court, therefore, will not shift the cost of Solis-Marrufo's preparation for the May 7,

2012 trial, or the April 1, 2013 trial, to Bernalillo County, Fuller, and Leeper.   The Court will not

order Bernalillo County, Fuller, and Leeper to pay for Solis-Marrufo's subpoena costs and cost of

process servers in preparation for the May 7, 2012 trial, because he likely could have secured his

witnesses for trial without paying for new subpoenas and their service, had Judge Schneider not

recused himself from trial.[6]   The Court will also order Bernalillo County, Fuller, and Leeper to

pay the costs Solis-Marrufo incurred in briefing this issue before the July 26-27, 2012 hearings,

---

[6] The request for a shifting of the costs of subpoenas and process servers is a closer call than Solis-Marrufo's requests for costs and expenses incurred in briefing this issue.   On the one hand, Bernalillo County's, Fuller's, and Leeper's late disclosure did require Solis-Marrufo to pay twice for subpoenas and process servers because the trial setting in this matter was delayed.   On the other hand, the Court believes that Judge Schneider was likely motivated to recuse himself because of Solis-Marrufo's insistence upon an ultimate sanction of default judgment for, what the Court has concluded, was not a willful discovery violation.   Had Solis-Marrufo sought only costs and expenses, Judge Schneider would not have likely felt ethically conflicted adjudicating that discovery violation, notwithstanding that Ms. Beach had formerly worked for him as a law clerk. The Court, therefore, does not believe that Solis-Marrufo should receive payment for the fees and costs incurred because of Judge Schneider's recusal, because Solis-Marrufo's insistence upon an ultimate, a sanction which required Judge Schneider to find that his former law clerk engaged in willful misconduct, likely contributed to the delay in this case more than Bernalillo County's, Fuller's, and Leeper's late disclosure.

- 79 -

and in the hearings before Judge Schneider on May 3 and 4, 2012 and the Court on July 26-27, 2012, hearings.   The Court will not grant costs for the December 13, 2012 hearing because the Court signified to Solis-Marrufo in July that it was not inclined to grant a default judgment, and Solis-Marrufo pursued that sanction anyway.   See July 27 Motion Tr. at 18:8-10 (Court)("I'm not inclined to grant [default judgment], so it seems to me we ought to go on and try to get this case on a track to go to trial.").   The costs and fee after July 27, 2012 -- in trying to hit a homerun with a default judgment -- should be on his own nickel.   Additionally, because Bernalillo County, Fuller, and Leeper offered to pay for the cost of deposing Plum and Quintana, the Court will hold Bernalillo County, Fuller and Leeper to that offer and order them to cover those costs.   See Dec. 13 Tr. at 22:21-23 (Robles, Court).

Lastly, the Court will not strike either the Eighth Disclosures or Ninth Disclosures.   At the July 27 hearing, Bernalillo County, Fuller, and Leeper informed Solis-Marrufo that they do not intend to call the new individuals listed in the Eighth Disclosures, except for perhaps Plum and Quintana.   See July 27 Tr. at 30:17-25 (Robles).   Bernalillo County, Fuller, and Leeper also informed Solis-Marrufo that most of the new individuals listed in the Eighth Disclosure were not present at the South Valley Command Center at the time of the incident, and therefore, the forty-one new individuals would not have information regarding the incident and Solis-Marrufo would not need to depose them.   See July 27 Tr. at 30:10-31: 24 (Robles, Court).   Bernalillo County's, Fuller's, and Leeper's provision of this information regarding the significance of the forty-one individuals, listed in the Eighth Disclosures, besides Plum and Quintana, cures the prejudice, if any at all, that Solis-Marrufo suffered from the Eighth Disclosures.   Bernalillo County, Fuller, and Leeper seem to have only informed Solis-Marrufo of forty-one new

individuals "out of an abundance of caution" so as to let Solis-Marrufo know "who wasn't there and what people were doing at the time" of the incident.   July 27 Tr. at 31:1-9 (Court, Robles). In so far as Solis-Marrufo seeks to preclude Bernalillo County, Fuller, and Leeper from calling Plum or Quintana at trial in the Obj. to Eighth Disclosure, the Court has cured any prejudice that calling Plum or Quintana at trial would pose to Solis-Marrufo through lesser sanctions and reopening discovery.

Regarding the Ninth Disclosure, the Court also concludes that Solis-Marrufo suffers no prejudice by a late disclosure of a BCSO report that serves to inform Solis-Marrufo that a deputy was not present at the incident because he was responding to a call.   See Response to Ninth Obj. at 1-2.   Bernalillo County, Fuller, and Leeper informed Solis-Marrufo that they have no intention of introducing the BCSO report at trial and that they only provided the report to Solis-Marrufo to alleviate his concerns regarding "the whereabouts of any deputy who was on any of those logs." July 27 Tr. at 38:8-22 (Court, Robles).   The Court, therefore, will overrule Solis-Marrufo's Obj. to Eighth Disclosures and Obj. to Ninth Disclosures.

## III.   BERNALILLO COUNTY'S, FULLER'S, AND LEEPER'S CONDUCT HAS NOT BEEN DELIBERATE, WILFUL AND/OR GROSSLY NEGLIGENT.

The Court cannot say, at this time, that Bernalillo County, Fuller, and Leeper severely and irreparably prejudiced Solis-Marrufo in the preparation and prosecution of his case. Solis-Marrufo asserts that Bernalillo County's, Fuller's and Leeper's failure to disclose Plum and Quintana as witnesses to the incident until May 2, 2012, was "deliberate, willful and/or grossly negligent."   First Motion for Sanctions at 1.   Solis-Marrufo contends that awarding him default judgment would serve the public policy considerations underlying sanctions, including ensuring future compliance with discovery rules.   See First Motion for Sanctions at 7.   Bernalillo County,

- 81 -

Fuller, and Leeper counter that they did not willfully choose to not disclose Plum and Quintana, because they were unaware that Plum and Quintana were witnesses until May 2, 2012.   See First Response at 5.   The Court does not believe that default judgment is an appropriate remedy for Bernalillo County's, Fuller's and Leeper's discovery violation, because there is no evidence before the Court that Bernalillo County's, Fuller's and Leeper's late disclosure of Plum and Quintana was a result of "willful misconduct."   Ehrenhaus v. Reynolds, 965 F.2d at 920. Additionally, the Tenth Circuit directs district courts to only grant a default judgment on the basis of a party's discovery abuse when "the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits," and the aggravating factors are not so egregious as to warrant a default judgment here.   Procter & Gamble Co. v. Haugen, 427 F.3d at 738.

The Tenth Circuit has held that a district court may not dismiss a complaint with prejudice as a sanction for failing to obey a discovery order without considering the non-exhaustive factors listed in Ehrenhaus v. Reynolds:

> Before imposing dismissal as a sanction, a district court should [] evaluate the following factors on the record: (1) the degree of actual prejudice to the [other party]; (2) the amount of interference with the judicial process;  . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

Procter & Gamble Co. v. Haugen, 427 F.3d 727 at 738 (10th Cir. 2005).   Addressing the first two factors, the Court does not doubt that the late disclosure prejudiced Solis-Marrufo in some regard, but that prejudice and the late disclosure's interference with the judicial process is not severe. This matter was set to go to trial on May 7, 2012, and, rather than having his day in court, the late disclosure caused this matter to be postponed for several months.   Solis-Marrufo states that the delay in his trial date "and mounting attorneys' fees" prejudice him, just as a delay in trial and

attorneys' fees prejudiced the plaintiffs in <u>Sender v. Mann</u>.   Dec. 13 Tr. at 12:11-13 (Gorence).

Although the district court recognized in <u>Sender v. Mann</u> that "delay and mounting attorneys' fees

can equate to prejudice," the remedy the court chose was to allow defendants to depose the

recently disclosed witnesses and to require the late-disclosing plaintiff to pay for the defendants'

cost of "one attorney . . . to participate in those depositions, up to a maximum of $3,000 per

deposition."   225 F.R.D. at 657-68.   Even though Solis-Marrufo suffered similar prejudice as the

defendants in <u>Sender v. Mann</u>, the appropriate remedy, as recognized in that case, is not a grant of

default judgment, but, rather, to put him in the position he would have enjoyed had Bernalillo

County, Fuller, and Leeper disclosed Plum and Quintana in a timely manner.   <u>See</u> 225 F.R.D. at

658 ("The depositions permitted under this Memorandum Order will place the Freeborn

defendants in the position they would have enjoyed if the Initial Disclosures had been provided.").

        Solis-Marrufo has directed the Court to two other cases that he asserts support his

requested sanction of default judgment.   <u>See</u> Dec. 13 Tr. at 8:2-12 (Gorence); <u>id.</u> at 8:24-9:4

(Gorence).   First, Solis-Marrufo points the Court to language from <u>Norman v. Young</u>, which he

asserts supports the theory that "to say or make any effort to produce a statement saying []

documents [are] unavailable constitute willfulness," sufficient for granting a default judgment.

Dec. 13 Tr. at 8:2-12 (Gorence).   In <u>Norman v. Young</u>, a plaintiff in a securities suit responded to

a defendants' discovery request for tax returns and quarterly statements with fabricated and

"wholly worthless documents."   422 F.2d at 472.   The documents were written in longhand, and

contained no deductions, expenses, income from stock dividends, interest, wages, or salary

information.   <u>See</u> 422 F.2d at 472.   Bernalillo County, Fuller, and Leeper, on the other hand, did

not fabricate a witness to respond to Solis-Marrufo's interrogatories, and, therefore, their failure to

timely disclose Plum and Quintana does not equate with the plaintiff's "wholly worthless" discovery response in Norman v. Young.  422 F.2d at 272.  Second, Solis-Marrufo points to M.E.N. Co. v. Control Fluidics, Inc. for the proposition that a party's intentional failure to identify a witness can warrant a default judgment.  See Dec. 13 Tr. at 19:15-25 (Gorence).  The defendants' discovery abuses in M.E.N. Co. v. Control Fluidics, Inc., however, were far more severe than failing to disclose a witness alone.  The defendants in M.E.N. Co. v. Control Fluidics, Inc., failed entirely to respond to discovery requests and to attend depositions, and did not file a pretrial memorandum.  See 834 F.2d at 871.  Bernalillo County, Fuller, and Leeper, on the other hand, have complied with Solis-Marrufo's discovery requests, and, although late, their prompt disclosure of Plum and Quintana upon learning of their role in the incident demonstrates that the late disclosure was not a whole-hearted failure, as in M.E.N. Co. v. Control Fluidicis, Inc.  See First Response at 1-2.  The defendants' failure to comply with basic discovery requests, which the Tenth Circuit held warranted a default judgment in M.E.N. Co. v. Control Fluidics, Inc., does not support Solis-Marrufo's contention that Bernalillo County's, Fuller's and Leeper's late disclosure here warrants a default judgment in his favor.

Turning to the third factor, Bernalillo County's, Fuller's and Leeper's conduct is not highly culpable, if culpable at all.  As Bernalillo County, Fuller, and Leeper have repeatedly asserted, Plum and Quintana appear to be witnesses that are favorable to their defense; the Court, therefore, cannot infer that Bernalillo County, Fuller, and Leeper chose to disclose these witnesses late in an attempt to gain a tactical advantage over Solis-Marrufo.  See July 26 Motion Tr. at 33:21-34:3 (Robles).  Additionally, Bernalillo County's, Fuller's and Leeper's failure to disclose Plum and Quintana until May 2, 2012, is not latent with the bad faith and willful misconduct seen in other

cases where the Tenth Circuit has found dismissing an action appropriate.   Unlike the plaintiff in Archibeque v. Atchison, Topeka and Santa Fe Ry. Co., who failed to disclose her history of medical treatment and accidents in a workers' compensation case, see 70 F.3d at 1173, information that was within her personal knowledge when the defendants requested it, Bernalillo County, Fuller, and Leeper here were not aware that Plum and Quintana were witnesses to the incident, see First Response at 2-3.   Bernalillo County, Fuller, and Leeper, therefore, did not willfully misinform Solis-Marrufo regarding information of which they were aware; their failure is one of a lack of inquiry, and not of purposeful concealment.   Nor did Bernalillo County, Fuller, and Leeper fabricate documents in support of their theory of the case, as the plaintiff did in support of her claims for disability benefits in Garcia v. Berkshire Life Ins. Co. of Am..   See 569 F.3d at 1177-79.   Lastly, just as the plaintiff's misstatements during discovery were not carefully crafted to place the plaintiff in a tactical advantage in Maples v. Vollmer, Bernalillo County, Fuller, and Leeper do not appear to have withheld Plum and Quintana's identities in the hopes of securing a tactical advantage, because, as they assert, Plum and Quintana's testimonies are helpful to their defense.   See 2013 WL 1009558, at **22-23.

Turning to the fourth and fifth factors, the Court concludes that a sanction of default judgment is inappropriate.   The Court did not warn Bernalillo County, Fuller, and Leeper in advance that, if they did not discover and disclose Plum and Quintana as witnesses to the incident, they would suffer a default judgment, and, therefore, the fourth factor weighs against Solis-Marrufo's requested relief.   Lastly, a lesser sanction, including an award of costs and the ability to add defendants outside the statute of limitations, will make Solis-Marrufo whole.[7]   The

---

[7] Bernalillo County, Fuller, and Leeper did not raise a statute-of-limitations defense to

- 85 -

Court, therefore, does not find that Bernalillo County's, Fuller's and Leeper's failure to disclose Plum and Quintana in a timely manner was the result of willful misconduct or an intentional failure, and the Court will not grant Solis-Marrufo a default judgment as a sanction for the late disclosure.  See Procter & Gamble Co. v. Haugen, 427 F.3d at 738 ("Only when aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction.").

The Court finds that reopening discovery and ordering Bernalillo County, Fuller, and Leeper to cover the costs the late disclosure caused Solis-Marrufo will cure any prejudice he suffered from the late disclosure, and, therefore, the Court will not preclude Bernalillo County, Fuller, and Leeper from presenting evidence from Plum or Quintana at trial.  See Gillum v. United States, 309 F. App'x at 270 ("[L]itigation should promote the finding of the truth, and, wherever possible, the resolution of the cases on their merits.").

**IT IS ORDERED** that: (i) the Plaintiff's Motion for Entry of Default Judgment and Other Sanctions for Failure to Disclose Evidence, Withholding Evidence and Other Discovery Abuses, filed May 3, 2012 (Doc. 143), is granted in part and denied in part; (ii) Defendants' Motion to Reopen Discovery and Reset Certain Discovery-Related Deadlines, filed May 24, 2012 (Doc. 156), is granted; (iii) Plaintiff's Objection to Defendants' Eighth Supplemental Disclosures, filed June 7, 2012 (Doc. 157), is overruled; (iv) Plaintiff's Second Motion for Entry of Default Judgment and Other Sanctions for Failure to Disclose Evidence, Withholding evidence and Other

---

Solis-Marrufo adding Plum as a Defendant on both federal and state claims.  See Complaint at 2, 6-9 (adding Plum as a Defendant in Solis-Marrufo's federal claims under 42 U.S.C. § 1983 and his state claims alleging liability for his assault and battery, and that Plum failed to intervene).  Cf. July 26 Motion Tr. at 32:23-33:14 (Robles)(Mr. Robles stating that he believes it would be "unfair" to waive a statute-of-limitations defense to Solis-Marrufo's state law claims against Plum, but that he may be willing to waive the defense to Solis-Marrufo's federal claims).

Discovery Abuses, filed June 7, 2012 (Doc. 158), is granted in part and denied in part; and (v) Solis-Marrufo's Objection to Defendants' Ninth Supplemental Disclosures, filed June 14, 2012 (Doc. 162), is overruled.   Plaintiff Javier Solis-Marrufo's counsel should submit an affidavit of fees and costs to the Defendants' counsel, and if the counsel cannot resolve payment for fees and costs in accordance with this Memorandum Opinion and Order, they may ask the Court to determine the amount of fees and costs that the Defendants shall pay Solis-Marrufo.


_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

Robert Gorence
Louren M. Oliveros
Andrea D. Harris
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Luis E. Robles
Terri S. Beach
David Roman
Robles, Rael, & Anaya
Albuquerque, New Mexico

  *Attorneys for the Defendants*